UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |

| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |

| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |

| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |

| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN ORDER
(I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING MAINTENANCE OF
THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM, PURCHASE CARD
PROGRAM AND EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND
(III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
RELATED CHECKS AND TRANSFERS**

TO:    The parties in interest as defined in Local Rule 9013-3(a)(2).

1.    Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), file this motion (this "**Motion**") requesting the relief described below, and give notice of hearing.

2.    The Court will hold a hearing on the Motion at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.    Local Rule 9006-1(c) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing. **UNLESS A RESPONSE**

Case 15-50307    Doc 14    Filed 05/05/15    Entered 05/05/15 12:43:42    Desc Main
Document    Page 2 of 35

**OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1070-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The cases are currently pending in this Court.

5.     This motion arises under sections 105(a), 362, 363(c)(1), 364 and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6003.  This Motion is filed under Local Rules 9013-1, 9013-2 and 9013-3.  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 9013 and Local Rules 9013-2(b) and 9013-3.

6.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed.

7.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, Magnetation LLC's Chief Financial Officer, which is incorporated herein by reference.  Facts specific to the relief requested herein are set forth in the relevant sections below.

**RELIEF REQUESTED**

8.      By this Motion, the Debtors request entry of an order substantially in the form filed herewith authorizing, but not directing, the Debtors, pursuant to sections 105(a), 362, 363(c)(1), 364 and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6003, to (a) continue to operate their prepetition cash management system with respect to intercompany cash management and obligations, as further described below (the "**Cash Management System**") in accordance with any applicable agreement governing the Bank Accounts (as defined below), including, without limitation, any prepetition account terms documentation, cash management agreements, treasury services agreements, escrow agreements, and/or security agreements (collectively, the "**Bank Account Agreements**"), (b) fund the Debtors' operations, (c) maintain the Debtors' existing bank accounts (together with any accounts opened after the Petition Date (as defined below), the "**Bank Accounts**")[1] located at JPMorgan Chase Bank, N.A. ("**JPMC**" and together with any financial institutions at which the Debtors open Bank Accounts after the Petition Date (as defined below), the "**Banks**"), (d) maintain the Purchase Card Program (as defined below) with JPMC and (e) maintain the Debtors' existing business forms; *provided, however*, that such relief shall be subject to any order approving the Debtors' postpetition financing facility (the "**DIP Order**").  Without the requested relief, the Debtors would be unable to maintain their operations, which would cause grievous harm to the Debtors and their estates. The requested relief is consistent with the proposed interim DIP Order.

---

[1] A non-exclusive list of the Bank Accounts is attached hereto as <u>Exhibit A</u>.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

9.      Pursuant to the Cash Management System, the Debtors collect, concentrate and disburse funds generated by the Debtors' operations.  The Cash Management System also enables the Debtors to monitor the collection and disbursement of funds and maintain control over intercompany obligations and the administration of their Bank Accounts.  The Cash Management System is not entirely automated; the Debtors' employees are required to monitor the system and manage the proper collection and disbursement of funds.

10.     To provide a general overview of the movement of cash through the Debtors' Cash Management System, the Debtors have attached hereto as Exhibit B a chart illustrating the flow of funds through the Cash Management System.

## CASH COLLECTION AND CONCENTRATION

11.     Funds are collected in the Debtors' main operating account with JPMorgan Chase Bank, N.A. (the "**Main Operating Account**").  As required under the indenture for the Debtors' 11.0% senior secured notes due 2018 (the "**Senior Secured Notes**"), an amount of cash no less than the next upcoming interest payment on the Senior Secured Notes is maintained in a separate escrow account, also with JPMorgan Chase Bank, N.A. (the "**Interest Escrow Account**").

## CASH DISBURSEMENTS

12.     Receipts concentrated in the Main Operating Account are used by the Debtors to satisfy their financial obligations.  These disbursements are paid directly to the requisite party from the Main Operating Account.  Both the Main Operating Account and the Interest Escrow Account are insured by the Federal Deposit Insurance Corporation ("**FDIC**").

