UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN ORDER
(I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE
DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS
AND OTHER COMPENSATION, (B) MAINTAIN EMPLOYEE BENEFITS
PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS AND
(C) HONOR MANAGEMENT SERVICES AGREEMENT AND PAY PREPETITION
OBLIGATIONS RELATED THERETO, (III) AUTHORIZING MAGNETATION
EMPLOYEES TO PROCEED WITH OUTSTANDING WORKERS' COMPENSATION
CLAIMS AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS RELATED CHECKS AND TRANSFERS**

TO: The parties in interest as defined in Local Rule 9013-3(a)(2).

1.      Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), file this motion (this "**Motion**") requesting the relief described below, and give notice of hearing.

2.      The Court will hold a hearing on the Motion at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A of the U.S. Courthouse at 316 North Robert Street, St. Paul, Minnesota 55101.

3.      Local Rule 9006-1(c) provides deadlines for responses to this Motion.  However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1070-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The cases are currently pending in this Court.

5.      This Motion arises under sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.  This Motion is filed under Local Rules 9013-1, 9013-2 and 9013-3.  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 9013 and Local Rules 9013-2(b) and 9013-3.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed.

7.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, Chief Financial Officer

2

of Magnetation LLC, which is incorporated herein by reference.  Facts specific to the relief

requested herein are set forth in the relevant section below.

**RELIEF REQUESTED**

8.     By this motion (the "**Motion**"), and pursuant to sections 105(a), 362(d), 363(b),

507(a)(4), 507(a)(5), 541, 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003,

the Debtors seek entry of an order substantially in the form filed herewith (the "**Order**"): (a)

authorizing, but not requiring, them to pay or cause to be paid all or a portion of the amounts

owing (and associated costs) under or related to Wages, the Withholding Obligations, the

Reimbursement Obligations, the Health and Welfare Plan Obligations, the Vacation and Sick

Leave Obligations, the Pension Plan Obligations, the Savings Plans Obligations, the Workers'

Compensation Obligations, the Contingent Workers Obligations, the Plant-Level Incentive Plan

Obligations, the Allowance Programs Obligations and the Management Services Obligations

(each as individually defined below and, collectively, the "**Prepetition Employee**

**Obligations**"); (b) unless otherwise set forth herein, authorizing, but not requiring, them to

continue their plans, practices, programs and policies for the Magnetation Employees (as defined

below), including, without limitation, those giving rise to the Prepetition Employee Obligations

(the "**Employee Programs**"), as those Employee Programs were in effect as of the Petition Date

and as may be modified, terminated, amended or supplemented from time to time, and to make

payments pursuant to such plans, practices, programs and policies in the ordinary course of

business, as well as to pay related administrative obligations; (c) authorizing, but not requiring,

them to continue performing and exercising their respective rights and obligations under the

Management Services Agreement (as defined below) in the ordinary course of business; (d)

permitting Magnetation Employees holding claims under the Workers' Compensation Programs

to proceed with such claims in the appropriate judicial or administrative fora; and (e) authorizing

applicable banks and other financial institutions to receive, process, honor and pay any and all

checks drawn on the Debtors' payroll and general disbursement accounts and automatic payroll

and other transfers to the extent that those checks or transfers relate to any of the foregoing.

9.      The Debtors seek this relief on an expedited basis because any delay in paying

Prepetition Employee Obligations will adversely impact the Debtors' relationships with their

workforce and could irreparably harm the Magnetation Employees' morale, dedication,

confidence and cooperation.    The Debtors' businesses hinge on their relationship with their

customers, and the ability to provide superior services is vital.    The Magnetation Employees'

support for the Debtors' reorganization efforts is critical to the success of those efforts.    At this

early stage of the chapter 11 cases, the Debtors simply cannot risk the substantial damage to their

businesses that would inevitably occur as a result of any decline in the morale of their workforce

attributable to the Debtors' failure to pay wages, salaries and employee benefits.

10.     By seeking the authorization requested herein, it should not be presumed that the

Debtors have determined, as of this time, which of the Prepetition Employee Obligations they

will pay or honor, nor should any party rely on this Motion as to any specific claim or benefit.

## WAGES, SALARIES AND OTHER COMPENSATION

11.     Collectively, the Debtors directly employ approximately 361 people in an active

status, [1] working in both full- and part-time positions, including operators, electricians,

millwrights, pipefitters, lab technicians and administrative personnel (together with current

---

[1] In addition, approximately three of the Employees (as defined below) are in an inactive status.  While such Employees are not receiving wages, some may be receiving other benefits, including, but not limited to, disability payments from Health and Welfare Plans (as defined below), workers' compensation benefits from state-mandated programs, continuation of medical benefits, certain life insurance benefits and career transition services, depending on the type of leave and/or years of service.

members of the Debtors' boards of directors, solely in their capacity as such, the "**Employees**",

and together with the Other Employees (as defined below), the "**Magnetation Employees**").  As

of the Petition Date, approximately 33.5% of the Employees were represented by Local 49 of the

International Union of Operating Engineers.

