UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN ORDER (I) GRANTING AN
EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN AND SERVICE
PROVIDERS AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS RELATED CHECKS AND TRANSFERS**

TO:     The parties in interest as defined in Local Rule 9013-3(a)(2).

1.      Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), file this motion (this "**Motion**") requesting the relief described below, and give notice of hearing.

2.      The Court will hold a hearing on the Motion at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.      Local Rule 9006-1(c) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing.  **UNLESS A RESPONSE**

**OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1070-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The cases are currently pending in this Court.

5.     This Motion arises under sections 105(a) and 363 of the Bankruptcy Code, and is filed under Local Rules 9013-1, 9013-2 and 9013-3.  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 9013 and Local Rules 9013-2(b) and 9013-3.

6.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed.

7.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, the Chief Financial Officer of Magnetation LLC, which is incorporated herein by reference.  Facts specific to the relief requested herein are set forth in the relevant sections below.

## RELIEF REQUESTED

8.     By this Motion, and pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors seek entry of an order substantially in the form filed herewith: (a) granting them the authority, but not requiring them, to pay all or a portion of those prepetition labor, shipping and delivery charges to Shippers, Warehousemen and Service Providers (each as defined below) that the Debtors determine to be necessary or appropriate to obtain the release of goods, raw materials, parts, components, materials, equipment or other items (collectively, the "**Goods**") held by any such Shippers, Warehousemen or Service Providers;[1] (b) authorizing banks to receive, process, honor and pay checks or electronic transfers used by the Debtors to pay the foregoing; and (c) granting related relief.

9.     In operating their businesses, the Debtors use and make payments to (i)  trucking and rail transport companies (collectively, the "**Shippers**") that facilitate the shipment or movement of the Debtors' Goods, primarily iron ore concentrate and iron ore pellets, among the Debtors' facilities and to their customers, (ii)  warehousemen, bailees, storage facilities and other storage providers (collectively, the "**Warehousemen**") to whom Goods are delivered through established national and international distribution networks to store Goods in transit; and (iii) contractors, mechanics and other service providers (collectively, the "**Service Providers**") that repair, maintain, equip and otherwise service the Debtors' necessary equipment and machinery (all such payments, collectively, the "**Shipping, Warehousing and Servicing Charges**").

---

[1] Certain parties may receive payment on account of their prepetition claims pursuant to other motions that have been or may be filed by the Debtors.  To the extent that a party receives payment on account of its prepetition claim pursuant to an order approving any such motion, this Motion shall not apply to such prepetition claim.

10.    Importantly, the Debtors' ability to pay prepetition amounts to Shippers, Warehousemen and Service Providers is not unrestricted.  Before the Debtors can pay a prepetition amount to a Shipper, Warehouseman or Service Provider, they must first submit a payment request to the administrative agent under the Debtor-in-Possession Credit Agreement among Mag LLC, the lenders party thereto (the "**DIP Lenders**") and Wilmington Trust, National Association as administrative agent (the "**DIP Credit Agreement**").  Specifically, section 5.3 of the DIP Credit Agreement requires that any such payment request include the name of the Shipper, Warehouseman or Service Provider, the proposed payment amount and a copy of any agreement to be entered into with such Shipper, Warehouseman or Service Provider or a description of the terms to be agreed in exchange for payment.  Any single DIP Lender may object to any proposed payment to a Shipper, Warehouseman or Service Provider within one business day of the Debtors' request, and only if no DIP Lender objects, or if over 50% of the DIP Lenders affirmatively consent in writing to the payment over a DIP Lender's objection, may the Debtors proceed to make such payment.  The Debtors submit that this procedure, and each DIP Lender's ability to effectively veto such payments, will function as a potent safeguard against any unnecessary payments to Shippers, Warehousemen or Service Providers on account of prepetition claims.

