UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Magnetation LLC,<br><br>     Debtor. | Case No. 15-50307<br>Chapter 11 Case |
| Mag Lands, LLC,<br><br>     Debtor. | Case No. 15-50308<br>Chapter 11 Case |
| Mag Finance Corp.,<br><br>     Debtor. | Case No. 15-50309<br>Chapter 11 Case |
| Mag Mining, LLC,<br><br>     Debtor. | Case No. 15-50310<br>Chapter 11 Case |
| Mag Pellet LLC,<br><br>     Debtor. | Case No. 15-50311<br>Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES, GOVERNMENTAL ASSESSMENTS AND FEES AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

TO: The parties in interest as specified in Local Rule 9013-3(a)(2).

1. Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), file this motion (this "**Motion**") requesting the relief described below and give notice of hearing.

2. The Court will hold a hearing on the Motion at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3. Local Rule 9006-1(c) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing. **UNLESS A RESPONSE**

**OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 1070-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The cases are currently pending in this Court.

5.      This Motion arises under sections 105(a) and 363(b) of the Bankruptcy Code and is filed under Local Rules 9013-1, 9013-2 and 9013-3.  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 9013 and Local Rules 9013-2(b) and 9013-3.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed.

7.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, which is incorporated herein by reference.  Facts specific to the relief requested herein are set forth in the relevant sections below.

## RELIEF REQUESTED

8.      By this Motion, and pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek entry of an order substantially in the form filed herewith (a) granting an expedited hearing, (b) authorizing, but not requiring, the Debtors to pay any Covered Taxes and Fees (as defined below), whether asserted prior to or after the Petition Date, and (c) authorizing the Banks (as defined below) to receive, process, honor and pay checks or electronic transfers used by the Debtors to pay such Covered Taxes and Fees.

## REQUEST FOR AUTHORITY TO PAY COVERED TAXES AND FEES

9.      In connection with the normal operation of their businesses, the Debtors collect, withhold and incur production taxes, environmental and safety fees and assessments, sales taxes, use taxes, employment and wage-related taxes and property taxes, as well as other taxes, fees and charges described in this Motion (all such taxes, fees and charges, collectively, the "**Covered Taxes and Fees**").[1]  The Debtors remit the Covered Taxes and Fees to various federal, state and local governments, including taxing and licensing authorities (collectively, the "**Governmental Authorities**").  The Covered Taxes and Fees are remitted by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions (the "**Banks**").

10.     The Debtors believe that many of the Covered Taxes and Fees collected prepetition are not property of the Debtors' estates and must for that reason be turned over to the Governmental Authorities.   To the extent that they are not actually the property of the Governmental Authorities, they may well give rise to priority claims.  Moreover, the Debtors

---

[1]  The Debtors also incur taxes based on or measured by their net income (including, but not limited to, the federal corporate income tax and state income and franchise taxes), but this Motion does not pertain to such taxes.

also seek to pay prepetition Covered Taxes and Fees in order to forestall the Governmental

Authorities from taking actions that might interfere with the Debtors' successful reorganization,

such as blocking the receipt or renewal of permits required for the Debtors' continued operations

or possibly bringing personal liability actions against directors, officers and other employees in

connection with non-payment of the Covered Taxes and Fees.  Actions against the Debtors'

directors, officers and other employees would likely distract key personnel, whose full-time

attention to the Debtors' reorganization efforts is required, and would likely cause potential

business disruptions.  Any such business disruptions would likely erode the Debtors' customer

base and negatively impact these chapter 11 cases.  Accordingly, the Debtors submit that the

proposed relief is in the best interest of the Debtors' estates.

