UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**DEBTORS' NOTICE OF HEARING AND JOINT (I) MOTION FOR AN ORDER
GRANTING AN EXPEDITED HEARING AND (II) APPLICATION
FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC.
AS THE CLAIMS, NOTICING AND BALLOTING AGENT FOR THE DEBTORS,
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

TO: The parties in interest as defined in Local Rule 9013-3(a)(2).

1.      Magnetation LLC ("**Mag LLC**") and its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**") in these proceedings, file this motion for an expedited hearing (the "**Motion**") and this application (this "**Application**") (together with the Motion, this "**Section 156(c) Application**") requesting the relief described below, and give notice of hearing.

2.      The Court will hold a hearing on the Section 156(c) Application at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.      Local Rule 9006-1(c) provides deadlines for responses to this Section 156(c) Application.  However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing.  **UNLESS**

**A RESPONSE OPPOSING THE SECTION 156(c) APPLICATION IS TIMELY FILED,**

**THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT A HEARING**.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1070-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").  The cases are currently pending in this Court.

5.     This Section 156(c) Application arises under 28 U.S.C § 156(c) and section 105(a) of the Bankruptcy Code, and is filed under Local Rules 9013-1, 9013-2 and 9013-3. Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 9013 and Local Rules 9013-2 and 9013-3.

6.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed.

7.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, which is incorporated herein by reference.

## RELIEF REQUESTED

8.      Although the Debtors have not yet filed their schedules of assets and liabilities,

they anticipate that there will be thousands of entities to be noticed.  In view of the number of

anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the

appointment of a claims, noticing and balloting agent is both necessary and in the best interests

of both the Debtors' estates and their creditors.  The terms of retention are set forth in the

Engagement Agreement included herewith as Exhibit A (the "**Engagement Agreement**").

9.      Donlin, Recano & Company ("**Donlin Recano**") has acted as the claims, noticing

and balloting agent in numerous cases of comparable size including: *In re Wet Seal, Inc.*, No. 15-

10081 (CSS) (Bankr. D. Del. Jan. 20, 2015) [ECF No. 93]; *In re Dots, LLC*, No. 14-11016 (DHS)

(Bankr. D. N.J. Jan. 24, 2014); *In re Longview Power, LLC*, No. 13-122211 (BLS) (Bankr. D. Del.

Sept. 4, 2013) [ECF No. 105]; *In re New England Compounding Pharmacy, Inc.*, No. 12-198882

(HJB) (Bankr. D. Mass. Dec. 28, 2012).

10.      By appointing Donlin Recano as the claims, noticing and balloting agent in these

chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and

the Clerk's Office will be relieved of the administrative burden of processing what may be an

overwhelming number of claims.  In support of this Section 156(c) Application, the Debtors

submit the declaration of Colleen McCormick, Chief Operating Officer of Donlin Recano,

attached hereto as Exhibit B (the "**Claims, Noticing and Balloting Agent Declaration**").

11.      Specifically, Donlin Recano will perform the following tasks in its role as claims,

noticing and balloting agent (collectively, the "**Claims, Noticing and Balloting Services**"), as

well as all quality control relating thereto:

3

(a)      Prepare and serve required notices and documents in the chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notices of transfers of claims, (ii) notices of objections to claims and objections to transfers of claims, (iii) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (iv) notice of the effective date of any plan and (v) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

(b)      Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)      Maintain (i) a list of all potential creditors, equity holders and other parties in interest, and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)      Update addresses on the claims registers and creditor matrix to reflect address updates requested by creditors, provided by the USPS or otherwise;

(e)      Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(f)      Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(g)      For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service that includes, to the extent not inconsistent with any case management order entered by the Court, (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(h)     Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)     Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form);

(j)     Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor and (vii) any disposition of the claim;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Donlin Recano, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(p)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)     If the case is converted to chapter 7, contact the Clerk's Office within three days of the notice to Donlin Recano of entry of the order converting the case;

(r)     Thirty days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing Donlin Recano as claims, noticing and balloting agent and terminating the

services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(s)     Within seven days of notice to Donlin Recano of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the chapter 11 cases;

(t)     At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration or (ii) any other location requested by the Clerk's Office;

(u)     Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the Court, including (as needed): (i) coordinate distribution of solicitation documents, (ii) respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders, (iii) respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures, (iv) establish a website for the posting of solicitation documents, (v) receive and examine all ballots and master ballots cast by voting parties, (vi) date and time-stamp the originals of all such ballots and master ballots upon receipt and (vii) tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures and prepare a certification for filing with the Court;

(v)     Provide assistance with, among other things, certain data processing and ministerial administrative functions, including, but not limited to, such functions related to: (i) preparation of the Debtors' schedules of assets and liabilities, statement of financial affairs and master creditor lists, and any amendments thereto; and (ii) the processing and reconciliation of claims; and

(w)     Provide such other claims processing, noticing, balloting and related administrative services as may be requested from time to time by the Debtors.

