UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Magnetation LLC,<br>　　　　Debtor. | Case No. 15-50307<br>Chapter 11 Case |
| Mag Lands, LLC,<br>　　　　Debtor. | Case No. 15-50308<br>Chapter 11 Case |
| Mag Finance Corp.,<br>　　　　Debtor. | Case No. 15-50309<br>Chapter 11 Case |
| Mag Mining, LLC,<br>　　　　Debtor. | Case No. 15-50310<br>Chapter 11 Case |
| Mag Pellet LLC,<br>　　　　Debtor. | Case No. 15-50311<br>Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN ORDER (I) GRANTING AN EXPEDITED HEARING AND (II) AUTHORIZING THE DEBTORS TO ASSUME THE TECHNOLOGY LICENSE AGREEMENT**

TO:　The parties in interest as specified in Local Rule 9013-3(a)(2).

　　1.　Magnetation LLC ("**Mag LLC**") and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") by this motion (this "**Motion**") move this Court for the relief requested below and give notice of hearing.

　　2.　The Court will hold a hearing on the Motion at 10:00 a.m. (prevailing Central time) on May 7, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

　　3.　Local Rule 9006-1(c) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought herein, the Debtors do not object to written responses being served and filed up to two hours prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING**.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 1070-1. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. On May 5, 2015 (the "**Petition Date**"), each of the above-captioned Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"). The cases are currently pending in this Court.

5. This motion arises under sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6003. This motion is filed under Local Rules 9013-1, 9013-2 and 9013-3. Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rules 2002(a) and 9013 and Local Rules 2002-1(b), 9013-2 and 9013-3.

6. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed.

7. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, which is incorporated herein by reference. Facts specific to the relief requested herein are set forth in the relevant sections below.

**RELIEF REQUESTED**

8. By this Motion, pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors seek an order substantially in the form filed herewith (the "**Order**") granting an

expedited hearing and authorizing the Debtors to assume the Technology License Agreement (as defined below).

## THE TECHNOLOGY LICENSE AGREEMENT

9. Mag LLC was formed in October 2011 as a joint venture between Magnetation, Inc. ("**Mag Inc.**") and AK Iron Resources, LLC, a wholly-owned subsidiary of AK Steel Corporation. The Debtors' primary business is the production of iron ore concentrate from tailings, and the processing of that iron ore concentrate into iron pellets for sale as a raw input for the production of steel.[1] The heart of this process, and what sets the Debtors apart from other producers in the industry, is the proprietary technology, know-how and other intellectual property licensed from Mag Inc. (the "**Magnetation Process**") under that certain technology license agreement dated as of October 4, 2011 (as amended on May 16, 2013, the "**Technology License Agreement**").[2] Three of the Debtors' four plants (the "**Iron Ore Plants**") exist solely to implement the Magnetation Process, while the fourth plant (the "**Pellet Plant**"), which provides the Debtors with the majority of their revenue, is supplied by the outputs of the Iron Ore Plants.

10. The Technology License Agreement grants Mag LLC a non-exclusive license to use the Magnetation Process within the United States of America,[3] and its territories and possessions. The term of the Technology License Agreement is linked to the term of the

---

[1] The Debtors also sell some of the iron ore concentrate they produce to third parties.

[2] Due to confidentiality concerns, the Debtors have not attached a copy of the Technology License Agreement (as defined herein). However, upon request, the Debtors will provide a copy of the Technology License Agreement on a confidential basis to the Court, the U.S. Trustee and the advisors to the official committee of unsecured creditors appointed in these chapter 11 cases on a professional eyes only basis.

[3] Mag Inc. is also a 20% member of Mining Resources, LLC, a joint venture with Steel Dynamics, Inc. ("**Steel Dynamics**"), in which Steel Dynamics is the 80% member. Mining Resources, LLC was formed for the operation of an iron ore concentrate production plant, Plant 3, in Chisholm, Minnesota, which also uses Mag Inc. technology pursuant to a license.

