**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

**In re:**

| | |
|---|---|
| **Magnetation LLC** | **Case No. 15-50307** |
| Debtor | **Chapter 11** |
| **Mag Lands, LLC** | **Case no. 15-50308** |
| Debtor | **Chapter 11** |
| **Mag Finance Corp.** | **Case No. 15-50309** |
| Debtor | **Chapter 11** |
| **Mag Mining, LLC** | **Case No. 15-50310** |
| Debtor | **Chapter 11** |
| **Mag Pellet LLC** | **Case No. 15-50311** |
| Debtor | **Chapter 11** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO:**
**(1)Motion for joint administration**
**(2)Motion to modify bar date**
**(4)Motion to pay pre-petition wages, et al**
**(5)Motion to pay critical vendors**
**(6)Motion to appoint claims, noticing, and balloting agent under 28 USC §154(c)**

COMES NOW the United States Trustee through the undersigned attorney, Sarah J. Wencil, and objects to several of the first day motions filed by the debtors. In support of the objection, the United States Trustee states the following:

1. A hearing has been scheduled in this matter on May 7, 2015 at 10:00 a.m.

2. The motions were filed on May 5, 2015 starting at approximately 12:30, which gives parties less 48 hours to respond to the motions. For that reason, the US Trustee has filed an omnibus objection.

3. **Motion for joint administration (Doc. No. 10).** The United States Trustee objects to paragraph 6 of the proposed order which provides that the debtors can file a consolidated monthly operating report. Because joint administration is an administrative remedy and not a

1

substantive consolidation of the cases, the debtors must submit separate financial information for each entity and pay quarterly fees required by 28 U.S.C. § 1930 for each entity. The United States Trustee is willing to work with the debtors through the initial debtor interview process to develop a single report that contains the receipt and disbursement information for each entity within that report, but objects to the extent that the debtors are seeking to consolidate financial reporting and quarterly fee payment from five entities into one. *See Intredpid U.S.A., Inc.* (Bankr. No. 04-40416)(Jan. 19, 2005, p. 6)(Dreher, J.)(holding that subsidiaries that share a cash management system in a jointly administered case are liable for separate quarterly fees).

    4. **Motion to modify bar date (Doc. 11).** The United States Trustee objects to the expedited relief requested. A committee of unsecured creditors, which class of claimants will be the most impacted by this motion, has not been appointed yet. It is a denial of due process to restrict the proof of claim deadline without providing an opportunity for the most impacted class to respond.

    5. **Motion to pay pre-petition wages, et al. (Doc. 15).** The United States Trustee requests that the proposed order include a statement that the payment to each employee of the debtors will not exceed the cap set forth at 11 U.S.C. 507(a)(4).

    6. **Motion to pay critical vendors.** The United States Trustee objects to the motion because it permits the debtors to pay any creditors the debtors perceive as "critical" without any oversight by the Court or a committee of creditors. The lack of oversight will allow the debtors to pay any creditor that it favors and leave all other creditors to be paid through the chapter 11 plan. In this scenario, there is no incentive for the debtors to negotiate with the committee for a favorable payment to unsecured creditors. While the motion provides that the DIP lenders can object to the payments, the DIP lenders may be future shareholders of the debtors, so their interests would also

favor paying creditors who will benefit the ownership in the future over paying all creditors fairly.

The motion lacks a list of the critical vendors that need to be paid, an explanation as to why each vendor is critical, and an explanation as to why the Court needs to approve the entire motion in the first few days of the case before the formation of the committee. The motion is also not clear on what types of debts are being paid – whether the debtors are seeking to pay past due obligations that it could not timely pay without the DIP loan or whether the debtors are seeking to pay timely obligations that fall outside the 20 day window at 11 U.S.C. § 503(b)(9).   While the motion makes broad statements about certain vendors being the only available parties to provide services, the contrary is also true that the vendors have a limited selection of customers, so it is not necessarily true that the vendor will cease doing business with the debtor.     The motion lacks sufficient information to determine that the payments will go to actual critical vendors.

The authorization of the payment of pre-petition creditors with post-petition revenues in generally violates the sections of the Bankruptcy Code which provide for the priorities of creditors (11 U.S.C. § 507), and which provide for the promulgation of a fair and equitable plan of reorganization (11 U.S.C. §§ 1122 - 1129); and violates the rule stating that disbursements to pre-petition creditors shall be made only after a proof of claim is filed and such claim is allowed. FED. R. BANKR. P. 3021.