13.     Domestic disbursements are made through (i) wire transfer, (ii) check or (iii) automated clearing house transfers ("**ACH Transfers**").   Wire transfers and check

4

disbursements are initiated by the Debtors, while ACH Transfer disbursements may be initiated by either the Debtors or certain vendors.  Foreign disbursements are made by either international wire transfer or check.

14.     Payroll is made through ACH Transfer direct deposits to employee bank accounts. Workers' compensation, health and welfare and other employee benefits are also generally paid through ACH Transfers, although some are paid by check.

15.     The Debtors also maintain a MasterCard purchasing card program (the "**Purchase Card Program**") with JPMC.  The Purchase Card Program is used by the Debtors to pay authorized expenses incurred by the Debtors' employees and for minor company purchases and expenses.  Based on available data, the Debtors estimate that less than $30,000 is outstanding as of the Petition Date.  Prior to the Petition Date, the aggregate credit limit under the Purchase Card Program was $500,000.   The Debtors and JPMC have agreed to reduce the aggregate credit limit to $200,000 following the Petition Date, and JPMC has agreed to continue the Purchase Card Program at the reduced aggregate credit limit subject to Court approval of this Motion, payment of any outstanding prepetition obligations under the Purchase Card Program then due and owing and entry of an order approving the Debtors' postpetition financing facility providing for adequate protection in respect of the Debtors' prepetition revolving credit facility (the "**Prepetition Revolving Facility**") as agreed by JPMC and the lenders under the Prepetition Revolving Facility (collectively, the "**Prepetition Revolving Lenders**").

16.     Obligations under both the Cash Management System and the Purchase Card Program are collateralized under the Prepetition Revolving Facility, and they will continue to be collateralized under that same facility on a postpetition basis and to have the adequate protection provided in respect of the Prepetition Revolving Facility as set forth in the DIP Order.

## CONTINUING THE CENTRALIZED CASH MANAGEMENT SYSTEM IS IN THE BEST INTERESTS OF THE DEBTORS, THEIR CREDITORS AND ALL OTHER PARTIES IN INTEREST

17.     The Debtors hereby seek authority to continue using their current centralized Cash Management System in accordance with the Bank Account Agreements, to the extent applicable, and subject to the DIP Order.  Given the Debtors' operations, as well as the goal of preserving and enhancing their respective going concern values, a successful reorganization of the Debtors' businesses simply cannot be accomplished if there is substantial disruption in the Cash Management System.  It is essential that the Debtors be permitted to continue to consolidate the management of their cash and transfer monies from entity to entity as necessary and appropriate to continue the operation of their businesses.

18.     The basic structure of the Cash Management System constitutes the Debtors' ordinary, usual and essential business practices.  The Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtors in size and complexity.  The Cash Management System enables the Debtors, as well as creditors and the Court, to trace funds through to the Debtors' accounting system.  If the Debtors were required to dismantle the Cash Management System, it would significantly impair their day-to-day operations and ability to generate timely reports of transactions and balances.

19.     The widespread use of similar cash management systems is attributable to the numerous benefits they provide, including the ability to tightly control corporate funds, ensure cash availability and reduce administrative expenses by facilitating the expeditious movement of funds and the development of timely and accurate account balance and presentment information.

20.     In addition, it would be very time consuming, difficult and costly for the Debtors to establish a new cash management system, and doing so would disrupt the Debtors'

relationships with their key customers and suppliers. The attendant delays from opening new Bank Accounts, revising cash management procedures and instructing customers and vendors to redirect payments and ACH Transfer requests would negatively impact the Debtors' ability to operate their businesses while pursuing these arrangements. Under the circumstances, maintenance of the Cash Management System is essential and clearly in the best interest of the Debtors' estates. Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with any substantial disruption in the Cash Management System obviously will facilitate the Debtors' reorganization efforts.

21. The Debtors will also maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases. As a result, the Debtors will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest. As a part thereof, each Debtor will record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Postpetition Transfer**"), and will provide reports of such Postpetitition Transfers upon request to (i) counsel for the agent under the Debtors' postpetition financing facility and (ii) counsel for the ad hoc committee of senior secured noteholders. Any Debtor that makes a Postpetition Transfer to or for the benefit of another Debtor should be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code, junior and subordinate to the superpriority administrative claims granted pursuant to any order of this Court authorizing, *inter alia*, the Debtors to obtain postpetition financing and granting adequate protection (including any carve-out).