12.    The majority of the Employees are paid on a bi-weekly basis.  The Debtors'

average gross payroll per period is approximately $910,000 for the Employees.  The Debtors

estimate that as of the Petition Date, they owe approximately $1.19 million[2] in wages and

salaries to Employees ("**Wages**").  As a part of those Wages, excluding accrued Vacation and

Sick Leave Obligations, which are addressed below, the Debtors believe that no Employee is

owed in excess of the $12,475 cap for Wages under section 507(a)(4) of the Bankruptcy Code as

of the Petition Date.

## WITHHOLDING OBLIGATIONS

13.    The Debtors routinely withhold from Employees' wages certain amounts that the

Debtors are required to transmit to third parties for such purposes as Social Security, Medicare,

federal, state and local income taxes, union dues and fees, defined contribution retirement plan

contributions and payroll deduction payment programs for various garnishments, child support

and other similar orders.  The Debtors believe that such withheld funds, to the extent that they

were in the Debtors' possession as of the Petition Date and/or remain in the Debtors' possession,

are not property of the Debtors' bankruptcy estates under section 541 of the Bankruptcy Code.

---

[2] This amount exceeds the average gross payroll per period for the Employees because the majority of the Employees are paid on a bi-weekly pay schedule.  Such Employees are owed Wages accrued during the two-week period beginning on April 17, 2015 through and including May 1, 2015, in addition to Wages accrued on May 2 through and including and May 5, 2015.

## BUSINESS EXPENSE REIMBURSEMENT

14.     The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their business duties on behalf of the Debtors.   These reimbursement obligations include travel, meals, lodging, professional training, license fees, parts and supplies for business use and other miscellaneous business expenses (collectively, the "**Reimbursement Obligations**").

15.     Employees file monthly expense reports and reimbursement for Reimbursement Obligations is made directly to the Employee for business expenses paid by the Employee.  It is difficult for the Debtors to determine the exact amount of Reimbursement Obligations outstanding at any particular time because of the generally unpredictable and irregular nature of the Reimbursement Obligations.   Historically, Reimbursement Obligations are approximately $8,750 per month.

## HEALTH AND WELFARE BENEFITS

16.     The Debtors offer several health and welfare benefit plans (collectively, the "**Health and Welfare Plans**") for represented and non-represented Employees, including coverage for medical, medical premium and expense reimbursement, prescription, dental, vision, life, short-term and long-term disability, accidental death and dismemberment, business travel and accident insurance and employee assistance programs (collectively, the "**Health and Welfare Plan Obligations**").  Pursuant to the terms of certain of the Health and Welfare Plans, the Debtors pay all of the premiums for the Employees, who may elect dependent coverage.  The combined monthly premium for which the Debtors are responsible under these plans is approximately $167,000 for represented Employees and $223,000 for non-represented Employees.  In 2014, the Debtors incurred medical and prescription drug expenses related to the Employees of approximately $3.1 million.  Pursuant to the CBAs (as defined below), certain of

the Health and Welfare Plans for represented Employees are administered by a third party, Wilson-McShane Corporation, which, among other things, processes and administers claims and seeks reimbursement for compensable claims from the Debtors.

17.    Because of the manner in which such expenses are incurred and claims are processed under the Health and Welfare Plans, it is difficult for the Debtors to determine the extent of their obligations under the Health and Welfare Plans outstanding at any particular time. Based on historical experience and expected future trends, the Debtors estimate that the monthly cost of the Health and Welfare Plan Obligations (including administrative payments to the third-party administrators) is approximately $390,000.

## VACATION POLICY AND SICK LEAVE

18.    Pursuant to the Debtors' vacation policies, eligible Employees are paid their regularly scheduled full- or part-time wages, for each vacation day, up to the maximum number of days accrued based on years of service.  For Employees terminating their employment with the Debtors, accrued and unused vacation days are monetized and paid out upon termination. Additionally, at the beginning of each calendar year, the Debtors offer Employees two "floating" holidays.  Employees may use these "floating" holidays at any time during such calendar year. Up to 48 hours of unused vacation time may be carried over from year to year.  The Debtors' vacation policy is inclusive of sick leave; the Debtors do not provide Employees with any additional sick leave.  The Debtors also do not provide short-term disability benefits beyond those available through the Health and Welfare Plans.  The Debtors have prepetition accrued vacation and sick leave obligations for Employees (the "**Vacation and Sick Leave Obligations**"), to be honored in the ordinary course of business.  The Debtors estimate that these average monthly obligations are approximately $44,000.