## SHIPPERS AND WAREHOUSEMEN

11.    The Debtors seek to pay the prepetition shipping and warehousing charges with respect to Goods in transit for several important reasons.  The services provided by the Shippers and Warehousemen are essential to the Debtors' day-to-day operations because they facilitate the shipment of iron ore concentrate from the Debtors' production plants to the Debtors' rail load-out terminal (the "**Load-Out Terminal**") for ultimate delivery to the Debtors' customers.  The

Shippers and Warehousemen also facilitate the shipment of critical raw materials to the Debtors'

pellet plant (the "**Pellet Plant**").  Those shipments are vital to the Debtors' businesses because

they enable the Debtors to deliver final goods to its customers.  At any given time, there are

numerous shipments en route to the Load-Out Terminal and the Pellet Plant.  Therefore, the

Shippers and Warehousemen currently possess Goods that are vital to the Debtors' operations.

12.    If shipping and warehousing charges are not paid, Shippers and Warehousemen

may refuse to perform additional services for the Debtors.  In such event, the Debtors would

incur additional expenses, such as premium replacement shipping and warehousing costs.

Moreover, the time to find replacement Shippers and Warehousemen will have devastating

effects on the Debtors' operations by delaying the delivery of critical raw materials.  In many

cases, the Shippers and Warehousemen represent one of the only means to transport and store the

Debtors' Goods.  The Debtors' businesses depend critically on their relationships with the

Shippers and Warehousemen for which there are few, if any, adequate or available substitutes in

the market.  If the Debtors were unable to promptly locate suitable replacements for these and

similar Shippers and Warehousemen, the Debtors' operations would likely soon halt.

13.    Moreover, to the extent the Debtors have not paid for such services, the Shippers

and Warehousemen may be able, pursuant to state law, to assert liens on the Goods in their

possession to secure the charges and expenses incurred in connection with the transportation,

storage and preservation of the Debtors' Goods.

14.    Further, it is essential to their reorganization efforts that the Debtors be permitted

to pay selected counterparties in order to continue the Debtors' businesses and to honor their

contractual commitments to their customers.  Because of the commencement of these chapter 11

cases, certain Shippers and Warehousemen that hold Goods for delivery to or from the Debtors

may refuse to release such Goods pending receipt of payment for their prepetition services, which would disrupt the Debtors' operations.  The transport of the Debtors' iron ore concentrate to the Load-Out Terminal and the Pellet Plant is critical to the Debtors' business plan and any delays in this logistics chain would lead to a devastating loss of revenue.

## CONTRACTORS, MECHANICS AND OTHER SERVICE PROVIDERS

15.    The Debtors also seek to pay the prepetition charges of the Service Providers, many of which may be able to assert trade or mechanics' liens over the Debtors' essential parts, machinery and other equipment.  In order to ensure safe and orderly working conditions at their plants, the Debtors must repair or replace machine parts and make on-the-spot repairs to machinery on little or no notice.   Any disruption in the flow of such parts or services immediately affects on-time delivery, which is a key component of customer satisfaction. Further, any disruption in the flow of parts or services causes the Debtors immediate and substantial economic harm.

16.    The equipment in use by the Debtors is highly customized and industry specific, and the available pool of experienced service providers is therefore limited.  While the Debtors themselves employ on-site mechanics at many of their facilities, the Debtors cannot afford to employ sufficient mechanics to repair and maintain all the specialized equipment they operate in all possible locations at which service might be required.  Accordingly, the Debtors have service agreements (standard in the industry) with other maintenance Service Providers and even individuals trained and licensed to provide maintenance services at various sites.  The Debtors have, over the years, nurtured and developed their relationships with these Service Providers and have come to rely on the high-quality and priority service they receive.  It is essential to the

6

continuity of the Debtors' operations that they maintain their relationships with these essential maintenance Service Providers.

17.     Certain Service Providers may not have been paid in full for prepetition services they provided because many of their contracts contemplate payment upon completion of work that may only recently have been performed.  To the extent the Debtors have not yet paid for repair, maintenance, construction, installation or similar services, the Service Providers performing such services may be entitled, under applicable state law, to assert mechanics' liens against property of the Debtors to secure payment of the prepetition amount owed to such Service Providers, whether or not the property remains in their possession or control.