### Production Taxes

11.    The Debtors incur production taxes and fees related to the extraction of iron ore

pursuant to the laws of Minnesota ("**Production Taxes**").  As of March 31, 2015, the Debtors

had accrued but not yet remitted approximately $2.5 million in Production Taxes due to the State

of Minnesota.  Subsequent to the approval of this Motion, the Debtors intend to pay such

Production Taxes owed to the appropriate Governmental Authorities.  The Debtors generally

also intend to pay to the appropriate Governmental Authorities any Production Taxes that arise

after the Petition Date.

### Environmental and Safety Fees and Assessments

12.    The Debtors incur various fees to comply with environmental, health and safety

laws and regulations ("**Environmental and Safety Fees and Assessments**").  The Debtors are

required to remit these Environmental and Safety Fees and Assessments to the relevant

Governmental Authorities on a periodic basis and generally intend to pay to the appropriate

Governmental Authorities such Environmental and Safety Fees and Assessments as the Debtors

deem appropriate to ensure their continued receipt and renewal of permits and other authorizations necessary for the continuation of their businesses and pursuant to any applicable law or regulation, including, without limitation, the Federal Clean Air Act and corresponding state and local laws.  The Debtors believe that on an annual basis they have historically incurred approximately $382,000 in permitting fees, in addition to periodic application fees incurred on an as-needed basis.

### *Sales and Use and Other Taxes*

13.    The Debtors collect or incur various general sales and use taxes in Minnesota ("**Sales and Use Taxes**").  The Debtors are required to remit these Sales and Use Taxes to the applicable Governmental Authorities on a periodic basis.  As of April 30, 2015, less than $50,000 in Sales and Use Taxes had been incurred or collected by the Debtors and not yet remitted to the relevant Governmental Authorities.  Subsequent to the approval of this Motion, the Debtors intend to pay any Sales and Use Taxes to the appropriate Governmental Authorities. The Debtors generally also intend to pay to the appropriate Governmental Authorities any Sales and Use Taxes that arise after the Petition Date.

14.    The Debtors also collect, withhold or incur state and local use taxes imposed on their pellet plant project in Indiana (including, without limitation, any amounts required to be withheld, incurred or collected under applicable law, the "**Other Taxes**").  As of March 31, 2015, the Debtors believe that the amount of Other Taxes that have been incurred, withheld or collected by the Debtors before the Petition Date, but have not yet been remitted to the relevant Governmental Authorities, is approximately $3 million.

### *Employment and Wage-Related Taxes*

15.    The Debtors are required by law to withhold from domestic employees' wages or pay directly various amounts related to federal, state and local taxes.  These taxes include, but

are not limited to, income taxes, FICA Taxes (as defined below), certain unemployment benefits for the Debtors' employees and amounts held in respect of unemployment-related fees ("**Unemployment Taxes**"), and similar federal, state and local taxes that accrue on wages, benefits, disability and workers' compensation paid to the Debtors' employees ("**Employment and Wage-Related Taxes**").  The Debtors pay Employment and Wage-Related Taxes to various Governmental Authorities in accordance with the Internal Revenue Code and applicable state and local laws.  Although it is difficult to assess precisely the amount of Employment and Wage-Related Taxes that have been withheld on account of prepetition services, the Debtors' next obligations to remit such taxes will be in the amount of approximately $353,000.  Subsequent to the approval of this Motion, the Debtors intend to pay all withheld Employment and Wage-Related Taxes as they come due.

16.     Contemporaneously herewith, the Debtors have filed a motion seeking, among other things, authorization to continue to pay prepetition wages, salaries and other compensation to employees.  The postpetition payment of prepetition wages, salaries and other compensation will result in additional withholding of and direct payment obligations for various Employment and Wage-Related Taxes as described above, for which authorization for remittance to the appropriate Governmental Authorities is also requested by this Motion.

17.     Pursuant to section 3402 of the Internal Revenue Code and under various state and local laws, all employers generally are required to withhold income taxes on wages paid to employees.  The Debtors' current practice is to pay withheld amounts on employee wages to the appropriate federal and Minnesota Governmental Authorities on a biweekly basis and to the appropriate Indiana Governmental Authorities on a monthly basis.