12.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Donlin Recano.

13.     Donlin Recano shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

14.     The Debtors respectfully request that the undisputed fees and expenses incurred by Donlin Recano in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Donlin Recano agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the U.S. Trustee, proposed counsel to the Debtors, counsel for any official committee, counsel for the ad hoc committee of senior secured noteholders, counsel for the agent under the Debtors' postpetition financing facility (the "**DIP Facility**") and counsel to the lenders under the DIP Facility, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoice.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Prior to the Petition Date, the Debtors provided Donlin Recano a retainer in the amount of $20,000 and paid prepetition fees and expenses in the amount of $30,000.  Donlin Recano seeks to hold the retainer under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

16.     In connection with its retention as claims, noticing and balloting agent, Donlin Recano represents in the Claims, Noticing and Balloting Agent Declaration, among other things, that:

> (a)     Donlin Recano will not consider itself employed by the United States government and shall not seek any compensation from the United States

7

government in its capacity as the claims, noticing and balloting agent in the chapter 11 cases;

(b)    By accepting employment in the chapter 11 cases, Donlin Recano waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

(c)    In its capacity as the claims, noticing and balloting agent in the chapter 11 cases, Donlin Recano will not be an agent of the United States and will not act on behalf of the United States; and

(d)    It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

17.    To the extent that there is any inconsistency between this Section 156(c) Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

### *NUNC PRO TUNC* RELIEF IS APPROPRIATE

18.    Donlin Recano has served as the claims, noticing and balloting agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date, so that Donlin Recano may be compensated for its pre-Application services.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment on Donlin Recano as claims, noticing and balloting agent.

19.    This Court and other courts have authorized relief on a *nunc pro tunc* basis as requested herein in other chapter 11 cases.  *See, e.g., In re Wagstaff Minn. Inc.*, No. 11-43073 (KAC) (Bankr. D. Minn. July 14, 2011) [ECF No. 181]; *In re Quicksilver Res.*, No. 15-10585 (LSS) (Bankr. D. Del. Mar. 19, 2015) [ECF No. 86]; *In re Caesars Entm't Operating Co.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Jan. 16, 2015); *In re ALCO Stores, Inc.*, No. 14-34914 (SGJ) (Bankr. N.D. Tex. Nov. 14, 2014).

## REQUEST FOR EXPEDITED RELIEF

20.    The Debtors request expedited relief on this Section 156(c) Application.  The Debtors have scheduled and served a number of "first day" motions designed to facilitate an orderly transition to chapter 11.  The granting of this Section 156(c) Application on an expedited basis will enable the Debtors to efficiently transition into their roles as debtors in possession, and will provide the Debtors, the Clerk's Office and Donlin Recano with clarity and certainty regarding each party's respective role and responsibility with respect to claims, noticing and balloting in these cases.  If expedited relief is not granted, there will likely be confusion regarding which documents are being served and mailed by which entity, which could result in delays in notice to parties in interest.

21.    Pursuant to Local Rule 9013-2, this Section 156(c) Application is verified and is accompanied by a memorandum of law, proposed order and proof of service.  Also attached hereto is a declaration by Colleen McCormick, Chief Operating Officer of Donlin Recano.