3

operating agreement under which Mag LLC is organized, which is to be perpetual, subject to limited termination provisions included therein. The only payments due under the Technology License Agreement are pass-through payments to the State of Minnesota based on the royalties that Mag Inc. is obligated to pay as a licensor of technology under a royalty agreement among itself, the Office of the Commissioner of Iron Range Resources and Rehabilitation, an agency of the State of Minnesota, and the Minnesota Department of Employment and Economic Development, a department of the State of Minnesota. The Debtors estimate that these payments total approximately $860,000 per quarter. There are no prepetition defaults under the Technology License Agreement that would need to be cured.[4] Thus, at no additional cost, upon assumption, the Debtors will secure the primary means with which to operate their business as they navigate through chapter 11. The burdens on the Debtors under the Technology License Agreement are insignificant in comparison to the benefits.

**ASSUMING THE TECHNOLOGY LICENSE AGREEMENT IS NECESSARY
TO PRESERVE THE VALUE OF THE DEBTORS' ESTATES**

11. The nature of the Debtors' businesses makes it essential for the Debtors to have the ability to continue to utilize the Magnetation Process on an ongoing and uninterrupted basis.

12. Without the ability to use the Magnetation Process, three of the Debtors' four plants, the Iron Ore Plants, would be unable to operate. The Magnetation Process is the only commercially viable process for the extraction of iron ore concentrate from tailings. Further, the locations of the Iron Ore Plants are based on proximity to their raw inputs, and so even with significant retooling, it would be impossible to economically convert to a non-tailings-based process. The immediate consequence of shuttering the Iron Ore Plants would be choking

---

[4] The Debtors intend to use proceeds of their postpetition financing to pay the quarterly royalty due to the State of Minnesota for the first quarter of 2015.

production at the Pellet Plant, the major source of the Debtors' revenues. Although the Pellet Plant can process iron ore concentrate from other sources, it is currently able to achieve costs per tonne well below industry averages precisely because the iron ore concentrate it receives from the Iron Ore Plants is produced so economically. Even if comparable iron ore concentrate at comparable pricing could be sourced, which may not be a feasible alternative, the lost production time would cripple the Debtors' operations and eradicate their efforts to reorganize.

13. The Debtors' employees, customers, vendors and lenders rely on the Debtors' continued operation, which is entirely dependent on the Magnetation Process. Without the Technology License Agreement, the Debtors could be forced to liquidate at an enormous discount to going concern value. Thus, it is essential, at the outset of the case, to dispel any uncertainty around the status of the core of the Debtors' operations, thereby assuring these valued constituents of the soundness of the Debtors' business.

14. Therefore, because of the paramount importance of the Technology License Agreement, the Debtors, in their reasonable business judgment, believe that the assumption of the Technology License Agreement is in the best interests of the Debtors, their creditors and their estates.

## REQUEST FOR EXPEDITED RELIEF

15. The Debtors request expedited relief on this Motion. The Debtors have scheduled and served a number of "first day" motions designed to facilitate an orderly transition to chapter 11. The granting of this Motion on an expedited basis will enable the Debtors to continue utilizing technology that is essential to the day-to-day operations of their business. Without the Technology License Agreement, the Debtors could be forced to liquidate at an enormous discount to going concern value. Thus, expedited relief is essential to provide

certainty to employees, customers, vendors, lenders and other parties in interest about the Debtors' continued operations, and to induce stakeholders to continue working for or with the Debtors.

16. Pursuant to Local Rule 9013-2, this Motion is verified and is accompanied by a memorandum of law, proposed order and proof of service.

17. Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein. The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## NO PREVIOUS REQUEST

18. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully move the Court for an order:

A. granting expedited relief;

B. authorizing the Debtors to assume the Technology License Agreement; and

C. granting such other and further relief as the Court may deem just and equitable.

Dated: May 5, 2015	FREDRIKSON & BYRON, P.A.