The critical vendors doctrine stems from two common law doctrines recognized by the Supreme Court to provide for post-petition (post-receivership) payments to pre-petition (pre-receivership) claimants, but limited the applicability of the doctrines to railroad reorganizations: (1)   the "necessity of payment" rule, which applies to the payment of pre-petition claims for materials and supplies, where failure to make the payments will threaten the rehabilitation of the debtor,    Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 1 S. Ct.

140, 27 L. Ed. 117 (1882); and (2) the "six months rule," which permits claims for services and goods supplied to a railroad six months before filing bankruptcy to be paid as administrative expense priority claims from a debt fund, <u>Fosdick v. Schall</u>, 99 U.S. 235, 25 L. Ed. 339 (1878). Of the two doctrines, only the "six month" rule was codified in the 1978 Bankruptcy Code, 11 U.S.C. § 1171(b), and this rule is limited to railroad cases by 11 U.S.C. § 103(g). In <u>Miltenberger</u>, the Supreme Court summarized the justification for the doctrines by opining that the "public interest" in maintaining railroad operations was so great as to justify emergency payments of pre-petition claims out of post-petition operating revenues. <u>Miltenberger</u>, 106 U.S. at 311-12.

Despite the limitation of these doctrines to railroad reorganizations, the critical vendor doctrine, also known as the "necessity of payment" rule, was applied outside of the context of a railroad case by the Second Circuit in <u>Dudley v. Mealey</u>, 147 F.2d 268 (2d Cir.), <u>cert</u>. <u>denied</u>, 325 U.S. 873, 65 S. Ct. 1415, 89 L Ed. 1991 (1945). <u>Dudley</u> actually purported to use the "six month rule" to justify why it was paying pre-petition creditors, but the analysis used, which relied upon the fact that the debtor's business would be threatened without making the payments to pre-petition suppliers, is the appropriate analysis under the "necessity of payment" rule. <u>See Id</u>. at 271. <u>Dudley</u> opined that the payment of pre-petition general unsecured claims was necessary in a hotel reorganization where the alternative was cessation of business. 147 F.2d at 271.

The Commission Report, which made recommendations to Congress regarding the contents of the new Bankruptcy Code, recommended that <u>Dudley</u> not be codified in the proposed new Bankruptcy Code. REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R. DOC. NO. 137, 93d Cong., 1st Sess., pt. I, at 219-20 (1973). Therefore, in

the Bankruptcy Code, Congress did not codify Dudley or the "necessity of payment" rule, and instead, only codified the "six month rule" but limited its application to its original common law purpose – railroad reorganizations. *See* 11 U.S.C. § 1170(b); B & W Enters., Inc. v. Goodman Oil Co., 19 B.R. 421, 425 (Bankr. D. Idaho 1982) ("Congress deliberately limited the application of the [necessity of payment and six-months] equity rules to the area that created and utilized them [through 11 U.S.C. § 1171(b).  Though there is some case law, primarily of lower federal courts, to the effect that the equity receivership rules are applicable in situations concerning entities other than railroads, especially if public or quasi-public entities, such cases arose under the Act of 1898 and Title 11 as it now exists effectively overrules such judicial extensions."), aff'd 713 F.2d 534 (9th Cir. 1983).

As the Court is aware, the lead bankruptcy case applying this doctrine to a non-railroad case as the "necessity of payment" doctrine is In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989).  Ionosphere eventually denied the payment, but held that bankruptcy courts were empowered under 11 U.S.C. § 363(b)(1) to pay pre-petition claims and that authority existed under 11 U.S.C. § 105(a) to issue an order to carry out the provisions of Title 11.  98 B.R. at 175.  The court cited the "necessity of payment" rule as authority to permit payments to selected pre-petition creditors.  Id. at 175-76.  The court reasoned that even if the Ionosphere airline case was not covered by the Railway Act, the doctrine applied to the airline industry because of Judge Learned Hand's analysis in Dudley.  Id. at 176.  The court did not mention, that Dudley was specifically excluded from the 1978 Bankruptcy Act.

As the original "necessity of payment" doctrine, the circuit courts overwhelmingly declined to extend the "necessity of payment" rule, that is authorizing such payments to pre-petition creditors, when the on-going business is threatened, beyond railroad reorganization cases.