7

22.     The Debtors further seek authority to maintain and continue to use their Purchase Card Program on a secured basis at the reduced aggregate credit limit of $200,000 consistent with its terms, including authorization for the incurrence of indebtedness, posting of collateral and payment of any obligations thereunder, whether arising before, on or after the Petition Date, in the same manner as before the Petition Date, authorization for JPMC to exercise any of its rights under the Purchase Card Program without further order of this Court and the granting of relief from the automatic stay under section 362 of the Bankruptcy Code to JPMC solely in connection with the exercise of its rights under the Purchase Card Program.

### MAINTENANCE OF THE DEBTORS' EXISTING BANK ACCOUNTS AND BUSINESS FORMS IS WARRANTED

23.     Absent authorization otherwise, a chapter 11 debtor is generally required to: (a) close all existing Bank Accounts and open new debtor-in-possession Bank Accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession Bank Accounts bearing the designation "Debtor in Possession," the bankruptcy case number, and the type of account. These requirements, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, help to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. For the reasons described below, the Debtors request that these requirements be waived in these chapter 11 cases.

24.     To avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption and to aid in the Debtors' efforts to

reorganize, it is important that the Debtors be permitted to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases, subject to a prohibition against honoring checks issued or dated before the Petition Date absent a prior order of the Court.

25. By preserving business continuity and avoiding the disruption and delay to the Debtors' disbursement obligations that would necessarily result from closing the Bank Accounts and opening new Bank Accounts, all parties in interest, including employees, vendors and customers, will be best served. The benefit to the Debtors, their business operations and all parties in interest will be considerable. The confusion that would result absent the relief requested herein would ill serve the Debtors' rehabilitative efforts.

26. The Debtors also seek an order granting the Banks authority to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all postpetition checks, drafts, wires or ACH Transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

27. Notwithstanding anything to the contrary in any other order of this Court, the Debtors request that the Banks be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date. Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any check or payment item that may be honored

9

or any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

28.     The Debtors also request authorization to pay or reimburse any bank fees, claims, costs, expenses or charges associated with the Bank Accounts and arising prior to, on or after the Petition Date, including, without limitation, (i) service charges or fees; (ii) checks deposited with the Banks that have been dishonored or returned for insufficient funds; and (iii) any reimbursement or other payment obligations, such as overdrafts, arising under the Bank Account Agreements (collectively, the "**Bank Account Claims**") and authorization for the Banks  to continue to debit from the appropriate Bank Accounts sufficient funds to satisfy the Bank Account Claims in accordance with the terms of the Bank Account Agreements.  The Debtors further request that the Bank Account Claims be afforded allowed administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

29.     The Debtors further request that any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from such Bank Account prepetition.

30.     If granted the relief requested herein, the Debtors will not pay, and their Banks will be directed not to pay, any prepetition checks except as allowed by order of the Court.  The Debtors can identify those checks that should not be paid and supply such a list to their Banks. Accordingly, any concerns of the U.S. Trustee regarding a clear demarcation between prepetition

and postpetition payments can be satisfied here without the necessity of closing the Bank Accounts.

31.    To minimize expenses, the Debtors further request they be authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks and other business forms (collectively, the "**Business Forms**"), substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided*, *however*, that as soon as reasonably practicable, the Debtors shall mark "Debtor in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock.  As a result of the press releases issued by the Debtors and other press coverage, parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession.  In the absence of such relief, the Debtors' estates will be required to bear a potentially significant expense that the Debtors respectfully submit is unwarranted.

32.    If the Debtors are not permitted to maintain and use their Bank Accounts and continue to use their existing Business Forms as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of the Debtors, (b) delay in the administration of the Debtors' estates, (c) compromise of the Debtors' internal controls and accounting system and (d) cost to the estates to set up new systems and open new Bank Accounts and print new business forms.