7

## RETIREMENT AND PENSION PLANS

19.     Pursuant to two collective bargaining agreements (the "**CBAs**"),[3] certain of the Debtors are obligated to make contributions to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "**Pension Plan**"), which is a multi-employer pension plan, on behalf of employees represented by Local 49 of the International Union of Operating Engineers.  The Pension Plan provides pension and disability pension benefits to qualifying represented Employees retiring from a participating employer. The Debtors do not contribute to a pension plan or have any pension-related obligations for non-represented Employees.  The Debtors estimate that their annual Pension Plan contributions (the "**Pension Plan Obligations**") are approximately $1.7 million.[4]  As of the Petition Date, the Debtors believe they are current on their Pension Plan Obligations.

20.     The Debtors maintain, for certain eligible represented and non-represented Employees, qualified defined contribution plans that meet the requirements of sections 401(a) and 401(k) of the Internal Revenue Code (the "**Savings Plans**").  The Debtors match contributions to the Savings Plans by non-represented Employees.  The Debtors make the matching contributions bi-weekly at the same time as they process payroll.  The Debtors' monthly contributions are approximately $40,000.

---

[3] The Debtors intend to comply with 11 U.S.C. § 1113(f) and continue to honor their obligations pursuant to the CBAs.

[4] Nothing contained in this Motion or any order granting the relief requested herein, shall constitute an assumption or postpetition reaffirmation of any of the Debtors' Pension Plan Obligations.  While they have no current plans to do so, the Debtors expressly reserve their rights to seek to modify or terminate any benefits provided under any agreements in any manner permitted by law, including, as applicable, pursuant to section 1113 of the Bankruptcy Code or otherwise.

## WORKERS' COMPENSATION PROGRAM

21.     Under applicable law and in accordance with the Management Services Agreement, the Debtors are required to maintain workers' compensation insurance programs to provide the Magnetation Employees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors (the "**Workers' Compensation Program**"), and to satisfy the Debtors' obligations arising under or related to these programs (the "**Workers' Compensation Obligations**").     The Debtors satisfy their Workers' Compensation Obligations through an insurance policy with New Hampshire Insurance Co.   The Debtors do not operate under any self-qualified or self-insured worker's compensation programs. As of December 31, 2014, the Debtors had no unfunded Workers' Compensation Obligations. The average monthly cost of Workers' Compensation Obligations paid by the Debtors is approximately $84,000 for Employees and $7,000 for Other Employees.

## CONTINGENT WORKERS

22.     From time to time, the Debtors use the personal services of individuals employed by, and provided through, staffing agencies and of individuals providing personal services directly as independent contractors (collectively, the "**Contingent Workers**").   Such services are necessary to the operation of the Debtors' businesses.   The Contingent Workers provide services to the Debtors including, but not limited to, on-site security, administrative services, cleaning and legislative lobbying.   Payments to the Contingent Workers vary according to the terms of the Contingent Workers' individual contracts with the Debtors or according to the terms of the Debtors' contracts with the appropriate staffing agencies.    It is difficult for the Debtors to determine total accrued and unpaid prepetition obligations to the Contingent Workers because of the generally unpredictable and irregular nature of such obligations.   Based on an average

outstanding monthly balance, the Debtors believe that their total accrued and unpaid prepetition obligations to the Contingent Workers as of the Petition Date do not exceed $325,000 (the "**Contingent Workers Obligations**") and that no one Contingent Worker is owed in excess of the $12,475 cap for Wages under section 507(a)(4) of the Bankruptcy Code.

### INCENTIVE PLAN

23.     In the ordinary course of business, the Debtors maintain a bi-weekly production bonus incentive plan (the "**Plant-Level Incentive Plan**").  The Plant-Level Incentive Plan covers certain of the Employees, none of whom are senior management or insiders as defined in section 101(31) of the Bankruptcy Code.[5]  Under the Plant-Level Incentive Plan, represented and non-represented Employees that achieve certain production targets set by the Debtors may earn amounts in addition to their hourly base wage.  Based on recent historical averages, the monthly amount of the Plant-Level Incentive Plan is approximately $201,600.

### ALLOWANCE PROGRAMS

24.     In addition to the foregoing, the Debtors have in place certain allowance programs that are offered to certain Employees, including for work boots and prescription protective eyewear (collectively, the "**Allowance Programs**").  The Debtors believe that the Allowance Programs are critical to operating the Debtors' businesses and, with respect to represented Employees, are contractually required.  For example, the nature of the Debtors' businesses requires that it provide Employees with work boots and prescription protective eyewear to ensure Employee safety.  The Debtors believe that failing to honor expected benefits under the Allowance Programs would have a significant adverse effect on the Debtors' businesses and

---

[5] Section 101(31) defines an "insider" with respect to a corporation as the following: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor."

Employees.   The total amount of annual payments under the Allowance Programs (the "**Allowance Programs Obligations**") is approximately $65,000.