18.     Further, many of the Shippers, Warehousemen and Service Providers that have performed work for the Debtors may hold liens against the Debtors' property in their possession under applicable state mechanic's, repairman's, materialman's, warehousemen's and shipping lien statutes, which liens (the "**Liens**") and/or interests (the "**Interests**") may be perfected notwithstanding the automatic stay established by section 362(a) of the Bankruptcy Code. Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such Liens and/or Interests, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay otherwise established by section 362(a).  Under section 546(b) of the Bankruptcy Code, a debtor's lien-avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b)(l)(A).  Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Shippers, Warehousemen and Service Providers, as bailees, may be entitled to adequate protection as holders of possessory liens.

19.     Because the Debtors are, in many cases, dependent on third-party Shippers, Warehousemen and Service Providers, it is essential that the commencement of these chapter 11 cases not give any third-party Shippers, Warehousemen or Service Providers reason or excuse to cease performing or to retain products, equipment or other Goods.

20.     As of the Petition Date, the Debtors estimate that they owe approximately $7 million in the aggregate to Shippers, Warehousemen and Service Providers.

21.     The Debtors seek the authority to make those payments to Shippers, Warehousemen and Service Providers that they determine are necessary or appropriate.  To minimize the amount of payments required, the Debtors request authority to identify Shippers, Warehousemen and Service Providers in the ordinary course of their businesses.  Identifying these vendors now would likely cause all such creditors to demand payment in full.  The Debtors propose that they may condition payment of the claims of each Shipper, Warehouseman and Service Provider upon an agreement to continue to supply goods or services to the Debtors on such creditor's "**Customary Trade Terms**" for a period of time and on other such terms and conditions as are acceptable to the Debtors.  As used herein, "**Customary Trade Terms**" means, with respect to a Shipper, Warehouseman or Service Provider, (a) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs that were most favorable to the Debtors and in effect between such creditor and the Debtors prior to the Petition Date) or (b) such other trade terms as agreed by the Debtors and such creditor.  However, in certain circumstances, a Shipper, Warehouseman or Service Provider may refuse to provide services to the Debtors on the creditor's Customary Trade Terms even after payment of its claim.  To accommodate these

circumstances, the Debtors seek approval to enter into other agreements, in consultation with the ad hoc committee of senior secured noteholders, with each such Shipper, Warehouseman or Service Provider on a case-by-case basis.

22.    The Debtors further propose that if a Shipper, Warehouseman or Service Provider later refuses to continue to supply goods or services to the Debtors on the Customary Trade Terms for the applicable period, or on such terms as were individually agreed to between the Debtors and such creditor, then the Debtors may, and without further order of the Court: (i) declare that the payment of the creditor's claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Shipper, Warehouseman or Service Provider in cash or in goods and (ii) demand that the creditor immediately return such payments in respect of its claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or setoffs of any type whatsoever, and the creditor's claim shall be reinstated in such an amount as to restore the Debtors and the creditor to their original positions, as if the agreement had never been entered into and the payment of the creditor's claim had not been made.   In sum, the Debtors would return the parties to their positions immediately prior to the entry of the order approving the relief sought herein.

23.    To ensure that Shippers, Warehousemen and Service Providers transact business with the Debtors on Customary Trade Terms, the Debtors propose the following procedures to be implemented as a condition to paying any Shipper, Warehouseman or Service Provider: (a) that a letter or contract including provisions substantially in the form of the letter attached hereto as Exhibit A (a "**Vendor Agreement**") be delivered to, and executed by, the creditor along with a

copy of the order granting the relief sought herein and (b) that payment of the creditor's claims

include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the U.S. Bankruptcy Court for the District of Minnesota, [dated _____, 2015] in the chapter 11 cases of Magnetation LLC, *et al.* (Cases No. 15-50307 (GFK) through 15-50311 (GFK)), entitled "Order (I) Granting an Expedited Hearing, (II) Authorizing the Debtors to Pay Certain Prepetition Claims of  Shippers, Warehousemen and Service Providers and (III) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers" and submits to the jurisdiction of that Court for enforcement thereof.

24.     As a further condition of receiving payment on a claim of a Shipper, Warehouseman or Service Provider, the Debtors are seeking authorization to require that a Shipper, Warehouseman or Service Provider agree to take whatever action is necessary to remove any existing trade liens at such Shipper's, Warehouseman's or Service Provider's sole cost and expense and waive any right to assert a trade lien on account of the paid claim of such Shipper, Warehouseman or Service Provider.