18.     The Federal Insurance Contributions Act ("**FICA**") requires employers to pay an old-age, survivors and disability tax and a hospital insurance tax on wages paid to employees and to withhold from such wages a separate old-age, survivors and disability tax and hospital insurance tax ("**FICA Taxes**").  *See* I.R.C. §§ 3102 and 3111.  The employer portion of FICA Taxes and the separate employee portion of FICA Taxes generally arise when employee wages are paid, and employers, such as the Debtors, are obligated to pay such taxes to the applicable Governmental Authorities promptly thereafter.  *See* I.R.C. §§ 3101 and 3111.  The Debtors' current practice is to pay such amounts to the appropriate Governmental Authorities on a biweekly basis.

19.     The Debtors are required to remit Unemployment Taxes to the relevant Governmental Authorities on a periodic basis.  The Debtors' current practice is to pay Unemployment Taxes to the appropriate Governmental Authorities on a quarterly basis.

*Property Taxes*

20.     The Debtors have property tax obligations to certain Governmental Authorities for their real and personal property holdings ("**Property Taxes**").  It is critical that the Debtors be able to pay any Property Taxes where under applicable law the failure to pay gives rise to a secured state law lien.

21.     Debtor Mag Pellet LLC ("**Mag Pellet**") is a party to a tax increment financing arrangement (the "**TIF Financing Arrangement**") with White County, Indiana, entered into on June 6, 2013.  Pursuant to the TIF Financing Arrangement, Mag Pellet purchased a $23.5 million 0% bond from White County.  White County loaned the net proceeds from the sale of the bond to Mag Pellet at 0% interest to finance the construction of the Debtors' pellet plant.  Mag Pellet's annual real and personal property tax payments are credited toward the payment of principal on the bond.  Thus, failure to pay such taxes would result in a corresponding repayment obligation

7

on the part of Mag Pellet under the TIF Financing Arrangement, which, if not paid, would result in an event of default under the TIF Financing Arrangement.

22.    The Debtors expect to be liable for Property Taxes in the amount of approximately $177,000 for year 2014.  The Debtors' current practice generally is to pay such amounts to the appropriate Governmental Authorities on various dates during the year, and no later than when they become due.  Interest and penalties accrue if such Property Taxes are not timely paid.  Paying these Property Taxes, therefore will reduce costs by minimizing interest and penalty charges.

## REQUEST FOR AUTHORITY FOR BANKS
## TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

23.    The Debtors also request that all applicable Banks be authorized to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date; *provided* that: (a) funds are available in the Debtors' accounts to cover the checks and fund transfers and (b) all the Banks are authorized to rely on the Debtors' designation of any particular check as approved by the proposed order filed herewith.

24.    Nothing in this Motion should be construed as impairing the Debtors' rights to contest the validity or amount of the Covered Taxes and Fees assessed by the Governmental Authorities, and the Debtors expressly reserve all of their rights with respect thereto.

25.    For the avoidance of doubt, the Debtors are not seeking to prepay any Covered Taxes and Fees.

26.    Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interest of the Debtors' estates and creditors.  Absent this

8

relief, the value of the Debtors' estates will suffer, possibly precipitously.  Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

## REQUEST FOR EXPEDITED RELIEF

27.     The Debtors request expedited relief on this Motion.  The Debtors have scheduled and served a number of "first day" motions designed to facilitate an orderly transition to chapter 11.  The granting of this Motion on an expedited basis will enable the Debtors to remain current on their outstanding tax obligations so that federal or state-by-state involvement in this bankruptcy case does not unduly delay and complicate the process.

28.     Pursuant to Local Rule 9013-2, this Motion is verified and is accompanied by a memorandum of law, proposed order and proof of service.

29.     Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein.   The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## REQUEST FOR WAIVER OF STAY

30.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As discussed above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

9

## **NO PREVIOUS REQUEST**

31.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.