22.    Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein.  The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## NO PRIOR REQUEST

23.    No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of an order:

A.      granting an expedited hearing;

B.      approving the retention of Donlin Recano as the Debtors' Claims, Noticing and Balloting Agent; and

C.      granting such other relief as the Court deems just and equitable.

*[Signature pages follow]*

Dated: _____May 5_____, 2015        MAGNETATION LLC and on behalf of all
of the DEBTORS

_____

Name:  Joseph A. Broking
Title:    Chief Financial Officer

Dated:  May 5, 2015

FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

## VERIFICATION

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: _____May 5_____, 2015          Signed: _____

                                         Joseph A. Broking

**Exhibit A**

## STANDARD CLAIMS ADMINISTRATION, NOTICING AND VOTING AND CONSULTING AGREEMENT

### TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc.** (hereinafter called "DRC") agrees to provide **Magnetation LLC** and its direct subsidiary debtors, including, but not limited to, any and all bankruptcy cases filed by Magnetation LLC and its direct subsidiary debtors (hereinafter called the "Client") certain Services, including but not limited to First Day Filing Preparation, SOFA / SOAL preparation, Maintenance and Operation of the Mailing Lists and Mailings, Claims, Balloting and other mutually agreed upon services related to Client's proceeding under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") upon the terms and conditions and in accordance with "Schedule A", attached hereto, and other provisions stated herein (hereinafter, the "Services"). Client agrees and understands that none of the Services constitute legal advice.

**1. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein, including Schedule A, attached hereto. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. If such annual increases exceed 10% from the prior year's level, DRC shall provide sixty days' prior written notice to the Client of such proposed increases. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all actual charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. DRC shall notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual and documented out-of-pocket expenses reasonably incurred by DRC in connection with the performance of the Services. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to Chapter 11 of the Bankruptcy Code, the parties intend that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Clients' bankruptcy case(s) are converted to a Chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated first as a Chapter 7 administrative expense claim and second as a Chapter 11 administrative expense claim.

**2. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

#87065507v5

www.donlinrecano.com

**3. RETAINER & INVOICES**: Upon execution of this Agreement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $20,000.00. Prior to the filing of a bankruptcy case by the Client, invoices for services shall be paid in full, and may be satisfied, in the sole discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC may hold the Retainer during the pendency of this bankruptcy case as security for the payment of fees and expenses under this Agreement. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void. Following termination of this Agreement, DRC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices. In the event the Client files for protection pursuant to chapter 11 of the Bankruptcy Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C. § 156 (c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s), without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, provided, however, that DRC fees and expenses associated with services performed that are outside the scope of § 156 (c), shall be subject to the procedures set forth in 11 U.S.C. §§ 330 and 331, the applicable Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the district in which the Client's bankruptcy cases are filed, any applicable orders of the Bankruptcy Court, the guidelines established by the United States Trustee and such other procedures that have been, or may be, fixed by order of the Bankruptcy Court, in each case, to the extent applicable.

**4. STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**5. E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**6. SUPPLIES**: All supplies shall be furnished at Client's expense.

**7. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC (including all information for preparation of the Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately

approved by the Client, and DRC bears no responsibility for the accuracy or contents therein. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.   Client agrees that the foregoing warranty is in lieu of all other warranties, express or implied, including but not limited to any implied warranty of merchantability, fitness or adequacy for any particular purpose or use, quality, productiveness or capacity.

**8. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party, and, to the extent DRC has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging DRC from service and responsibility under this Agreement. DRC acknowledges that Bankruptcy Court approval of its engagement may be required in order for DRC to be engaged in a chapter 11 proceeding. The payment obligation and the indemnity obligation set forth in sections 3 and 10 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall use reasonable efforts to seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c), provided that such termination is not the result of a breach of DRC's obligations or an alleged breach of DRC's obligations hereunder.

**9. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**10. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's bad faith, fraud, gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**11. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may,

**DRC** Donlin Recano

#87065507v5

www.donlinrecano.com

**Donlin, Recano & Company, Inc.**

upon not less than five (5) business days' written notice to the other party, release the required information.

**12. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**13. SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**14. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**15. FORCE MAJEURE.** Whenever performance by DRC or the Client of any of its obligations hereunder (except for the Client's obligation to pay fees, expenses and charges hereunder) is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond the applicable party's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**16. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York 11219, Attention: Alexander Leventhal; if to the Client, to Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York, 10017. Attention: Michelle M. McGreal.