*/e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile: (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors
and Debtors in Possession*

– and –

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 607-7983
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

## **VERIFICATION**

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: __May 5__, 2015    Signed: _____
                                    Joseph A. Broking

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Magnetation LLC, <br>        Debtor. | Case No. 15-50307 <br> Chapter 11 Case |
| Mag Lands, LLC, <br>        Debtor. | Case No. 15-50308 <br> Chapter 11 Case |
| Mag Finance Corp., <br>        Debtor. | Case No. 15-50309 <br> Chapter 11 Case |
| Mag Mining, LLC, <br>        Debtor. | Case No. 15-50310 <br> Chapter 11 Case |
| Mag Pellet LLC, <br>        Debtor. | Case No. 15-50311 <br> Chapter 11 Case |

**MEMORANDUM IN SUPPORT OF THE DEBTORS' JOINT MOTION FOR AN ORDER (I) GRANTING AN EXPEDITED HEARING AND (II) AUTHORIZING THE DEBTORS TO ASSUME THE TECHNOLOGY LICENSE AGREEMENT**

Magnetation LLC ("**Mag LLC**") and its subsidiaries that are debtors and debtors in possession in these cases (the "**Debtors**") submit this memorandum of law in support of the motion submitted herewith (the "**Motion**"), in accordance with Local Rule 9013-2(a). The Debtors request court approval of the assumption of the Technology License Agreement. The Court should grant the relief requested because the Technology License Agreement is the most critical component of the Debtors' ability to continue their businesses and to maximize value for all stakeholders in these chapter 11 cases.

**BACKGROUND**

The supporting facts are set forth in the Motion, verified by Joseph A. Broking, Chief Financial Officer of Magnetation LLC. All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

# LEGAL ANALYSIS

## I. THE DEBTORS' REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.

The Debtors request expedited relief on the Motion. Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a Motion "for cause shown." Cause exists here to grant the Motion on an expedited basis. The nature of the Debtors' businesses makes it essential for the Debtors to have the ability to continue to utilize the Magnetation Process on an ongoing and uninterrupted basis. As the central agreement allowing the operation of the Debtors' businesses, every day that passes without the assumption of the Technology License Agreement creates uncertainty for the Debtors and their key constituencies. The Debtors' employees, customers, vendors and lenders rely on the Debtors' uninterrupted operation, which is entirely dependent on the Magnetation Process. Thus, it is essential, at the outset of these chapter 11 cases, to dispel any uncertainty around the status of the core of the Debtors' operations, thereby assuring these valued constituents of the soundness of the Debtors' business. Further, without the Technology License Agreement, the Debtors would likely be forced to liquidate at a significant discount to going concern value. Given the dire consequences to the Debtors' continued operations that could occur as a result of the loss of the Technology License Agreement, it is essential to the Debtors' reorganization efforts and long-term success that they immediately assume the Technology License Agreement. Accordingly, expedited relief requested is necessary to avoid immediate and irreparable harm.

## II. THE ASSUMPTION OF THE TECHNOLOGY LICENSE AGREEMENT SHOULD BE APPROVED.

Section 365(a) of the Bankruptcy Code provides that a debtor may assume or reject an executory contract or unexpired lease, subject to the Court's approval. The Eighth Circuit has

adopted the business judgment rule for determining whether a debtor is justified in assuming or rejecting an executory contract. *See Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463 (B.A.P. 8th Cir. 2003). Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). In order to satisfy the business judgment rule in this Circuit, a debtor must carry its burden to show some benefit to the estate. *Crystalin*, 293 B.R. at 464. However, courts emphasize that "this test is not an onerous one", *id*. at 463, *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy"), and courts should find this prong of the analysis met "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin*, 293 B.R. at 464 (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations omitted)). Once a benefit to the estate has been shown, only a finding of "bad faith or gross abuse of . . . 'business discretion'" should prevent the debtor from assuming the contract. *Id*. (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1984)).