In <u>Official Comm. of Equity Sec. Holders v. Mabey</u>, the Fourth Circuit held that the bankruptcy courts could not authorize selective payments to unsecured pre-petition creditors under the Bankruptcy Code prior to the allowance of those claims and prior to the confirmation of a plan.    832 F.2d 299, 302 (4th Cir. 1987), <u>cert</u>. <u>denied</u>, 485 U.S. 962, 108 S. Ct. 1228, 99 L. Ed. 2d 428 (1988).    In <u>Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management)</u>, the Fifth Circuit   held that the Bankruptcy Code does not authorize a bankruptcy judge to use post-petition funds to pay pre-petition claims and ruled that the bankruptcy court acted beyond its 11 U.S.C. § 105(a) equitable powers by approving such a payment.    4 F.3d 1329, 1334 (5th Cir. 1993).    In <u>Crowe & Assocs, Inc. v. Bricklayers and Masons Union Local No. 2 (In re Crowe & Assocs., Inc.)</u>, the Sixth Circuit held that a bankruptcy court did not have the authority to enjoin a union from its strike against the debtor to force the debtor to pay pre-petition claims, even though the strike might force the debtor to liquidate.    713 F.2d 211, 216 (6th Cir. 1983).    The basis for the <u>Crowe & Assocs.</u> decision was not based upon the "doctrine of necessity," but the Sixth Circuit commented in dicta on the authority for bankruptcy courts to use equitable powers even when failure to do so will result in irreparable harm to the reorganization process:

> We recognize that this legal result casts upon Crowe inequities.   Even if Crowe desired to make the delinquent payments, the bankruptcy court may not permit it to do so.   Crowe might have to liquidate because of a strike concerning demands over which it has no control.   But Crowe has no control over many economic forces which affect the outcome of its reorganization.

<u>Id</u>. at 273.

In <u>B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.)</u>, the Ninth Circuit stated:    "The Necessity of Payment Rule was created for and has been applied only to

railroad cases. Absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress in the 1978 Act."   713 F.2d 534, 537 (9th Cir. 1983) See also Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141   (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law....   The court may not by granting a priority which it deems equitable set aside the clear congressional mandate that no such priority shall be accorded."(quotations and citation omitted)).

As Circuit Courts rejected the "necessity of payment" rule and as debtors sought to expand the doctrine more aggressively to non-wage and benefit cases, the doctrine was re-named from "necessity of payment" to "critical vendors" to resell the doctrine to bankruptcy courts.   However, again, at least one circuit court has remained skeptical about the doctrine. In In re Kmart Corp., the Seventh Circuit held:

> [Section 105(a)] does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by §105(a) is one to implement rather than override....Every circuit that has considered the question has held that this statute does not authorize a bankruptcy judge to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full.

359 F.3d 866, 871 (7th Cir. 2004). The Seventh Circuit acknowledged that 11 U.S.C. §363(b)(1) may support the payment of some pre-petition debts, but cautioned that Section 363 must be interpreted to do "the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." Id.   at 872.   Therefore, the Seventh Circuit held that the bankruptcy court had to make the following findings: (1)    Disfavored creditors will be as well off with reorganization as with liquidation;    and (2) Critical vendors would have ceased deliveries if pre-petition debts were left unpaid. Id.   at 873.

The recitation of case law history is to note that the doctrine, although extensively used by bankruptcy courts, is an exception rather than a rule. Therefore, the Court should oversee the payments by requiring counsel to specifically list the payments being made, the reason for the payment, and demonstrate that the creditor will not otherwise provide the service.

7. **Motion to appoint claims, noticing, and balloting agent under 28 USC §154(c).**

The United States Trustee objects to the motion to appoint a claims, noticing and balloting agent under 28 USC § 154(c). The authority cited by the debtors -- Section 154(c) – authorizes the Clerk of Court to utilize services for assistance with notices, dockets, calendars and other administrative information. The section does not authorize other parties to hire administrative agents on behalf of the Clerk of Court. In the past, the Clerk of Court for the District of Minnesota has objected to an agent acting in its place with regard to notice, maintenance and administration of the official docket. The Clerk of Court has also declined to relinquish control of the official docket or acquiesced to any entity maintaining docket information that circumvents the Court's right of payment on PACER.

In this case, some of the activities the agent is seeking to perform include the following: maintaining the "official" copy of the debtors' schedules and statements, updating the official claims register and creditor matrix, maintaining a separate post office box to receive official claims, processing all official proofs of claims, maintaining the official claims register, receiving, examining and date stamping all original ballots, and maintaining a public claims register without charge. All of these activities involve official duties of the Clerk of Court. It is improper for the debtor to hire an agent to take over the Clerk of Court's duties, without the support of the Clerk, and it is improper for an agent of the debtor to be handling the official record in this case.