**THE DEBTORS SEEK AUTHORIZATION TO OPEN AND CLOSE BANK ACCOUNTS**

33.    Pursuant to this Motion, the Debtors also seek authorization to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts, closing any Bank Account as they may deem necessary and

appropriate or closing any Bank Account in accordance with the terms of the Bank Account Agreements. The Debtors request that the Court authorize the Banks to honor the Debtors' requests to open or close, as the case may be, such Bank Accounts or additional Bank Accounts; *provided*, *however*, that, unless otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank designated as an Authorized Depository under the U.S. Trustee Guidelines or (iii) any other bank, as the Debtors may determine upon consultation with the U.S. Trustee. New Bank Accounts will comply with the U.S. Trustee's naming and check stock requirements.

34.     The Debtors further request that nothing contained in the order granting the relief requested herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

## REQUEST FOR EXPEDITED RELIEF

35.     Cause exists for expedited relief on this matter. If the Debtors are not permitted to continue to use their Cash Management System in its current form, it would cause immediate and irreparable harm by causing operational chaos, disabling the Debtors from paying for goods and services received postpetition or otherwise approved by this Court and disrupting the collection of receivables. Accordingly, expedited relief is necessary to avoid immediate and irreparable harm to the Debtors.

36.     Pursuant to Local Rule 9013-2, this Motion is verified and is accompanied by a memorandum of law, proposed order and proof of service.

37.     Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, to testify at the

hearing on the Motion regarding the facts set out herein. The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## REQUEST FOR WAIVER OF STAY

38.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the immediate continued use of the Bank Accounts, Cash Management System and Business Forms is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NO PREVIOUS REQUEST

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors request entry of an order:

A.      granting expedited relief;

B.      authorizing maintenance of the Debtors' existing Cash Management System and existing Bank Accounts and Business Forms;

C.      authorizing maintenance and continuation of the Purchase Card Program with an aggregate credit limit of $200,000;

D.      authorizing financial institutions to honor and process related checks and

transfers; and

E.      granting such other relief as the Court deems just and equitable.


Dated: May 5, 2015                    FREDRIKSON & BYRON, P.A.

                                      /e/ Clinton E. Cutler
                                      Clinton E. Cutler (#158094)
                                      James C. Brand (#387362)
                                      Sarah M. Olson (#390238)
                                      200 South Sixth Street, Suite 4000
                                      Minneapolis, Minnesota 55402
                                      Telephone: (612) 492-7000
                                      Facsimile:  (612) 492-7077
                                      ccutler@fredlaw.com
                                      jbrand@fredlaw.com
                                      solson@fredlaw.com

                                      *Proposed Local Counsel to the Debtors
                                      and Debtors in Possession*

                                      – and –

                                      DAVIS POLK & WARDWELL LLP
                                      Marshall S. Huebner (NY #2601094)
                                      Damian S. Schaible (NY #4086864)
                                      Michelle M. McGreal (NY #4599031)
                                      450 Lexington Avenue
                                      New York, New York 10017
                                      Telephone: (212) 450-4000
                                      Facsimile:  (212) 701-5800
                                      marshall.huebner@davispolk.com
                                      damian.schaible@davispolk.com
                                      michelle.mcgreal@davispolk.com

                                      *Proposed Counsel to the Debtors
                                      and Debtors in Possession*

## <u>VERIFICATION</u>

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: <u>May 5          </u>, 2015        Signed: _____

                                                    Joseph A. Broking

# Exhibit A

Bank Accounts

| Debtor | Financial Institution | Account Type | Account Description | Account Number |
|---|---|---|---|---|
| Magnetation LLC | JPMorgan Chase Bank, N.A. | Checking | Main Operating Account | xxxxx8910 |
| Magnetation LLC | JPMorgan Chase Bank, N.A. | Money Market | Interest Escrow Account | xxxxx2742 |

**Exhibit B**

## Magnetation LLC Payment Processing





Magnetation LLC Deposit Processing





Magnetation LLC Cash Management





UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER
(I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING MAINTENANCE OF
THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM, PURCHASE CARD
PROGRAM AND EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND
(III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
RELATED CHECKS AND TRANSFERS**