## MANAGEMENT SERVICES AGREEMENT

25.   Management, corporate and administrative employees (collectively, the "**Other Employees**") are provided to the Debtors by Magnetation, Inc. ("**Mag Inc.**") pursuant to that certain Management Services Agreement by and between Mag Inc. and Mag LLC, dated October 4, 2011 (the "**Management Services Agreement**"). [6]   The Other Employees include substantially all of the managers, supervisors, engineers, technical and administrative and clerical support-staff and other independent contractors who run the Debtors' businesses and provide the other services essential to carrying out their business strategy.   These approximately 125 individuals, working alongside the Employees, are responsible for operating the Debtors on a day-to-day basis and, most recently, have worked tirelessly to assist in preparing for the filing of these chapter 11 cases.   They are intimately familiar with the Debtors' businesses, the technology upon which it is based, the industry as a whole and the counterparties with whom the Debtors do business on a regular basis.

26.   The Debtors' ability to maintain their business operations, preserve the value of their assets and maximize creditor recoveries through a successful restructuring process hinges on the services of the Other Employees.   Should the Debtors be required to obtain these services elsewhere, either from a third party or by hiring employees capable of providing such services and managing the Debtors, it would create (a) significant additional costs to the Debtors and (b)

---

[6] Due to confidentiality concerns, the Debtors have not attached a copy of the Management Services Agreement to this Motion.  However, upon request, the Debtors will provide a copy of the Management Services Agreement on a confidential basis to the Court, the U.S. Trustee and the advisors to the official committee of unsecured creditors appointed in these chapter 11 cases on a professional eyes only basis.

major disruption to, or shut down of, the Debtors' operations.  In short, the Debtors would be incapable of functioning without the services provided by the Other Employees.  Thus, the continued ability to rely upon the provision of Other Employees is critical to the Debtors' transition into chapter 11 and their reorganization efforts.

27.    Pursuant to the Management Services Agreement, Mag LLC is required to reimburse Mag Inc. for Other Employees' compensation and benefits, operating costs incurred by Mag Inc. on behalf of Mag LLC and Mag Inc.'s overhead costs attributable to the Other Employees (collectively, the "**Management Services Obligations**").  Importantly, the only payments made to Mag Inc. under the Management Services Agreement are to reimburse Mag Inc. for the actual costs of the services, and Mag Inc. receives no pass-through revenue or margin. In 2014, the Debtors paid Mag Inc. approximately $12.4 million in respect of Management Services Obligations pursuant to the Management Services Agreement, which amount, if not a larger amount, the Debtors believe they otherwise would have had to pay directly to the Other Employees and various third parties in respect of the items covered by the Management Services Obligations.

28.    The annual salaries of the Other Employees range from $30,000 to $315,000.  The Other Employees are paid on a bi-weekly basis, and the Debtors reimburse Mag Inc. for such payments bi-weekly in arrears pursuant to the Management Services Agreement.  As of the Petition Date, the Debtors owe Mag Inc. approximately $544,000 in respect of such wages and salaries pursuant to the Management Services Agreement.  Given that Mag Inc. pays the Other Employees, and the Debtors simply reimburse Mag Inc. in respect of such payments, the statutory caps set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code do not apply to the Other Employees and the Debtors' payments to Mag Inc. under the Management Services

Agreement in respect thereof.  Mag Inc.'s books and records indicate that only two Other Employees are owed in excess of the $12,475 cap under section 507(a)(4) of the Bankruptcy Code on account of such Other Employees being paid on a bi-weekly pay schedule.  These two Other Employees are owed wages accrued during the two-week period beginning on April 17, 2015 through and including May 1, 2015, in addition to wages accrued on May 2 through and including May 5, 2015.  As of the Petition Date, the Debtors estimate that, in the aggregate, these two Other Employees are owed approximately $3,500 in excess of the $12,475 cap.  Otherwise, in no event do the prepetition wages and salaries owing to any Other Employee as of the Petition Date exceed the statutory caps.

### THE AUTOMATIC STAY SHOULD BE MODIFIED AS IT APPLIES TO MAGNETATION EMPLOYEES' CLAIMS UNDER THE WORKERS' COMPENSATION PROGRAMS

29.    It is imperative that the Debtors be permitted to continue to pay and/or honor any and all Workers' Compensation Obligations, including all prepetition premiums, claims (including claim settlements), losses and expenses in connection with their Workers' Compensation Obligations and to pay all costs and expenses associated with the Workers' Compensation Programs, including such costs and expenses related to administration, servicing, processing, adjusting, paying and settling claims and losses under these programs.

30.    It is crucial for employee morale and the operations of the Debtors' businesses for the Debtors to continue to (i) pay workers' compensation benefits and (ii) honor their obligations under the Workers' Compensation Programs described herein.  The Debtors anticipate that they

will obtain debtor-in-possession financing and will have sufficient cash on hand to make these

payments, which is in the best interests of the Debtors, their estates and their creditors.[7]

31.    Section 362(a) of the Bankruptcy Code, commonly known as the automatic stay,

operates to stay, among other things:

> the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other
> action or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title.