25.     To the extent an agreement relating to Shipping, Warehousing and Servicing Charges is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume such contract.  Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute postpetition assumption, reaffirmation or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.  The Debtors reserve all of their rights under the Bankruptcy Code.   In addition, nothing in this Motion shall be an admission as to any lien or interest, including any possessory lien.

## REQUEST FOR AUTHORITY TO HONOR AND PROCESS RELATED
## CHECKS AND TRANSFERS

26.    The Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date; *provided*, *however*, that: (a) funds are available in the Debtors' accounts to cover the checks and fund transfers and (b) all the banks and other financial institutions are authorized to rely on the Debtors' designation of any particular check as approved by the attached proposed order.

## REQUEST FOR EXPEDITED RELIEF

27.    Cause exists for expedited relief on this matter.   As described herein, the Shippers, Warehousemen and Service Providers provide critical Goods and services to the Debtors, the uninterrupted flow of which is crucial for the success of their reorganization efforts under chapter 11.   Indeed, if the Debtors' access to these Goods or services is impeded or delayed, certain business operations likely will have to be shut down to the severe detriment and prejudice of all parties in interest.   Accordingly, expedited relief requested is necessary to avoid immediate and irreparable harm.

28.    Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein.  The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## REQUEST FOR WAIVER OF STAY

29.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NO PREVIOUS REQUEST

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors request entry of an order:

A.     granting expedited relief;

B.     authorizing the debtors to pay certain prepetition claims of Shippers, Warehousemen and Service Providers;

C.     authorizing financial institutions to honor and process related checks and transfers; and

D.     granting such other relief as the Court deems just and equitable.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated:  May 5, 2015

FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

– and –

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## <u>VERIFICATION</u>

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: ___May 5___, 2015        Signed: _____
                                                Joseph A. Broking

# Exhibit A

**Magnetation LLC**

_____, 2015

TO:     [Shipper, Warehouseman or Service Provider]
[Name]
[Address]

Dear Valued Supplier:

As you are aware, Magnetation LLC and subsidiaries (collectively, the "**Company**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Cases**" and the "**Bankruptcy Court**," respectively) on May 5, 2015 (the "**Petition Date**").  On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the prepetition claims of certain suppliers in recognition of the importance of the Company's relationship with such suppliers and its desire that the Bankruptcy Cases have as little effect on the Company's ongoing business operations as possible.  On [●], the Bankruptcy Court entered an order (the "**Order**") authorizing the Company, under certain conditions, to pay the prepetition claims of certain suppliers that agree to the terms set forth below and to be bound by the terms of the Order.  A copy of the Order is enclosed.

In order to receive payment on account of prepetition claims, you must agree to continue to supply goods and services to the Company based on "**Customary Trade Terms**."  In the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs) that were most favorable to the Company and in effect between you and the Company prior to the Petition Date, or such other trade terms as you and the Company agree.

For purposes of administration of this trade program as authorized by the Bankruptcy Court, you and the Company both agree that:

1.      The estimated balance of the prepetition claim (net of any setoffs, credits or discounts) (the "**Claim**") that you will receive from the Company is $_____.

2.      You will waive any remaining prepetition general unsecured claim against the Company.

3.      You will provide an open trade balance or credit line to the Company for shipment of postpetition goods in the amount of $_____ (which shall not be less than the greater of the open trade balance outstanding: (a) on _____, or (b) on normal and customary terms on a historical basis before and up to the Petition Date).

1

4.      The terms of such open trade balance or credit line are as follows (if more space is required, attach continuation pages):

_____
_____
_____
_____
_____
_____

5.      During the pendency of the Bankruptcy Cases, you will continue to extend to the Company all Customary Trade Terms (as defined in the Order).

6.      You will not demand a lump-sum payment upon consummation of a plan of reorganization in the Bankruptcy Cases on account of any administrative expense priority claim that you assert, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

7.      The undersigned, a duly authorized representative of [Shipper, Warehouseman or Service Provider], has reviewed the terms and provisions of the Order and agrees that [Shipper, Warehouseman or Service Provider] is bound by the terms of the Order.