WHEREFORE, the Debtors request entry of an order:

A.    granting an expedited hearing;

B.    authorizing the Debtors to pay certain prepetition taxes, governmental assessments and fees;

C.    authorizing the Banks to honor and process related checks and transfers; and

D.    granting such other relief as the Court deems just and equitable.




*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated:  May 5, 2015

FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

– and –

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 607-7983
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

11

## VERIFICATION

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: ___May 5___, 2015        Signed: _____

Joseph A. Broking

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
AN ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE
DEBTORS TO PAY CERTAIN PREPETITION TAXES, GOVERNMENTAL
ASSESSMENTS AND FEES AND (III) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Magnetation LLC ("**Mag LLC**") and each of its subsidiaries that are debtors and debtors in possession in these chapter 11 cases (the "**Debtors**") submit this memorandum of law in support of the motion submitted herewith (the "**Motion**") in accordance with Local Rule 9013-2(a). The Debtors seek the entry of an order substantially in the form filed herewith (i) granting an expedited hearing, (ii) authorizing, but not requiring, the Debtors to pay any Covered Taxes and Fees, whether asserted prior to or after the Petition Date and (iii) authorizing the Banks to receive, process, honor and pay checks or electronic transfers used by the Debtors to pay such Covered Taxes and Fees. The Motion should be granted because Debtors have a compelling business justification for payment of these obligations.

**BACKGROUND**

The supporting facts are set forth in the Motion, verified by Joseph A. Broking, Chief Financial Officer of Magnetation LLC.  All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

**LEGAL ANALYSIS**

**I.    THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.**

The Debtors request expedited relief on the Motion.  Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a Motion "for cause shown."  Cause exists here to grant the Motion on an expedited basis.  As described in the Motion, the granting of the Motion on an expedited basis will enable the Debtors to remain current on their outstanding tax obligations so that federal or state involvement in these chapter 11 cases does not unduly delay and complicate the Debtors' efforts to successfully reorganize.  If expedited relief is not granted and the Debtors are not able to remain current on such tax obligations, it is possible that the Governmental Authorities would take actions that might interfere with the Debtors' successful reorganization, such as blocking the receipt or renewal of permits required for the Debtors' continued operations or possibly bringing personal liability actions against directors, officers and other employees in connection with non-payment of the Covered Taxes and Fees.  Actions against the Debtors' directors, officers and other employees would likely distract key personnel, whose full-time attention to the Debtors' reorganization efforts is required, and would likely cause significant business disruptions.  Any such business disruptions would likely erode the Debtors' customer base and negatively impact these chapter 11 cases.  Accordingly, expedited

2

relief requested is necessary to avoid immediate and irreparable harm, and cause exists to reduce the notice period of the Motion.

## II.    THE COURT HAS AUTHORITY TO APPROVE POSTPETITION PAYMENT OF PREPETITION TAX OBLIGATIONS.

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).    A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Courts have used their equitable power under section 105(a) of the Code to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization." *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999).

In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001); *In re Lehigh and N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. at 825 ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11.").

3

This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *In re Payless Cashways, Inc.*, 268 B.R. at 546; *In re Just for Feet, Inc.*, 242 B.R. at 824 ("While the doctrine [of necessity] was not codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of the Code to authorize the payment of prepetition claims . . . ."); *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (recognizing the doctrine of necessity as an equitable doctrine). The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.  The court in *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  The court stated that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested in the Motion.