**17. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**18. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**19. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

*[remainder of page intentionally blank]*



**Donlin, Recano & Company, Inc.**

**20. GENERAL**:  Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By:          Mike Wyse

Signature:

Title:        Executive Director

Date:        04/06/2015


Accepted and Approved:

**Magnetation LLC, *et al.***

By:          Joe Broking

Signature:    on Bal

Title:        CFo

Date:        4/11/2015

This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

**SCHEDULE A**

DRC Donlin Recano

www.donlinrecano.com

#87065507v5

**Donlin, Recano & Company, Inc.**

| Professional Service –First Day Prep, Schedule / SOFA Preparation and Solicitation Consulting Fees | |
|---|---|
| Senior Bankruptcy Consultant | $190 |
| Consultant | $125 |
| Case Manager / Analyst | $40 - $70 |
| Technology/Programming Consultant | $60 - $110 |
| Clerical | $25 |

| Professional Service | Hourly Rates |
|---|---|
| Senior Bankruptcy Consultant | $170 |
| Consultant | $115 |
| Case Manager/Analyst | $40- $70 |
| Technology/Programming Consultant | $60 - $110 |
| Clerical | $25 |

| Noticing Service | |
|---|---|
| Laser Printing/ Photocopies | $.09 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | WAIVED |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |

| Claims Docketing and Management | |
|---|---|
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage | $.06 per Creditor per Month |
| Electronic Document Storage (.PDF/.JPG) | WAIVED |
| Permitted Users | $200 per User per Month (WAIVED for the First 6 Users) |
| Document Imaging | $.10 per Image [1] |
| Electronic Claims filing | No Set-up charge or per claim charge |

| Solicitation, Balloting and Other Services | |
|---|---|
| Set-up Tabulation & Vote Verification | Applicable Consulting Fees Only |
| Print and Mail Ballots | Subject to Requirements of Disclosure Statement and Plan |
| Solicitation and Notification on Public Securities Holders | Varies Upon Requirements |
| Plan Disbursements | Quoted Upon Request |
| Rights Offering | Quoted Upon Request |

| VDR and Litigation Tracking | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Quoted Upon Request |
| DRC DocuLinks for Litigation Tracking | Quoted Upon Request |

| Call Center | |
|---|---|
| 24/7 Global Call Center | Standard Hourly Rates[2] |

| Miscellaneous | |
|---|---|
| Out-of-Pocket Expenses (including any required travel) | At Cost |

---

[1] An additional $0.10 per image is charged for optical character recognition imaging.

[2] Customized based on specific case needs – 1,500 operator capacity – automated options available.





www.donlinrecano.com

#87065507v5

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**DECLARATION OF COLLEEN MCCORMICK IN SUPPORT OF JOINT (I) MOTION
FOR AN ORDER GRANTING AN EXPEDITED HEARING AND (II) APPLICATION
FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS THE
CLAIMS, NOTICING AND BALLOTING AGENT FOR THE DEBTORS, EFFECTIVE
*NUNC PRO TUNC* TO THE PETITION**

I, Colleen McCormick, under penalty of perjury, declare as follows:

1.      I am the Chief Operating Officer of Donlin, Recano & Company, Inc. ("**Donlin
Recano**"), a chapter 11 administrative services firm, whose offices are located at 6201 15th
Avenue, Brooklyn, New York 11219.

2.      I submit this Declaration in support of the Debtors' Joint (i) Motion for an Order
Granting an Expedited Hearing and (ii) Application for an Order Appointing Donlin, Recano &
Company, Inc. as the Claims, Noticing and Balloting Agent for the Debtors, Effective *Nunc pro
Tunc* to the Petition Date (the "**Application**").[1]    Except as otherwise noted, I have personal

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Section 156(c) Application.

knowledge of the facts contained in this Declaration.

3.      As custodian of the Courts' records pursuant to 28 U.S.C. § 156(c), Donlin Recano will perform, at the request of the Office of the Clerk of the Court (the "**Clerk**"), the noticing, claims, balloting and related services specified in the Application and the Engagement Agreement.   In addition, at the Debtors' request, Donlin Recano will perform such other noticing, claims, solicitation/balloting, administrative, technical and support services specified in the Application and the Engagement Agreement.

4.      Donlin Recano has acted as the claims, noticing and balloting agent in numerous cases of comparable size including: *In re Wet Seal, Inc.*, No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015); *In re Longview Power, LLC*, No. 13-122211 (BLS) (Bankr. D. Del. Sept. 4, 2013); *In re Dots, LLC*, No. 14-11016 (DHS) (Bankr. D. N.J. Jan. 24, 2014); *In re New England Compounding Pharmacy, Inc.*, No. 12-198882 (HJB) (Bankr. D. Mass. Dec. 28, 2012).