3

The decision to assume the Technology License Agreement easily meets this standard. The burdens on the Debtors under the Technology License Agreement are insignificant in comparison to the benefit to the Debtors of the ability to continue using the essential process of their business. Moreover, aside from securing the benefit of continuing to be able to use this critical technology, assumption of the Technology License Agreement at the outset of the case will ensure a seamless transition into chapter 11 and enhance the Debtors' reorganization efforts by dispelling uncertainty around the status of the core of its operations.

Without the ability to use the Magnetation Process, three of the Debtors' four plants, the Iron Ore Plants, would be unable to operate. The Magnetation Process is the only commercially viable process for the extraction of iron ore concentrate from tailings. Further, the locations of the Iron Ore Plants are based on proximity to their raw inputs, and so even with significant retooling, it would not be possible to economically convert to a non-tailings-based process. The immediate consequence of shuttering the Iron Ore Plants would be choking production at the Pellet Plant, the major source of the Debtors' revenues. Although the Pellet Plant can process iron ore concentrate from other sources, it is currently able to achieve costs per tonne well below industry averages precisely because the iron ore concentrate it receives from the Iron Ore Plants is produced so economically. Even if comparable iron ore concentrate at comparable pricing could be sourced, which may not be a feasible alternative, the lost productive time would cripple the Debtors' operations and eradicate their efforts to reorganize.

Therefore, because of the paramount importance of the Technology License Agreement and the insignificant burden in comparison to the benefits it provides, the Debtors, in their reasonable business judgment, believe that the assumption of the Technology License Agreement is in the best interests of the Debtors, their creditors and their estates.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully seek the relief requested in the Motion.

Dated:  May 5, 2015                                      FREDRIKSON & BYRON, P.A.

 */e/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
James C. Brand (#387362)
Sarah M. Olson (#390238)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile:  (612) 492-7077
ccutler@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

*Proposed Local Counsel to the Debtors
and Debtors in Possession*

– and –

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Damian S. Schaible (NY #4086864)
Michelle M. McGreal (NY #4599031)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 607-7983
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
michelle.mcgreal@davispolk.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Magnetation LLC, <br>         Debtor. | Case No. 15-50307 <br> Chapter 11 Case |
| Mag Lands, LLC, <br>         Debtor. | Case No. 15-50308 <br> Chapter 11 Case |
| Mag Finance Corp., <br>         Debtor. | Case No. 15-50309 <br> Chapter 11 Case |
| Mag Mining, LLC, <br>         Debtor. | Case No. 15-50310 <br> Chapter 11 Case |
| Mag Pellet LLC, <br>         Debtor. | Case No. 15-50311 <br> Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING AND (II) AUTHORIZING THE DEBTORS TO ASSUME THE TECHNOLOGY LICENSE AGREEMENT**

Upon the motion (the "**Motion**")[1] of Magnetation LLC and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") seeking authority pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and to continue performing and exercising their respective rights and obligations thereunder in the ordinary course of business, as more fully set forth in the Motion; and upon consideration of the Declaration of Joseph A. Broking, Chief Financial Officer of Magnetation LLC, and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and Local Rule 1070-1, referring to the Bankruptcy Judges of the Bankruptcy Court for the District of Minnesota all cases and proceedings arising under the Bankruptcy Code, promulgated by the District Court for the District of Minnesota; and consideration of the Motion

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with Bankruptcy Rules 2002(a) and 9013 and Local Rules 2002-1(b), 9013-2 and 9013-3, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their respective estates and creditors and representing a prudent exercise of the Debtors' business judgment; and the Debtors having articulated good, sufficient and sound business justifications and compelling circumstances therefor; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS ORDERED:

1. The Motion is granted, including the request for expedited relief.

2. The Debtors are authorized to assume the Technology License Agreement, and the Technology License Agreement is deemed assumed, pursuant to section 365 of the Bankruptcy Code, effective as of the date of entry of this Order.

3. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

4. Notwithstanding any Bankruptcy Rule, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

5. This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:

                                                    The Honorable Gregory F. Kishel
Chief United States Bankruptcy Judge