There is no evidence that the Clerk supports this motion, and there is no evidence that the Clerk's office cannot handle the claims, ballots and noticing typically provided by the Court. The List of Creditors uploaded on the docket on May 5, 2015, lists the following numbers of creditors:

> Magnetation LLC – 761 creditors
>
> Mag Finance Corp – 55 creditors
>
> Mag Lands, LLC – 54 creditors
>
> Mag Pellet, LLC – 669 creditors
>
> Mag Mining, LLC – 681 creditors

Further, Mag Finance Corp lists no creditors and Mag Lands LLC lists one tax creditor on their 20 Largest Creditor Lists, Magnetation LLC, Mag Pellet, LLC, and Mag Mining, LLCs' 20 Largest Lists largely overlap.    Therefore, based on these numbers and the apparent overlap of a significant number of creditors, the docket does not look burdensome at this time.

The Agreement also provides that if the case is converted, the agent is entitled to have its chapter 11 administrative claim treated as a chapter 7 claim.    (¶ 1, end of paragraph, p. 15 of 43). This provision violates the bankruptcy code.

The Court should overrule the motion.   If the debtors want an agent to assist it with its noticing obligations, the debtors can hire the agent under 11 U.S.C. § 327, as with any other professional of the estate, and establish the necessity of such employment through that process.

8.    The United States Trustee does not object to the remaining motions but reserves his right to object to the final DIP financing motion.

9.    Given the expedited nature of the hearing, the United States Trustee requests that the requirement of a Memorandum of Law be waived.

WHEREFORE, the United States Trustee requests that the Court sustain his objection herein.

Dated: May 6, 2015

DANIEL MCDERMOTT
United States Trustee
Region 12

/s/ Sarah J.  Wencil
Sarah J.  Wencil
Trial Attorney
Office of U.S. Trustee
Iowa Atty. No. 14014
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
TELE: (612)  334-1366

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

**In re:**

| | | |
|---|---|---|
| **Magnetation LLC** | | **Case No. 15-50307** |
| | **Debtor** | **Chapter 11** |
| **Mag Lands, LLC** | | **Case no. 15-50308** |
| | **Debtor** | **Chapter 11** |
| **Mag Finance Corp.** | | **Case No. 15-50309** |
| | **Debtor** | **Chapter 11** |
| **Mag Mining, LLC** | | **Case No. 15-50310** |
| | **Debtor** | **Chapter 11** |
| **Mag Pellet LLC** | | **Case No. 15-50311** |
| | **Debtor** | **Chapter 11** |

Certificate of Service

The undersigned states that she electronically filed this objection on 5/6/15, which caused the following parties to be served by CM/ECF:

- James C. Brand    jbrand@fredlaw.com, wmunt@fredlaw.com;jchristensen@fredlaw.com
- Clinton E. Cutler    ccutler@fredlaw.com, stimm@fredlaw.com;jchristensen@fredlaw.com;sstallings@fredlaw.com
- Benjamin Gurstelle    bgurstelle@briggs.com, soneill@briggs.com
- Christopher J Harayda    cj.harayda@faegrebd.com, brenda.walz@faegrebd.com
- Joseph W. Lawver    jlawver@messerlikramer.com, cmoum@messerlikramer.com
- John R. McDonald    jmcdonald@briggs.com, mjacobson@briggs.com
- Steven W Meyer    smeyer@oppenheimer.com
- Sarah M Olson    solson@fredlaw.com, stimm@fredlaw.com;jchristensen@fredlaw.com;sstallings@fredlaw.com
- James A. Rubenstein    jim.rubenstein@lawmoss.com, maureen.montpetit@lawmoss.com
- Dennis M Ryan    dennis.ryan@faegrebd.com
- Caren L. Stanley    cstanley@vogellaw.com, jnona@vogellaw.com;sthompson@vogellaw.com;nbowen@vogellaw.com;mspeldrich@vogellaw.com
- William P Wassweiler    wwassweiler@lindquist.com, cfunk@lindquist.com

Debtors' non-local counsel was also served via email at the following addresses:

  Michael McGreal at michelle.mcgreal@davispolk.com
  Kevin J. Coco at kevin.coco@davispolk.com
  Marchall S. Huebner at marshall.huebner@davispolk.com


Date: May 6, 2015                 /s/ Sarah J. Wencil
                           Sarah J. Wencil