Magnetation LLC ("**Mag LLC**") and each of its subsidiaries that are debtors and debtors in possession in these chapter 11 cases (the "**Debtors**") submit this memorandum of law in support of the motion submitted herewith (the "**Motion**") in accordance with Local Rule 9013-2(a).  The Debtors seek the entry of an order substantially in the form filed herewith (i) granting an expedited hearing, (ii) authorizing, but not requiring, the Debtors, in consultation with the ad hoc committee of senior secured noteholders, to maintain the Debtors' existing Cash Management System and existing Bank Accounts and Business Forms after the Petition Date and (iii) authorizing applicable banks and other financial institutions to receive, process, honor and pay related checks or electronic transfers used by the Debtors.  This relief will avoid delays in

payment of postpetition obligations and ensure as smooth a transition as possible into chapter 11;

therefore, the Court should grant the relief sought.

## BACKGROUND

The supporting facts are set forth in the Motion, verified by Joseph A. Broking,

Magnetation LLC's Chief Financial Officer. All capitalized terms used herein and not otherwise

defined shall have the meanings ascribed to them in the Motion.

## LEGAL ANALYSIS

### I.   THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.

The Debtors request expedited relief on the Motion. Bankruptcy Rule 9006(c) provides

that the Court may reduce the notice period for a Motion "for cause shown." Cause exists here

to grant the Motion on an expedited basis. As described in the Motion, if the Debtors are not

permitted to continue to use their Cash Management System in its current form, operational

chaos would ensue and cause immediate and irreparable harm to the Debtors' estates, disabling

the Debtors from paying for goods and services received postpetition or otherwise approved by

this Court and disrupting the collection of receivables. Accordingly, expedited relief is

appropriate and should be granted.

### II.   THE DEBTORS SHOULD BE AUTHORIZED TO MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM.

The Debtors seek an order authorizing the continued use of their existing Cash

Management System, which is described in detail in the Motion. This system is similar to those

commonly employed by corporate enterprises comparable to the Debtors in size and complexity.

Widespread use of such systems is attributable to numerous benefits they provide, including the

ability to tightly control corporate funds, ensure cash availability and reduce administrative

2

expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. The requirement of closing down such a system and replacing it with a different system would be substantially disruptive to the Debtors' operations. Accordingly, allowing the Debtors to continue to use the cash management system is in the best interests of the estate and their creditors.

Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See In re Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.*, 115 B.R. 185, 188 (Bankr. D. Minn. 1990); *see also Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration and disbursement of cash pursuant to their Cash Management System described above.

The Bankruptcy Code also provides a debtor in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing. 11 U.S.C. § 364(a); *In re Amdura Corp.*, 75 F.3d at 1453; *Pillar Capital Holdings, LLC v. Williams (In re Living Hope Southwest Med. Servs., LLC)*, 509 Fed. Appx. 578, 583 (8th Cir. 2013); *Shields v. Duggan (In re Dartco, Inc.)*, 197 B.R. 860, 870 (Bankr. D. Minn. 1996). The

3

Debtors seek authorization, to the extent necessary, to obtain unsecured credit or incur unsecured debt in the ordinary operation of their Cash Management System.

The Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtors' Cash Management System without interruption is vital to the Debtors' survival. The Cash Management System is the mechanism whereby the Debtors are able to transfer their revenue toward the payment of their obligations and without which the Debtors' reorganization would fail. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

## III.    THE DEBTORS SHOULD BE AUTHORIZED TO MAINTAIN THEIR EXISTING BANK ACCOUNTS AND BUSINESS FORMS

The Courts have the authority to waive the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the office of the U.S. Trustee. Such relief is routinely granted in this district. *See, e.g.*, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Bankr. D. Minn. Jan. 16, 2015) [ECF No. 17]; *In re Wagstaff Minnesota, Inc.*, No. 11-43073 (Bankr. D. Minn. May 5, 2011) [ECF No. 37]; *In re Genmar Holdings, Inc.*, No. 09-43537 (Bankr. D. Minn. June 4, 2009) [ECF No. 24]; *In re Intrepid U.S.A., Inc.*, No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004) [ECF No. 65].