Section 362, however, permits a debtor or other parties in interest to request a modification or

termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

32.    To the extent any of the Magnetation Employees hold claims pursuant to the

Workers' Compensation Programs, the Debtors seek authorization under section 362(d) of the

Bankruptcy Code to permit such Magnetation Employees to proceed with such claims in the

appropriate judicial or administrative fora.  The Debtors believe cause exists to grant them

authority to modify the automatic stay because staying such claims could have a detrimental

effect on the financial (and medical) well-being and morale of the Magnetation Employees and

lead to the departure of certain Magnetation Employees.  Such departures could cause a severe

disruption in the Debtors' businesses, to the detriment of all parties in interest.  To this end, the

Debtors seek an order granting (a) relief from the automatic stay as it relates to Employee and

Other Employee claims under the Workers' Compensation Programs and (b) waiver of the

corresponding notice requirements under Bankruptcy Rule 4001(d).

---

[7] Contemporaneously herewith, the Debtors have filed a motion seeking approval of such debtor-in-
possession financing.

33.     Pursuant to this Motion, the Debtors do not seek a waiver, termination or modification of the automatic stay with respect to any other claims.

**APPLICABLE BANKS SHOULD BE AUTHORIZED TO
HONOR AND PAY CHECKS ISSUED AND MAKE OTHER TRANSFERS
TO PAY THE PREPETITION EMPLOYEE OBLIGATIONS**

34.     The Debtors further request that the Court authorize all of the Debtors' banks to receive, process, honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtors for the Prepetition Employee Obligations.  The Debtors also seek authority to issue new postpetition checks, or effect new fund transfers, for Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

35.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtors' checks, wire transfers and direct deposit transfers for Prepetition Employee Obligations may be dishonored or rejected by the banks.

36.     The Debtors represent that each of these checks or transfers is or will be drawn on the Debtors' payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Prepetition Employee Obligations.  Accordingly, the Debtors believe that prepetition checks and transfers other than those for Prepetition Employee Obligations will not be honored inadvertently.

## NO ASSUMPTION OR WAIVER OF RIGHTS

37.     Authorization to pay any amounts for Prepetition Employee Obligations shall not be deemed to constitute a postpetition assumption, reaffirmation or adoption of any contract, program, plan or policy pursuant to section 365 of the Bankruptcy Code, and shall not affect the Debtors' right to terminate or modify any plans, practices, programs or policies related to the Magnetation Employees  The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay Prepetition Employee Obligations shall not affect the Debtors' right to contest the amount or validity of any Prepetition Employee Obligations, including any payroll taxes that may be due to any taxing authority.

## REQUEST FOR EXPEDITED RELIEF

38.     The Debtors request expedited relief on this Motion.  The Debtors have scheduled and served a number of "first day" motions designed to facilitate an orderly transition to chapter 11.  The granting of this Motion on an expedited basis will enable the Debtors to remain current on their outstanding Prepetition Employee Obligations.  If expedited relief is not granted, the provision of benefits pursuant to the Employee Programs may be delayed or prevented entirely, and the morale of the Magnetation Employees will suffer, which could lead to the departure of skilled and experienced Magnetation Employees.  Such departures could cause a severe disruption in the Debtors' businesses, to the detriment of all parties in interest.  Thus, if the Debtors are not permitted to continue their ordinary business operations by continuing to pay and provide benefits to the Magnetation Employees and honoring the Management Services Agreement, and to assure the Magnetation Employees that authority has been granted to honor all such claims, immediate and irreparable harm will result.

16

39.    Pursuant to Local Rule 9013-2, this Motion is verified and is accompanied by a memorandum of law, proposed order and proof of service.

40.    Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein.   The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## REQUEST FOR WAIVER OF STAY

41.    In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.   Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."   As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.   Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NO PREVIOUS REQUEST

42.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors request the entry of an order:

A.      granting an expedited hearing;

B.      authorizing, but not directing, the Debtors to pay Prepetition Employee

Obligations;

C.      authorizing Magnetation Employees to proceed with outstanding workers'

compensation claims;

D.      authorizing financial institutions to honor and process checks and transfers related

to the Prepetition Employee Obligations; and

E.      granting such other relief as the Court deems just and equitable.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated:  May 5, 2015                     FREDRIKSON & BYRON, P.A.

                                        */e/ Clinton E. Cutler*
                                        Clinton E. Cutler (#158094)
                                        James C. Brand (#387362)
                                        Sarah M. Olson (#390238)
                                        200 South Sixth Street, Suite 4000
                                        Minneapolis, Minnesota 55402
                                        Telephone: (612) 492-7000
                                        Facsimile:  (612) 492-7077
                                        ccutler@fredlaw.com
                                        jbrand@fredlaw.com
                                        solson@fredlaw.com

                                        *Proposed Local Counsel to the Debtors
                                        and Debtors in Possession*