8.      You will not separately seek payment for reclamation and similar claims outside of the terms of the Order unless your participation in the Shippers, Warehousemen and Service Providers payment program authorized by the Order (the "**Shippers, Warehousemen or Service Providers Payment Program**") is terminated.

9.      You will not file or otherwise assert against the Company, the estates or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date.  Furthermore, you agree to take (at your own expense) all necessary steps to remove any such lien as soon as possible.

10.      If either the Shippers, Warehousemen or Service Providers Payment Program or your participation therein terminates as provided in the Order, or you later refuse to continue to supply goods to the Company on Customary Trade Terms during the pendency of the Bankruptcy Cases, any payments you receive on account of your Claim (including claims arising under section 503(b)(9) of the Bankruptcy Code) will be deemed voidable postpetition transfers pursuant to section 549(a) of the Bankruptcy Code.  You will immediately repay to the Company any payments made to you on account of your Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever.  Your Claim shall be reinstated in such an amount so as to restore the Company and you to the same positions as would have existed if payment of the Claim had not been made.

11.     Any dispute with respect to this letter agreement, the Order and/or your participation in the Shippers, Warehousemen or Service Providers Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our restructuring, please do not hesitate to call.

Sincerely,

Magnetation LLC

By:     _____

Name:  _____

Title:  _____

Agreed and Accepted by:
[Shipper, Warehouseman or Service Provider]

By:     _____
Its:     _____

Dated:  _____, 2015

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER (I) GRANTING AN
EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN AND SERVICE
PROVIDERS AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS RELATED CHECKS AND TRANSFERS**

Magnetation LLC ("**Mag LLC**") and each of its subsidiaries that are debtors and debtors

in possession in these chapter 11 cases (the "**Debtors**") submit this memorandum of law in

support of the motion submitted herewith (the "**Motion**") in accordance with Local

Rule 9013-2(a).  The Debtors seek the entry of an order substantially in the form filed herewith

(i) granting an expedited hearing, (ii) authorizing, but not requiring, the Debtors to pay certain

prepetition claims of Shippers, Warehousemen and Service Providers and (iii) authorizing

applicable banks and other financial institutions to receive, process, honor and pay checks or

electronic transfers used by the Debtors to make such payments.  This relief will avoid delays in

payment of prepetition obligations and ensure as smooth a transition as possible into chapter 11;

therefore, the Court should grant the relief sought.

## BACKGROUND

The facts supporting the Motion and referenced herein are set forth in the verified

Motion.  All capitalized terms used herein and not otherwise defined shall have the meanings

ascribed to them in the Motion.

## LEGAL ANALYSIS

**I.      THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.**

The Debtors request expedited relief on the Motion.  Bankruptcy Rule 9006(c) provides

that the Court may reduce the notice period for a Motion "for cause shown."  Cause exists here

to grant the Motion on an expedited basis.  As described in the Motion, the Shippers,

Warehousemen and Service Providers provide critical Goods and services to the Debtors, the

uninterrupted flow of which is crucial for the success of the Debtors' reorganization efforts under

chapter 11.  Indeed, if the Debtors' access to these Goods or services is impeded or delayed, the

Debtors likely will have to be shut down to the severe detriment and prejudice of all parties in

interest.  Accordingly, expedited relief requested is necessary to avoid immediate and irreparable

harm.

**II.     THE PAYMENTS TO THE SHIPPERS, WAREHOUSEMEN AND SERVICE PROVIDERS SHOULD BE AUTHORIZED.**

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-

petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a

2

novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

"Courts have used their equitable power under section 105(a) of the Code to authorize the

payment of pre-petition claims when such payment is deemed necessary to the survival of a

debtor in a chapter 11 reorganization." *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del.

1999).

In a long line of well-established cases, federal courts have consistently permitted

postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106

U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent

"stoppage of [crucial] business relations"); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546

(Bankr. W.D. Mo. 2001); *In re Lehigh and N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re

Just for Feet, Inc.*, 242 B.R. at 825 ("The Supreme Court, the Third Circuit and the District of

Delaware all recognize the court's power to authorize payment of pre-petition claims when such

payment is necessary for the debtor's survival during chapter 11.").