### III.     POSTPETITION PAYMENT OF CERTAIN PREPETITION TAX OBLIGATIONS IS APPROPRIATE IN THESE CASES.

#### *Certain of the Covered Taxes and Fees Are Not Property of the Debtors' Estates*

Certain of the Covered Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Governmental Authorities and are held in trust by the Debtors. *See, e.g.*, I.R.C. § 7501 (stating that certain Covered Taxes and Fees are held in trust). As such, these Covered Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, *Begier, Jr. v. IRS*, 496 U.S. 53 (1990) (stating that withholding taxes are property held by debtor in trust for another and, as such, are not property of debtor's estate); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433-34 (2d Cir. 1985) (concluding that sales taxes are "trust fund" taxes); *Al Copeland Enter., Inc. v. Texas (In re Al Copeland Enter., Inc.)*, 991 F.2d 233, 235-37 (5th Cir. 1993) (holding that debtors' prepetition collection of sales taxes and interest thereon were held subject to trust and were not property of the estate); *Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafood Stores, Inc.)*, 163 F.3d 1063, 1067-69 (9th Cir. 1998) (determining that under Texas law, state sales taxes collected created a statutory trust fund, if traceable, and were not property of the estate); *Shank v. Wash. State Dept. of Revenue, Excise Tax Div. (In re Shank)*, 792 F.2d 829, 830 (9th Cir. 1986) (concluding that sales taxes required by state law to be collected by sellers from their customers are "trust fund" taxes); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that excise and withholding taxes are "trust fund" taxes); *Shipley Co. v. Darr (In re Tap, Inc.)*, 52 B.R. 271, 277 (Bankr. D. Mass. 1985) (finding that withholding taxes are "trust fund" taxes). *See generally Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1060 (3d Cir.

1993) (indicating that even if the statute does not establish an express trust, a constructive trust

may be found).  Because certain of the Covered Taxes and Fees are not property of the Debtors'

estates, such funds are not available for the satisfaction of creditors' claims and are the property

of the relevant Governmental Authorities.

### Certain of the Covered Taxes and Fees Are Priority Claims

To the extent that any amounts in respect of the Covered Taxes and Fees are property of

the estates under section 541 of the Bankruptcy Code, many claims in respect of those amounts

would likely be afforded priority status under section 507(a)(8) of the Bankruptcy Code.  As

priority claims, those portions of the Covered Taxes and Fees must be paid in full before any

general unsecured obligations of the Debtors can be satisfied.  The Debtors believe that sufficient

assets will exist to pay all priority Covered Taxes and Fees in full under any plan of

reorganization that may ultimately be proposed and confirmed by this Court.  Accordingly, to the

extent that the Covered Taxes and Fees are property of the Debtors and give rise to priority

claims, the relief requested will only affect the timing of the payment of these priority Covered

Taxes and Fees and will not prejudice the rights of general unsecured creditors.

In this respect, it should be noted that obligations labeled as "fees" or "charges" may also

be entitled to priority status as taxes.  *See* 11 U.S.C. § 507(a)(8).  A fee or charge is a tax if it is

an involuntary pecuniary burden: (i) laid upon the individual or their property, (ii) imposed by or

under authority of a legislative body, (iii) assumed for public purposes, including the purposes of

defraying expenses of government or undertakings authorized by it and (iv) assessed under the

police or taxing power of the state.  *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53

F.3d 478, 498 (2d Cir. 1995).  Substantially all of the Covered Taxes and Fees are involuntary

pecuniary burdens imposed by the authority of a federal, state or local legislature under its police

or taxing power.  Regardless of their statutory characterization as "fees" or "charges," many of the claims in respect of the Covered Taxes and Fees may well qualify for priority under section 507(a)(8) of the Bankruptcy Code and, as such, must be paid in full before any general unsecured obligations of a debtor may be satisfied.  Thus, payment of these Covered Taxes and Fees will only affect the timing of the payment and will not prejudice the rights of the general unsecured creditors of these estates.

### *Non-Payment of Certain Covered Taxes and Fees Would Cause Immediate and Irreparable Harm to the Debtors' Estates*

Some federal and state statutes prevent the issuance of certain permits to an entity if it or certain related entities have outstanding delinquent penalties or assessments for violations of certain environmental or other laws or regulations.  Non-payment of such penalties or assessments could preclude the receipt or renewal of permits required for the Debtors' continued operations and thus could interfere with their successful reorganization.