5.      Donlin Recano represents, among other things, that:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims, noticing and balloting agent in the chapter 11 cases;

(b)     by accepting employment in the chapter 11 cases, Donlin Recano waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

(c)     in its capacity as the claims, noticing and balloting agent in the chapter 11 cases, Donlin Recano will not be an agent of the United States and will not act on behalf of the United States; and

(d)     it will not employ any past or present employees of the Debtors in connection with its work as the claims, noticing and balloting agent in these chapter 11 cases.

2

6.      To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Donlin Recano, nor any employee of Donlin Recano, holds nor represents any interest materially adverse to the Debtors, their estates or their creditors with respect to matters upon which Donlin Recano is to be engaged.

7.      To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors and except as provided herein, neither Donlin Recano, nor any employee of Donlin Recano, has any materially adverse connections to the Debtors, their creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants, any United States Bankruptcy Judge for the District of Minnesota, the U.S. Trustee for the District of Minnesota, or any person employed by that office of the U.S. Trustee, that would conflict with the scope of Donlin Recano's retention or would create any interest adverse to the Debtors' estates or any other party-in-interest.

8.      The Debtors have thousands of creditors and, from time to time, Donlin Recano may have represented certain of those creditors in completely unrelated matters.  Proposed bankruptcy counsel for the Debtors has provided me with a list of the Debtors' creditors and other parties in interest (the "**Conflicts List**"), a copy of which is attached hereto as <u>Exhibit A</u>, that it received from the Debtors.  I have caused an examination of these records to be made to determine which, if any, of the parties on the Conflicts List, Donlin Recano may have represented in the past or may be representing at the present time in totally unrelated matters. This search has disclosed that, to the best of my present knowledge, Donlin Recano has not in the past and is not currently representing any of the parties on the Conflicts List.

3

9.      In addition, Donlin Recano has identified numerous vendors appearing on the Conflicts List that are also vendors of Donlin Recano, but  Donlin Recano has not in the past, and is not currently, representing any of those vendors.

10.      Donlin Recano is an affiliate of American Stock Transfer & Trust Company, LLC ("**AST**").   AST is a global financial communications and stakeholder management company. Within the AST corporate structure, Donlin Recano operates as a separate and independent legal entity.  Given the legal and operational separateness of Donlin Recano from AST, Donlin Recano does not believe that any relationships that AST and its affiliates maintain would create an interest of Donlin Recano that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

11.      Since the Debtors have not yet filed a full list of its creditors, there may be other creditors of the Debtors, that Donlin Recano may have or may be presently representing, but in no event is Donlin Recano representing any other creditor with respect to the Debtors' bankruptcy proceeding.  To the extent I become aware of Donlin Recano having represented any other creditors of the Debtors, I will file a supplemental declaration advising the Court of the same.  To the extent that Donlin Recano discovers any facts bearing on matters described herein, Donlin Recano will supplement information contained herein.

12.      Notwithstanding anything contained herein, as part of its diverse business, Donlin Recano is the noticing, claims and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may be creditors or represent creditors and parties in interest in these chapter 11 cases.  In addition, Donlin Recano has in the

4

past and will likely in the future continue working with or against other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.  Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which Donlin Recano is to be engaged.  Additionally, Donlin Recano employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases.

13.     Based upon the information available to me, I believe that Donlin Recano is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that Donlin Recano and its personnel: (i) are not creditors, equity security holders or insiders of the Debtors; (ii) are not and were not, within two years before the date of the filing of these cases, a director, officer or employee of the Debtors; and (iii) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.  Prior to the filing of the chapter 11 cases, the Debtors paid Donlin Recano a retainer of $20,000.00 and prepetition fees and expenses in the amount of $30,000.

14.     In performing the services identified above, Donlin Recano will charge the rates set forth in Schedule A to the Engagement Agreement annexed to the Application as Exhibit A. The rates set forth therein are as favorable and reasonable as the prices Donlin Recano charges in cases in which it has been retained to perform similar bankruptcy-related services.