As detailed in the Motion, continued use of the Bank Accounts and existing check stock is important to ensure a smooth transition into chapter 11 and to aid in the Debtors' efforts to maintain the value of the businesses. Requiring the Debtors to open new Bank Accounts at this early and critical stage of the chapter 11 cases would be expensive, administratively difficult and

disruptive to the Debtors' operations.  Replacement check stock may take a long time to arrive, disrupting the Debtors' ordinary and orderly disbursements.  Consequently, maintenance of the existing Bank Accounts and check stock is not only essential, but is in the best interests of all creditors and other parties in interest in these cases.

If granted the relief requested, the Debtors will not pay, and their banks will be directed not to pay, any prepetition checks except as allowed by order of the Court.  The Debtors can identify those checks that should not be paid and will supply such a list to its banks.  By this manner, the U.S. Trustee's concern regarding a clear demarcation between prepetition and postpetition payments can be enforced.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

5

Dated:  May 5, 2015

FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

– and –

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING
MAINTENANCE OF THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM,
PURCHASE CARD PROGRAM AND EXISTING BANK ACCOUNTS AND BUSINESS
FORMS AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[1] of Magnetation LLC and its subsidiaries that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for an order

authorizing (i) the Debtors to continue to use their existing cash management system and

maintain existing Bank Accounts and business forms and (ii) financial institutions to honor and

process related checks and transfers pursuant to sections 105(a), 362, 363(c)(1), 364, and 503(b)

of the Bankruptcy Code and Bankruptcy Rule 6003 as more fully described in the Motion; and

upon consideration of the Declaration of Joseph A. Broking, Magnetation LLC's Chief Financial

Officer, filed in support of the Debtors' first-day pleadings; and the Court having jurisdiction to

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the
Motion.

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

consideration of the Motion and the requested relief being a core proceeding the Bankruptcy

Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to parties in interest as specified in Local Rule 9013-3(a)(2); and it appearing that no

other or further notice need be provided; and the relief requested in the Motion being in the best

interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion

and having held a hearing with appearances of parties in interest noted in the transcript thereof

(the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and the Court having

determined that immediate relief is necessary to avoid irreparable harm; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

   IT IS ORDERED:

   1.      Pursuant to sections 105(a), 362, 363(c)(1), 364 and 503(b) of the Bankruptcy

Code and Bankruptcy Rule 6003, and subject to the DIP Order, the Motion is granted, including

the request for expedited relief.

   2.      The Debtors are authorized and empowered, but not directed, pursuant to sections

105(a) and 363(c)(1) of the Bankruptcy Code, to continue to maintain, operate and make

transfers under their Cash Management System as described in the Motion in accordance with

the Bank Account Agreements, as applicable.

3.      In accordance with their prepetition practices, the Debtors shall maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of these chapter 11 cases.  As a part thereof, each Debtor shall record in its books and records any transfer made by such Debtor to or for the benefit of any other Debtor that occurs on or after the Petition Date (a "**Postpetition Transfer**"), and shall provide reports of such Postpetition Transfers upon request to (i) counsel for the agent under the Debtors' postpetition financing facility and (ii) counsel for the ad hoc committee of senior secured noteholders.

4.      Any Debtor that makes a Postpetition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code, junior and subordinate to the superpriority administrative claims granted pursuant to any order of this Court authorizing, *inter alia*, the Debtors to obtain postpetition financing and granting adequate protection (including any carve-out).

5.      Pursuant to section 364 of the Bankruptcy Code, and subject to the DIP Order, the Debtors are authorized, in connection with the ordinary course operation of their Cash Management System, to obtain credit and incur debt in the ordinary course of business in accordance with the Bank Account Agreements, as applicable, without any further notice or hearing.

6.      The Debtors are authorized to continue to maintain the Bank Accounts with the same account numbers following the commencement of these cases.

7.      The Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and

3

in the usual and ordinary course and to receive, process, honor and pay any and all postpetition checks, drafts, wires or automated clearing house transfers ("**ACH Transfers**") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtors have good funds standing to their credit with such Bank.

8.      Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Banks believe the payment is or is not authorized by an order of this Court and (b) have no duty to inquire as to whether such payments are authorized by an order of this Court.