                                        -and-

                                        DAVIS POLK & WARDWELL LLP
                                        Marshall S. Huebner (NY #2601094)
                                        Damian S. Schaible (NY #4086864)
                                        Michelle M. McGreal (NY #4599031)
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile:  (212) 701-5800
                                        marshall.huebner@davispolk.com
                                        damian.schaible@davispolk.com
                                        michelle.mcgreal@davispolk.com

                                        *Proposed Counsel to the Debtors
                                        and Debtors in Possession*

## **VERIFICATION**

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: _____May 5_____, 2015          Signed: _____

                                                        Joseph A. Broking

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN ORDER
(I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO
(A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS AND OTHER
COMPENSATION, (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY
RELATED ADMINISTRATIVE OBLIGATIONS AND (C) HONOR MANAGEMENT
SERVICES AGREEMENT AND PAY PREPETITION OBLIGATIONS RELATED THERETO,
(III) AUTHORIZING MAGNETATION EMPLOYEES TO PROCEED WITH OUTSTANDING
WORKERS' COMPENSATION CLAIMS AND (IV) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Magnetation LLC ("**Mag LLC**") and each of its subsidiaries that are debtors and debtors

in possession in these chapter 11 cases (the "**Debtors**") submit this memorandum of law in

support of the motion submitted herewith (the "**Motion**")[1] in accordance with Local Rule 9013-

2(a).

The Debtors seek the entry of an order  substantially in the form filed herewith

(i) granting an expedited hearing; (ii) authorizing, but not requiring, the Debtors to (a) pay the

Prepetition Employee Obligations, (b) maintain the Employee Programs and pay related

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in
the Motion.

administrative obligations, (c) honor the Management Services Agreement and pay prepetition obligations related thereto and (d) permit Magnetation Employees with claims under the Workers' Compensation Programs to proceed with such claims; and (iii) authorizing applicable banks and other financial institutions to receive, process, honor and pay related checks and transfers.

The Motion should be granted because Debtors have a compelling business justification for payment of these obligations.

## BACKGROUND

The supporting facts are set forth in the Motion, verified by Joseph A. Broking, Chief Financial Officer of Magnetation LLC. All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

## LEGAL ANALYSIS

## I.     THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.

The Debtors request expedited relief on the Motion.  Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a motion "for cause shown."  Cause exists here to grant the Motion on an expedited basis.  The granting of this Motion on an expedited basis will enable the Debtors to remain current on their outstanding Prepetition Employee Obligations.  If expedited relief is not granted, the provision of benefits pursuant to the Employee Programs may be delayed or prevented entirely, and the morale of the Debtors' workforce will suffer greatly, which could lead to the immediate departure of skilled and experienced Magnetation Employees. Such departure could cause a severe disruption in the Debtors' businesses, to the detriment of all parties in interest.  Thus, if the Debtors are not permitted to continue their ordinary course operations by continuing to pay and provide benefits to Magnetation Employees and honoring

2

the Management Services Agreement, and to assure the Magnetation Employees that authority

has been granted to make such payments and continue such benefits, immediate and irreparable

harm will result.  Accordingly, the expedited relief requested is necessary to avoid immediate

and irreparable harm.

## II.     THE COURT HAS AUTHORITY TO APPROVE A POSTPETITION PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS.

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-

petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a

novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

"Courts have used their equitable power under section 105(a) of the Code to authorize the

payment of pre-petition claims when such payment is deemed necessary to the survival of a

debtor in a chapter 11 reorganization." *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del.

1999).

In a long line of well-established cases, federal courts have consistently permitted

postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106

U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent

"stoppage of [crucial] business relations"); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546

(Bankr. W.D. Mo. 2001); *In re Lehigh and N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re*

*Just for Feet, Inc.*, 242 B.R. at 825 ("The Supreme Court, the Third Circuit and the District of

Delaware all recognize the court's power to authorize payment of prepetition claims when such

payment is necessary for the debtor's survival during chapter 11.").

3

This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Payless Cashways, Inc.*, 268 B.R. at 546; *In re Just for Feet, Inc.*, 242 B.R. at 824 ("While the doctrine [of necessity] was not codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of the Code to authorize the payment of prepetition claims . . . ."); *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (recognizing the doctrine of necessity as an equitable doctrine). The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.  The court in *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  The court stated that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Debtors' decisions to use, sell or lease assets outside the ordinary course

4

of business must be based upon the sound business judgment of the debtor. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *see also In re Trilogy Dev. Co, LLC*, No. 09-42219-DRD-11, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. Aug. 31, 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations omitted)); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy"). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d

5

Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)).

Moreover, to the extent the Debtors seek authority to continue to withhold funds pursuant to the Withholding Obligations, the Debtors believe that such funds are not property of the Debtors' estates.