This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by

which the bankruptcy court can exercise its equitable power to allow payment of critical

prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me.

Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to

authorize trustees to pay claims for goods and services that are indispensably necessary to the

debtors' continued operation); *In re Payless Cashways, Inc.*, 268 B.R. at 546 (Bankr. W.D. Mo.

2001); *In re Just for Feet, Inc.*, 242 B.R. at 824 ("While the doctrine [of necessity] was not

codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of

the Code to authorize the payment of pre-petition claims . . . ."); *In re United Am., Inc.*, 327 B.R.

3

776, 781 (Bankr. E.D. Va. 2005) (recognizing the doctrine of necessity as an equitable doctrine). The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims. The court in *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" The court stated that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

Moreover, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Trilogy Dev. Co.*, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs,*

*Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations omitted)); *see also In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy"). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)).

The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment and is justified under sections 105(a) and 363(b) of the Bankruptcy Code, and that all of the Debtors' creditors will benefit if the requested relief is granted.

The critical need for the continued receipt and distribution of Goods that Shippers, Warehousemen or Service Providers may hold on the Petition Date amply justifies the grant of the relief sought herein. The prompt payment to Shippers, Warehousemen and Service

5

Providers, which may be necessary to obtain delivery of the Goods in their possession, is crucial for the orderly and efficient operation of the Debtors' businesses.  Unless the Debtors have the authority to pay for these essential services, their businesses will suffer irreparable harm.

Courts in this and other jurisdictions have authorized similar relief in other major chapter 11 cases.  *See, e.g.*, *In re Antioch Co.*, No. 13-41898 (DDO) (Bankr. D. Minn. Apr. 19, 2013) [ECF No. 50]; s*ee also In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Mar. 19, 2015) [ECF No. 96]; *In re Allied Nev. Gold Corp.*, No. 15-10503 (Bankr. D. Del. Mar. 12, 2015) [ECF No. 97]; *In re RadioShack Corp.*, No. 15-10197 (BLS) (Bankr. D. Del. Feb. 9, 2015) [ECF No. 162]; *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 9, 2014) [ECF No. 242]; *In re Patriot Coal Corp.*, No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 2, 2012) [ECF No. 255]; *In re AMR Corp.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y. Dec. 22, 2011).

Based upon the foregoing, the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors and, therefore, should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

Dated:  May 5, 2015                          FREDRIKSON & BYRON, P.A.

                                             */e/ Clinton E. Cutler*
                                             Clinton E. Cutler (#158094)
                                             James C. Brand (#387362)
                                             Sarah M. Olson (#390238)
                                             200 South Sixth Street, Suite 4000
                                             Minneapolis, Minnesota 55402
                                             Telephone: (612) 492-7000
                                             Facsimile:  (612) 492-7077
                                             ccutler@fredlaw.com
                                             jbrand@fredlaw.com
                                             solson@fredlaw.com

                                             *Proposed Local Counsel to the Debtors
                                             and Debtors in Possession*

                                             – and –

                                             DAVIS POLK & WARDWELL LLP
                                             Marshall S. Huebner (NY #2601094)
                                             Damian S. Schaible (NY #4086864)
                                             Michelle M. McGreal (NY #4599031)
                                             450 Lexington Avenue
                                             New York, New York 10017
                                             Telephone: (212) 450-4000
                                             Facsimile:  (212) 701-5800
                                             marshall.huebner@davispolk.com
                                             damian.schaible@davispolk.com
                                             michelle.mcgreal@davispolk.com

                                             *Proposed Counsel to the Debtors
                                             and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN AND SERVICE PROVIDERS AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[1] of Magnetation LLC and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, for authority to pay all or a portion of those prepetition labor, shipping and delivery charges to Shippers, Warehousemen and Service Providers,[2] as more fully described in the Motion; and upon consideration of the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, filed in support of the Debtors'