Many federal and state statutes hold certain directors, officers and other employees of entities responsible for collecting or withholding taxes, or remitting certain taxes, personally liable for these types of taxes.  *See, e.g.*, I.R.C. § 6672 (imposing personal liability in connection with non-payment of employment taxes described above).  To the extent that such Covered Taxes and Fees were incurred by the Debtors before the Petition Date and are not remitted or paid by the Debtors, certain of the Debtors' directors, officers and other employees may be subject to lawsuits during the pendency of these chapter 11 cases.  Payment of the Covered Taxes and Fees will avoid director and employee loss of focus and morale resulting from the risk of personal liability.  A lawsuit and any ensuing liability would distract personnel from important tasks, to the detriment of all parties in interest in these chapter 11 cases.  The dedicated and

7

active participation of the Debtors' directors, officers and other employees is not only integral to the Debtors' continued, uninterrupted operations, but is also essential to their successful reorganization.

As described above and in the Motion, payment of certain of the prepetition Covered Taxes and Fees is critical to the Debtors' continued, uninterrupted operations and to avoid immediate and irreparable harm to the Debtors' estates.  Non-payment of the Covered Taxes and Fees may cause certain Governmental Authorities to take precipitous action, including, but not limited to, conducting audits, filing liens, pursuing payment of the Covered Taxes and Fees from the Debtors' directors, officers and other employees, and seeking to lift the automatic stay, any of which would disrupt the Debtors' day-to-day operations and could potentially impose significant costs and burdens on the Debtors' estates.  Prompt payment of the Covered Taxes and Fees will avoid these unnecessary and potentially costly governmental actions.  *See In re FCC*, 217 F.3d 125, 137 (2d Cir. 2000).  Accordingly, to the extent that the relief requested in the Motion involves the use of property of the estate and Bankruptcy Rule 6003 is applicable, the requested relief is consistent with such Bankruptcy Rule because failure to pay the Covered Taxes and Fees would cause immediate and irreparable harm to the Debtors.

### *Substantial Precedent Exists for Authorizing Payment of Prepetition Taxes*

In numerous chapter 11 cases in this and other districts, courts have authorized debtors to pay similar prepetition tax obligations.  *See, e.g.*, *In re SCICOM Data Services, Ltd.*, No. 13-43894 (MER) (Bankr. D. Minn. Aug. 18, 2013) [ECF No. 20]; *In re Duke and King Acquisition Corp.*, No. 10-38652 (GFK) (Bankr. D. Minn. Dec. 7, 2010) [ECF No. 31]; *In re Genmar Holdings, Inc.*, No. 09-43537 (DDO) (Bankr. D. Minn. June 4, 2009) [ECF No. 21]; *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Mar. 20, 2015) [ECF No. 101]; *In re*

8

*RadioShack Corp.*, 15-10197 (BLS) (Bankr. D. Del. Feb. 9, 2015) [ECF No. 164].  The Debtors submit that the circumstances described in the Motion warrant similar relief.

Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).  Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'"  *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations omitted)); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").  Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the

9

Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)).

The Debtors submit that to the extent the use of property of the estate is implicated here, the actions for which relief is requested represent a sound exercise of the Debtors' business judgment and are justified under section 363(b), as well as under section 105(a), of the Bankruptcy Code.   As noted above, if the Covered Taxes and Fees are not paid, the Governmental Authorities could take actions that could be costly and distracting to the Debtors and interfere with the Debtors' ability to successfully reorganize, which would negatively affect all of the Debtors' creditors and employees, and other parties in interest.   Moreover, because most of the Covered Taxes and Fees either (i) are "trust fund" taxes, and are therefore not property of the Debtors' estates, or (ii) would be afforded priority status under section 507(a)(8) of the Bankruptcy Code, the Debtors' general unsecured creditors would not be prejudiced by the Court's granting of the relief requested in the Motion.

## CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Court enter an order granting the relief requested in the Motion.

Dated:  May 5, 2015                    FREDRIKSON & BYRON, P.A.

                                       */e/ Clinton E. Cutler*
                                       Clinton E. Cutler (#158094)
                                       James C. Brand (#387362)
                                       Sarah M. Olson (#390238)
                                       200 South Sixth Street, Suite 4000
                                       Minneapolis, Minnesota 55402
                                       Telephone: (612) 492-7000
                                       Facsimile:  (612) 492-7077
                                       ccutler@fredlaw.com
                                       jbrand@fredlaw.com
                                       solson@fredlaw.com

                                       *Proposed Local Counsel to the Debtors*
                                       *and Debtors in Possession*

                                       – and –

                                       DAVIS POLK & WARDWELL LLP
                                       Marshall S. Huebner (NY #2601094)
                                       Damian S. Schaible (NY #4086864)
                                       Michelle M. McGreal (NY #4599031)
                                       450 Lexington Avenue
                                       New York, New York 10017
                                       Telephone: (212) 450-4000
                                       Facsimile:  (212) 607-7983
                                       marshall.huebner@davispolk.com
                                       damian.schaible@davispolk.com
                                       michelle.mcgreal@davispolk.com

                                       *Proposed Counsel to the Debtors*
                                       *and Debtors in Possession*

11

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |

| | | |
|---|---|---|
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES, GOVERNMENTAL ASSESSMENTS AND FEES AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**") [1] of Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), for an order (i) granting an expedited hearing, (ii) authorizing the Debtors to pay any Covered Taxes and Fees and (iii) authorizing the Banks to receive, process, honor and pay checks or electronic transfers used by the Debtors to pay such Covered Taxes and Fees, as more fully described in the Motion; and upon consideration of the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, filed in support of the Debtors' first-day pleadings; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the requested relief being a core

proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to parties in interest as specified in Local Rule 9013-3(a)(2),

and it appearing that no other or further notice need be provided; and the relief requested in the

Motion being in the best interests of the Debtors and their estates and creditors, and the Court

having reviewed the Motion and having held a hearing with appearances of parties in interest

noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal

and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and the Court having determined that immediate relief is necessary to avoid

irreparable harm; and upon all of the proceedings had before the Court and after due deliberation

and sufficient cause appearing therefor,

IT IS ORDERED:

1.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Motion is

granted, including the request for expedited relief.

2.      The Debtors are authorized, but not required, to pay the Covered Taxes and Fees,

or otherwise, to be owed for periods before the Petition Date, to the Governmental Authorities.

3.      All applicable Banks are hereby authorized to receive, process, honor and pay any

and all checks, drafts, wires, check transfer requests or automated clearing house transfers

evidencing amounts paid by the Debtors under this Order whether presented prior to or after the

Petition Date to the extent the Debtors have good funds standing to their credit with such bank or

other financial institution.   Such Banks are authorized to rely on the representations of the

Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

4.      Nothing in this Order shall be construed as impairing the Debtors' rights to contest the validity or amount of any Covered Taxes and Fees assessed by the Governmental Authorities, and all of the Debtors' rights with respect thereto are hereby reserved.

5.      Notwithstanding anything to the contrary contained herein, (i) any payment to be made, and any authorization contained, hereunder shall be subject to the applicable requirements imposed on the Debtors under any order approving the Debtors' postpetition financing facility (the "**DIP Order**") and the documentation in respect of the postpetition financing facility (the "**DIP Documents**"), (ii) nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents and (iii) to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

6.      Nothing in this Order authorizes the Debtors to prepay any Covered Taxes and Fees.

7.      Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:

_____
The Honorable Gregory F. Kishel
Chief United States Bankruptcy Judge

3