15.     Donlin Recano will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

*[Signature page follows]*

Dated:  May  5 , 2015

Colleen McCormick
Chief Operating Officer
Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

*[Signature page to Donlin Recano Declaration]*

## Exhibit A

**Potential Parties in Interest**

## MAGNETATION LLC: POTENTIAL PARTIES IN INTEREST

**Officers and Directors (2010 to Present) (includes non-executive officers and general managers of subsidiaries)**

Alter, Joe
Bibancos, Danilo
Bigelow, Robb
Broking, Joe
Chappie, David
Kowalski, John
Lehtinen, Larry
Lehtinen, Matt
Nanti, Terry
Newport, Roger
Nielsen, Joe
Reed, Maurice
Reich, Kirk W.
Roth, Todd
Twite, Mike
Wilson, Hope

**Affiliations of Directors (Board Memberships, Charitable Organizations, etc.)**

ISD 318 School Board
Iron Mining Association
Itasca Economic Development Corporation
Grand Rapids Area Hockey Association

**Debtors**

Magnetation LLC
Mag Lands, LLC
Mag Finance Corp.
Mag Mining, LLC
Mag Pellet LLC

**Five Percent and Greater Shareholders and Beneficial Owners**

Magnetation, Inc.
AK Iron Resources, LLC

**Significant Business Partners**

Magnetation, Inc.
AK Steel Corporation
AK Iron Resources, LLC

**Attorneys, Professionals and Financial Advisors (Including Accountants and Investment Banks)**

Fredrikson & Byron, P.A.
Krieg DeVault LLP
McGladery LLP
Davis Polk & Wardwell LLP
The Blackstone Group LP
Lazard Ltd.
Deloitte Touche Tohmatsu Limited
Milbank, Tweed, Hadley & McCloy LLP
Houlihan Lokey, Inc.
Simpson Thacher & Bartlett LLP
Thompson Hine LLP
Seward & Kissel LLP
Ice Miller LLP
Katten Muchin Rosenman LLP
Oppenheimer Wolff & Donnelly LLP

**Significant Financial Institutions (Including Administrative Agents, Lenders and Equipment Financing)**

Associated Bank, N.A.
BMO Harris Bank, N.A.
Deutsche Bank Securities Inc.
Jefferies LLC
JPMorgan Chase Bank, N.A.
JPMorgan Chase & Co.
J.P. Morgan Securities LLC
Wells Fargo Bank, National Association
Citibank, N.A.

**Equipment Lessors**

Caterpillar Financial Services Corporation
CIT Rail LLC
Volvo Financial Services Leasing Co.
Komatsu Financial Limited
JPMorgan Chase Bank, N.A.
Road Machinery & Supplies Co.
Progress Rail Leasing Corporation

**Significant Landlords and Lessors**

BNSF Railway Company
Bray Mining Co.
General Waste Disposal and Recovery Services Inc.

Great Northern Iron Ore Properties
Glacier Park Co.
HT Surface and Minerals LLC
Chester Company Limited Partnership
Itasca County
Minnesota Department of Natural Resources
RGGS Land & Minerals Ltd. LP
Schwartz Redi-Mix, Inc.
Troumbly Brothers Inc.
United States Steel Corporation

**Unions**
Local 49 (International Union of Operating
Engineers)

**Letter of Credit and Surety Bond Providers
and Beneficiaries**
JPMorgan Chase & Co.
State of Minnesota
Caterpillar Financial Services Corporation
Northern Indiana Public Service Company

**Significant Taxing Authorities**
White County, Indiana
Itasca County, Minnesota
State of Minnesota
State of Indiana
Internal Revenue Service

**Royalties**
Minnesota Iron Range Resources and
Rehabilitation Board
Department of Employment and Economic
Development
Bray Mining Co.
Great Northern Iron Ore Properties
Minnesota Department of Natural Resources
Glacier Park Co.
RGGS Land & Minerals Ltd. LP
Chester Company Limited Partnership
HT Surface and Mineral LLC

**Regulatory Agencies (e.g., Department of
Interior, Mine Safety Administration, OSHA,
and State and Local Regulators)**
Minnesota Department of Natural Resources
Minnesota Pollution Control Agency
U.S. Environmental Protection Agency

Indiana Department of Environment
Management
Mine Safety and Health Administration
Itasca County
St. Louis County

**Parties to Significant Litigation**
William Watkins

**Significant Suppliers, Shippers,
Warehousemen, and Vendors**
FLSmidth Salt Lake City, Inc.
Metso Corporation
Eriez Manufacturing Co.
Outotec (USA) Inc.
Kirby Risk Corporation
Northern Indiana Public Service Company
Process Equipment, Inc.
BNSF Railway Company
CSX Corporation
The Weir Group PLC
Kanawha Scales and Systems, Inc.
Mid-Continent Coal and Coke Company