9.      The Debtors shall promptly: (i) issue "stop payment" orders and provide the Banks instruction not to pay those checks, drafts, wires, ACH Transfers and other withdrawals that the Debtors specifically identify in writing were made, drawn or issued on account of prepetition claims and should not be paid, processed or honored; and (ii) provide the Banks instruction with respect to the payment of any other checks, drafts, wires, ACH Transfers and other withdrawals from the Bank Accounts, which instruction may be general in nature, subject to any further specific instruction.

10.     The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any check or payment item that may be honored or as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith

4

belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

11.      The Debtors are authorized, but not directed, to pay or reimburse any Bank Account Claims, and the Banks are authorized, in the course of maintaining any of the Bank Accounts for the Debtors and without further Order of this Court, to continue to debit from any applicable Bank Account sufficient funds to satisfy any Bank Account Claim in accordance with the terms of the Bank Account Agreements.

12.      The Bank Account Claims are entitled to be allowed administrative expense priority pursuant to section 503(b) of the Bankruptcy Code.

13.      Any payment from a Bank Account at the request of the Debtors made by a Bank prior to the Petition Date (including any ACH Transfer such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

14.      The Debtors are authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional Bank Accounts, or closing any existing Bank Account as they may deem necessary and appropriate; *provided* that the Debtors shall, as soon as practicable, provide notice of any opening or closing of any Bank Accounts or other bank accounts to (i) the relevant Bank; (ii) the U.S. Trustee; (iii) counsel to the lenders under the Debtors' postpetition financing facility and (iv) counsel to the ad hoc committee of senior secured noteholders.

5

15.     The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such Bank Accounts or additional bank accounts, or otherwise close any Bank Account, in each case in accordance with the terms of any applicable Bank Account Agreement; *provided*, *however*, that, unless otherwise ordered by this Court, any new bank account shall be with (i) a bank insured by the FDIC and that is organized under the laws of the United States or any State therein, (ii) a bank designated as an Authorized Depository under the U.S. Trustee Guidelines or (iii) any other bank, as the Debtors may determine upon consultation with the U.S. Trustee.

16.     This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear on the list attached as Exhibit A to the Motion, and any and all Bank Accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit A to the Motion), and any and all Banks at which such accounts are opened shall similarly be subject to the terms of this Order, as applicable; *provided, however*, that this Order shall not apply to the funding account to be opened in connection with the Debtors' postpetition financing facility in accordance with the DIP Order and the DIP Documents (as defined below).

17.     Nothing contained herein shall prevent Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

18.     The Debtors are authorized to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional

materials, checks and other business forms (collectively, the "**Business Forms**") substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided*, *however*, that as soon as reasonably practicable, the Debtors shall mark "Debtors in Possession" and the chapter 11 case number under which these cases are being jointly administered on any newly printed check stock.

19.     The Debtors are authorized to maintain and continue to use their Purchase Card Program on a secured basis consistent with the terms of the Commercial Card Classic Agreement, dated as of October 27, 2011 (as amended from time to time), and related Bank Account Agreements, but subject to the aggregate credit limit for the Purchase Card Program of $200,000, including authorization for the incurrence of indebtedness, posting of collateral and payment of any obligations thereunder, whether arising before, on or after the Petition Date, in the same manner as before the Petition Date; and JPMC is authorized to exercise any of its rights under the Purchase Card Program in accordance therewith without further order of this Court and relief from the automatic stay under section 362 of the Bankruptcy Code is hereby granted solely for such purpose.

20.     JPMC is entitled to adequate protection with respect to the Cash Management System and the Purchase Card Program as provided in the DIP Order, including, without limitation, the priming liens pursuant to section 364(d) of the Bankruptcy Code provided therein.

21.     To the extent any other order is entered by the Court directing Banks to honor checks, drafts, automated clearing house transfers or other electronic funds transfers or any other withdrawals made, drawn or issued in payment of prepetition or postpetition claims, the obligation to honor such items shall be subject to this Order.

7

22.     Notwithstanding anything to the contrary contained herein, any payment to be made, and any authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the DIP Order and the documentation in respect of the postpetition financing facility (the "**DIP Documents**"), and nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents, and to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

23.     Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.


Dated:                                          _____

                                                The Honorable Gregory F. Kishel
                                                Chief United States Bankruptcy Judge

8