## III.   POSTPETITION PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS IS APPROPRIATE IN THESE CASES.

The Debtors submit that the requested relief is appropriate under section 105(a) of the Bankruptcy Code, the doctrine of necessity and section 363(b) of the Bankruptcy Code, because the payment of the Prepetition Employee Obligations represents a sound exercise of the Debtors' business judgment, is essential to the Debtor's continued operations and is necessary to avoid immediate and irreparable harm.  This is because any delay in paying Prepetition Employee Obligations will adversely impact the Debtors' relationships with their workforce and could irreparably impair the Magnetation Employees' morale, dedication, confidence and cooperation. The Debtors' businesses hinge on their relationships with their customers, and the ability to provide superior services is vital.  The Magnetation Employees' support for the Debtors' reorganization efforts is critical to the success of those efforts.  At this early stage, the Debtors simply cannot risk the substantial damage to their businesses that would inevitably attend any decline in the Magnetation Employees' morale attributable to the Debtors' failure to pay wages, salaries, benefits and other similar items.

Furthermore, pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, an individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtors for contributions to employee benefit plans arising from services rendered within 180 days before

6

the Petition Date, are each afforded unsecured priority status of $12,475 per employee. The

Debtors believe that many of their Prepetition Employee Obligations constitute priority claims.

Accordingly, the payment of such claims would not harm the Debtors' general unsecured

creditors.

In the overwhelming majority of large corporate chapter 11 filings, including in this

district, courts have approved payment of employee prepetition claims for compensation,

benefits and expense reimbursements similar to those described herein. *See, e.g.*, *In re

Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (RJK) (Bankr. D. Minn. Jan. 20,

2015) [ECF No. 47]; *In re SCICOM Data Servs., Ltd.*, No. 13-43894 (MER) (Bankr. D. Minn.

Aug. 20, 2013) [ECF No. 19]; *In re Wagstaff Minn. Inc.*, No. 11-43073 (KAC) (Bankr. D. Minn.

May 5, 2011) [ECF No. 33]; *In re Duke & King Acquisition Corp.*, No. 10-38652 (GFK) (Bankr.

D. Minn. Dec. 8, 2010) [ECF No. 37]; *In re Schwing Am., Inc.* No. 09-36760 (NCD) (Bankr. D.

Minn. Oct. 2, 2009) [ECF No. 17]; *In re Genmar Holdings, Inc.*, No. 09-43537 (KAC) (Bankr.

D. Minn. June 4, 2009) [ECF No. 25]; *In re Polaroid Corp.* No. 08-46617 (GFK) (Bankr. D.

Minn. Dec. 23, 2008) [ECF No. 22].

## IV.   HONORING AND CONTINUING PERFORMANCE UNDER THE MANAGEMENT SERVICES AGREEMENT IS APPROPRIATE IN THESE CASES.

As with the Prepetition Employee Obligations, the Debtors submit that they should be

authorized to continue performing under the Management Services Agreement pursuant to

section 105(a) of the Bankruptcy Code, the doctrine of necessity and section 363(b) of the

Bankruptcy Code, because such performance represents a sound exercise of the Debtors'

business judgment, is essential to the Debtors' continued operations and is necessary to avoid

immediate and irreparable harm. Specifically, it is essential that the Debtors be authorized, but

not directed, to continue to perform and exercise their rights under the Management Services

Agreement at this time to prevent severe disruptions in these chapter 11 cases and to their businesses generally.  As further described in the Motion, the Debtors' ability to maintain their business operations, preserve the value of their assets and maximize creditor recoveries through a successful restructuring process hinges on the Debtors' ability to rely upon the services of the Other Employees.  Should the Debtors be required to obtain these services elsewhere, either from a third party or by hiring employees capable of providing such services and managing the Debtors, it would likely lead to (a) significant additional costs to the Debtors and (b) major disruption to the Debtors' operations during the transition into chapter 11.

Notably, courts have permitted the continued honoring and payment of prepetition obligations in connection with a critical prepetition agreement.  *See, e.g.*, *In re Pinnacle Airlines Corp.*, No. 12-11343 (REG) (Bankr. S.D.N.Y. Apr. 3, 2012) [ECF No. 46] (authorizing the debtors to continue honoring interline agreements, clearinghouse agreements and code share agreements and to pay prepetition obligations related thereto); *In re Garlock Sealing Techs., LLC*, No. 10-31607 (Bankr. W.D.N.C. June 8, 2010) [ECF No. 44] (authorizing the debtors' continued performance under prepetition management services agreement).

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

8

Dated:   May 5, 2015                    FREDRIKSON & BYRON, P.A.