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

[2] Certain parties may receive payment on account of their prepetition claims pursuant to other motions that have been or may be filed by the Debtors. To the extent that a party receives payment on account of its prepetition claim pursuant to an order approving any such motion, this order shall not apply to such prepetition claim.

first-day pleadings; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to parties in interest as specified in Local Rule 9013-3(a)(2), and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined, that immediate relief is necessary to avoid irreparable harm; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS ORDERED:

1.      The Motion is granted, including the request for expedited relief.

2.      The Debtors are authorized, but not directed, to pay all or some of the Shipping, Warehousing and Servicing Charges, whether relating to the period before or after the Petition Date, as the Debtors determine to be necessary or appropriate.

3.      The Debtors may condition payment to the Shippers, Warehousemen and Service Providers upon agreement by the Shipper, Warehouseman or Service Provider to continue to supply goods or services to the Debtors on such creditor's "**Customary Trade Terms**" for a period following the date of the agreement or on other such terms and conditions as are acceptable to the Debtors.  As used herein, "**Customary Trade Terms**" means, with respect to a

2

Shipper, Warehouseman or Service Provider, (i) the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, and availability, and other applicable terms and programs) that were most favorable to the Debtors and in effect between such creditor and the Debtors prior to the Petition Date or (ii) such other trade terms as agreed by the Debtors and such creditor.

4.       As a further condition of receiving payment on a claim of a Shipper, Warehouseman or Service Provider, the Debtors are authorized to require that such Shipper, Warehouseman or Service Provider agree to take whatever action is necessary to remove any existing Liens or Interests at such Shipper, Warehouseman or Service Provider's sole cost and expense and waive any right to assert a Lien or Interest on account of the paid claim of such Shipper, Warehouseman or Service Provider.

5.       The Debtors, in consultation with the ad hoc committee of senior secured noteholders, may undertake to cause Shippers, Warehousemen and Service Providers to enter into an agreement (the "**Vendor Agreement**") including provisions substantially in the form attached to the Motion as Exhibit A.

6.       The Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine, in consultation with the ad hoc committee of senior secured noteholders, that it is appropriate to do so in connection with making payments to the Shippers, Warehousemen and Service Providers.

7.       If the Debtors determine that a Shipper, Warehouseman or Service Provider has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the agreement, or on such terms as were

3

individually agreed to between the Debtors and such creditor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the creditor as contained in this Order; *provided*, *however*, that the Vendor Agreement may be reinstated if (x) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the creditor, (y) the underlying default under the Vendor Agreement is fully cured by the creditor not later than five business days after the date the initial default occurred or (z) the Debtors reach a subsequent agreement with the creditor.

8.      If a Vendor Agreement is terminated as set forth above, or if a Shipper, Warehouseman or Service Provider that has received payment of a prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Order, then (a) the Debtors may declare that the payment of the creditor's claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such creditor, (b) the creditor shall immediately return such payments in respect of its claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever and (c) the creditor's claim shall be reinstated in such an amount so as to restore the Debtors and the Shipper, Warehouseman or Service Provider to their original positions as if the Vendor Agreement had never been entered into and no payment of the creditor's claim had been made.

9.      All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Shippers, Warehousemen or Service Providers as contained in this Order, upon

4

entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

10.    All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or automated clearinghouse transfers evidencing amounts paid by the Debtors under this Order, whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

11.    Unless expressly provided for herein, nothing contained in this Order shall be deemed to constitute (a) a rejection, assumption or postpetition reaffirmation of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party or (c) a waiver of any rights, claims or defenses of the Debtors.

12.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.    Nothing in this Order or the Motion shall be construed as prejudicing any rights the Debtors may have to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Shipping, Warehousing and Servicing Charges.

14.    Notwithstanding anything to the contrary contained herein, any payment to be made, and any authorization contained, hereunder shall be subject to the requirements imposed

5

on the Debtors under any order approving the Debtors' postpetition financing facility (the "**DIP Order**") and the documentation in respect of the postpetition financing facility (the "**DIP Documents**"), and nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents, and to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

15.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

16.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:

_____
The Honorable Gregory F. Kishel
Chief United States Bankruptcy Judge

6