**Insurers**
Itasca Reliable Insurance Agency, Inc. of Grand
Rapids
Aon Risk Services, Inc.
New Hampshire Insurance Co.
Wilson-McShane Corporation

**U.S. Trustee's Office**
Office of the United States Trustee for the
District of Minnesota:
Robert B. Raschke
Michael R. Fadlovich
Sarah J. Wencil
Colin D. Kreuziger
Laddy F. Janovsky
Thomas E. Kleiner
Terri L. Frazer
Nissa L. Atkinson
Lilia Serna de Coronado
Audrey Williams

**Top Secured Creditors**
Wilmington Trust Company
JPMorgan Chase Bank, N.A.
Caterpillar Financial Services Corporation

**Top 30 Unsecured Creditors**

2

FLSmidth Salt Lake City, Inc.
BNSF Railway Company
Champion Steel Corporation
Northern Industrial Erectors Inc.
Parsons Electric LLC
Scheck Industrial Corp.
Ulland Bros. Inc.
Wm. J Schwartz & Sons, Inc.
FLSmidth USA Inc. - Salt Lake City Operations
Hunt Electric Corporation
Northern Indiana Public Service Company
Hammerlund Construction, Inc.
A.W.Kuettel & Sons, Inc.
Outotec (USA) Inc.
Encore Energy Services, Inc.
Kirby Risk Corporation
Gerdau Ameristeel US Inc.
Applied Industrial Technologies, Inc.
Xtreme Contractors Co.
Lejeune Steel Company
NORAMCO Engineering Corporation
Magotteaux, Inc.
Ziegler Inc.
Dilling Group, Inc.
Integrated Power Services, LLC

Rogers Group, Inc.
Iron Range Resources and Rehabilitation Board
Process Equipment, Inc.
Donaldson Co.
Tierra Environmental and Industrial Services,
Inc.

**Utilities**
Encore Energy Services, Inc.
Minnesota Power, an Allete, Inc. Company
Northern Indiana Public Service Company
Lake Country Power, a Touchstone Energy
Cooperative

**Significant Customers**
Altos Hornos de Mexico S.A.B. de C.V.
AK Steel Holding Corporation

**Significant Competitors**
ArcelorMittal S.A.
Cliffs Natural Resources Inc.
Essar Steel Minnesota LLC

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT (I) MOTION FOR AN
ORDER GRANTING AN EXPEDITED HEARING AND (II) APPLICATION
FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC.
AS THE CLAIMS, NOTICING AND BALLOTING AGENT FOR THE DEBTORS,
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Magnetation LLC ("**Mag LLC**") and each of its subsidiaries that are debtors and debtors

in possession in these chapter 11 cases (the "**Debtors**") submit this memorandum of law in

support of the Section 156(c) Application submitted herewith in accordance with Local Rule

9013-2(a).

## BACKGROUND

The supporting facts are set forth in the verified Section 156(c) Application, verified by

Joseph A. Broking, Chief Financial Officer of Magnetation LLC, along with the declaration of

Colleen McCormick, Chief Operating Officer of Donlin Recano.  All capitalized terms used

herein and not otherwise defined shall have the meanings ascribed to them in the Section 156(c)

Application.

## LEGAL ANALYSIS

### I.    THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE  GRANTED.

The Debtors request expedited relief on the Section 156(c) Application.  Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a motion "for cause shown." Cause exists here to grant the Section 156(c) Application on an expedited basis.  The granting of this Section 156(c) Application on an expedited basis will enable the Debtors to efficiently transition into their roles as debtors in possession, and will provide the Debtors, the Clerk's Office and Donlin Recano with clarity and certainty regarding their respective roles and responsibilities in these cases.  If expedited relief is not granted, there will likely be confusion regarding which documents are being served and mailed by which entity, which could result in delays in notice to parties in interest.  Accordingly, cause exists for expedited relief.

### II.    THE COURT HAS AUTHORITY TO APPROVE THIS SECTION 156(C) APPLICATION AND APPROVAL IS APPROPRIATE IN THIS CASE.

This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c) and section 105(a) of the Bankruptcy Code.  28 U.S.C. § 156(c) provides that :

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

2

As set forth in the Section 156(c) Application, the Debtors anticipate that there will be thousands of entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the appointment of a claims, noticing and balloting agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

The Debtors selected Donlin Recano after having obtained and reviewed engagement proposals from at least three claims, noticing and balloting agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Donlin Recano's rates are competitive and reasonable given Donlin Recano's quality of services and expertise.  The terms of retention are set forth in the Engagement Agreement included herewith as Exhibit A (the "**Engagement Agreement**").