                                        */e/ Clinton E. Cutler*
                                        Clinton E. Cutler (#158094)
                                        James C. Brand (#387362)
                                        Sarah M. Olson (#390238)
                                        200 South Sixth Street, Suite 4000
                                        Minneapolis, Minnesota 55402
                                        Telephone: (612) 492-7000
                                        Facsimile:  (612) 492-7077
                                        ccutler@fredlaw.com
                                        jbrand@fredlaw.com
                                        solson@fredlaw.com

                                        *Proposed Local Counsel to the Debtors*
                                        *and Debtors in Possession*

                                        -and-

                                        DAVIS POLK & WARDWELL LLP
                                        Marshall S. Huebner (NY #2601094)
                                        Damian S. Schaible (NY #4086864)
                                        Michelle M. McGreal (NY #4599031)
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile:  (212) 701-5800
                                        marshall.huebner@davispolk.com
                                        damian.schaible@davispolk.com
                                        michelle.mcgreal@davispolk.com

                                        *Proposed Counsel to the Debtors*
                                        *and Debtors in Possession*

9

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING,
(II) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES,
SALARIES, EMPLOYEE BENEFITS AND OTHER COMPENSATION,
(B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED
ADMINISTRATIVE OBLIGATIONS AND (C) HONOR MANAGEMENT SERVICES
AGREEMENT AND PAY PREPETITION OBLIGATIONS RELATED THERETO,
(III) AUTHORIZING MAGNETATION EMPLOYEES TO PROCEED WITH
OUTSTANDING WORKERS' COMPENSATION CLAIMS AND
(IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS
RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[1] of Magnetation LLC ("**Mag LLC**") and its subsidiaries

that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for

an order (this "**Order**") pursuant to sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5), 541,

1107(a) and 1108 of the Bankruptcy Code, (i) granting an expedited hearing; (ii) authorizing, but

not requiring, the Debtors to (a) pay the Prepetition Employee Obligations, (b) maintain the

Employee Programs and pay related administrative obligations, (c) honor the Management

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

Services Agreement and pay prepetition obligations related thereto and (d) permit Employees

with claims under the Workers' Compensation Programs to proceed with such claims and

insurers to continue using collateral and security under the Workers' Compensation Programs;

and (iii) authorizing applicable banks and other financial institutions to receive, process, honor

and pay related checks and transfers, as more fully described in the Motion; and upon

consideration of the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation

LLC, filed in support of the Debtors' first-day pleadings; and the Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

consideration of the Motion and the requested relief being a core proceeding the Bankruptcy

Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to parties in interest as specified in Local Rule 9013-3(a)(2), and it appearing that no

other or further notice need be provided; and the relief requested in the Motion being in the best

interests of the Debtors and their estates and creditors, and the Court having reviewed the Motion

and having held a hearing with appearances of parties in interest noted in the transcript thereof

(the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein, and the Court having

determined that the relief requested is necessary to avoid immediate and irreparable harm, and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor,

IT IS ORDERED

1.      Pursuant to sections 105(a), 362(d), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a)

and 1108 of the Bankruptcy Code, the Motion is granted, including the request for expedited

2

relief.

2.      The Debtors shall be, and hereby are, authorized, but not required, to pay or cause to be paid all amounts required under or related to the Prepetition Employee Obligations.

3.      The Debtors are authorized, but not required, to continue to pay and honor their obligations arising under or related to their plans, practices, programs and policies for the Magnetation Employees as set forth in the Motion, including, without limitation, those giving rise to the Prepetition Employee Obligations (collectively, the "**Employee Programs**"), as those Employee Programs were in effect as of the Petition Date and as such Employee Programs may be modified, terminated, amended or supplemented from time to time in the ordinary course of the Debtors' businesses.

4.      The Debtors are authorized, but not required, to (i) continue utilizing Wilson-McShane Corporation for certain services as described in the Motion and to pay or cause to be paid such claims and when such obligations are due and (ii) pay prepetition amounts owing in the ordinary course of business to third parties in connection with administering and maintaining the Employee Programs.

5.      The Debtors shall be, and hereby are, authorized, but not required, to honor the prepetition obligations arising under the Management Services Agreement and to continue to perform under and exercise their rights and obligations under the Management Services Agreement.

6.      The (a) the automatic stay is modified solely to the extent necessary to allow Magnetation Employees to proceed with claims under the Workers' Compensation Programs in the appropriate judicial or administrative fora and to permit insurers under the Workers'

Compensation Programs to continue to access collateral and security provided by the Debtors pursuant to the Workers' Compensation Programs and (b) notice requirements under Bankruptcy Rule 4001(d) with respect to (a) above are waived.

7.      All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

8.      Nothing in the Motion or this Order, nor any payments made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtors, (b) an assumption or postpetition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (d) a waiver of any rights, claims or defenses of the Debtors.

9.      Nothing in the Motion or this Order shall impair the ability of the Debtors to contest the validity or amount of any payment made pursuant to this Order.

10.     Nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Prepetition Employee Obligation, including payroll taxes that may be due to any taxing authority.

11.     Notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     Notwithstanding anything to the contrary contained herein, (i) any payment to be made, and any authorization contained, hereunder shall be subject to the applicable requirements imposed on the Debtors under any order approving the Debtors' postpetition financing facility (the "**DIP Order**") and the documentation in respect of the postpetition financing facility (the "**DIP Documents**"), (ii) nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents and (iii) to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

13.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:                                          _____

                                                The Honorable Gregory F. Kishel
                                                Chief United States Bankruptcy Judge