## CONCLUSION

24.     The Debtors therefore respectfully request that the Court enter an order granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:   May 5, 2015                          FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER GRANTING AN EXPEDITED HEARING AND APPOINTING
DONLIN, RECANO & COMPANY, INC. AS THE
CLAIMS, NOTICING AND BALLOTING AGENT FOR THE DEBTORS,
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the Motion and Application (collectively, the "**Section 156(c) Application**")[1] of

Magnetation LLC and its subsidiaries that are debtors and debtors in possession (the "**Debtors**")

for an order for an expedited hearing and authorizing the retention and appointment of Donlin,

Recano & Company, Inc. ("**Donlin Recano**") as claims, noticing and balloting agent in these

chapter 11 cases under 28 U.S.C. §156(c) and section 105(a) of the Bankruptcy Code to, among

other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and

otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases  and (iii) provide

such other balloting and administrative services, as required by the Debtors; and upon the

Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC; and upon the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Declaration of Colleen McCormick, Chief Operating Officer of Donlin Recano (the "**Claims, Noticing and Balloting Agent Declaration**") submitted in support of the Section 156(c) Application; and the Debtors having estimated that there are thousands of creditors in these chapter 11 cases, many of which are expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. § 156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Donlin Recano has the capability and experience to provide such services; and the Court being satisfied, based on the representations made in the Section 156(c) Application and the Claims, Noticing and Balloting Agent Declaration, that Donlin Recano is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and represents no interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to consider the Section 156(c) Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Section 156(c) Application and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Section 156(c) Application having been provided to parties in interest as specified in Local Rule 9013-3(a)(2), and it appearing that no other or further notice need be provided; and the Court having determined that the relief requested in the Section 156(c) Application being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Section

2

156(c) Application and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Section 156(c) Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore,

IT IS ORDERED:

1.      The Section 156(c) Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Donlin Recano as claims, noticing and balloting agent, effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement, and Donlin Recano is authorized and directed to perform noticing and balloting services and to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Section 156(c) Application (the "**Claims, Noticing and Balloting Services**").

3.      Donlin Recano shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Donlin Recano is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      Donlin Recano is authorized to take such other action to comply with all duties set

forth in the Section 156(c) Application.

6.      The Debtors are authorized to compensate Donlin Recano in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Donlin Recano and the rates charged for each, and to reimburse Donlin Recano for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Donlin Recano to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Donlin Recano shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the U.S. Trustee, proposed counsel to the Debtors, counsel for any official committee, counsel for the ad hoc committee of senior secured noteholders, counsel for the agent under the Debtors' postpetition financing facility (the "**DIP Facility**") and counsel to the lenders under the DIP Facility, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

8.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Donlin Recano under this Order shall be an administrative expense of the Debtors' estates.

9.      Donlin Recano may hold its retainer under the Engagement Agreement during the

chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

10.    The Debtors shall indemnify Donlin Recano under the terms of the Engagement Agreement.

11.    All requests by Donlin Recano for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided*, *however*, that in no event shall Donlin Recano be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

12.    In the event that Donlin Recano seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Donlin Recano's own applications, both interim and final, but determined by this Court after notice and a hearing.

13.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Donlin Recano believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order),

5

including without limitation the advancement of defense costs, Donlin Recano must file an application therefore in this Court, and the Debtors may not pay any such amounts to Donlin Recano before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Donlin Recano for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Donlin Recano under the terms of the Engagement Agreement. All parties in interest shall retain the right to object to any demand by Donlin Recano for indemnification, contribution or reimbursement.

14.    In the event Donlin Recano is unable to provide the services set out in this order, Donlin Recano will immediately notify the Clerk and the Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims, noticing and balloting agent with the advice and consent of the Clerk and the Debtors' attorney.

15.    The Debtors and Donlin Recano are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application.

16.    Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

17.    Donlin Recano shall not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court.

6

18.     In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application and the Order, the Order shall govern.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or other Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated:

_____
The Honorable Gregory F. Kishel
Chief United States Bankruptcy Judge