## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**INTERIM ORDER (I) GRANTING AN EXPEDITED HEARING;
(II) AUTHORIZING THE DEBTORS (A) TO OBTAIN POSTPETITION FINANCING
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e)
AND 507 AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
CREDITORS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507**

Upon the motion (the "***Motion***"), [1] dated May 5, 2015, of Magnetation LLC (the "***Borrower***") and its affiliated debtors in possession (the "***Guarantors***" and, together with the Borrower, collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Cases***"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "***Bankruptcy Code***"), rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "***Bankruptcy Rules***"); and rules 9013-1, 9013-2 and 9013-3 of the Local Bankruptcy Rules for the District of Minnesota (the "***Local Rules***"), seeking, among other things:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

\

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/07/2015*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

(1)      authorization for the Borrower to obtain, and for each Guarantor to guaranty, post-petition financing (the "***DIP Financing***") up to the aggregate principal amount of $135 million (plus capitalized fees and interest), consisting of (i) up to $63,658,252.45 of new money loans (the "***NM DIP Loans***"); (ii) $3,841,747.55 (the "***Term Roll-Up DIP Loans***")[2] resulting from a dollar-for-dollar roll-up of the aggregate principal amount outstanding and accrued interest under that certain Credit Agreement, dated as of April 17, 2015 (the "***Prepetition Term Credit Agreement***") among the Debtors, Wilmington Trust, National Association, as agent (in such capacity, the "***Prepetition Term Agent***") and the lenders from time to time party thereto (in such capacities, the "***Prepetition Term Lenders***", and together with the Prepetition Term Agent, the "***Prepetition Secured Term Parties***"); and (iii) up to $67,500,000 (the "***Notes Roll-Up DIP Loans***" and together with the NM DIP Loans and the Term Roll-Up DIP Loans, the "***DIP Loans***")) resulting from a dollar-for-dollar roll-up of Prepetition Notes (as defined below) held by the DIP Lenders (as defined below) in an aggregate principal amount of up to $67,500,000 on a pro rata basis, in each case, on the terms and subject to the conditions, set forth herein and in the Debtor In Possession Credit Agreement (the "***DIP Credit Agreement***" and, together with the schedules and exhibits thereto and all ancillary agreements executed in connection therewith, including, without limitation, the Security Documents (as defined in the DIP Credit Agreement), the "***DIP Documents***") among the Debtors, the

---

[2] Amounts indicated for NM DIP Loans and Term Roll-Up DIP Loans are based on a Closing Date (as defined in the DIP Credit Agreement) of May 7, 2015.  If the Closing Date does not occur on such date, the amounts will be updated to reflect the principal amount of Prepetition Term Facility Debt (including accrued and unpaid interest) on the Closing Date, with an interest per diem of $1,492.27.

lenders party thereto from time to time (in such capacities, the "**_DIP Lenders_**") and Wilmington Trust, National Association, as administrative agent (in such capacity, the "**_DIP Agent_**");

(2)     authorization for the Debtors to execute and deliver the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Financing;

(3)     authorization for the Debtors to grant to the DIP Agent, for itself and for the benefit of the DIP Lenders, the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below);

(4)     authorization for the Debtors to maintain and renew existing letters of credit under, and to the extent permitted by, the Prepetition Revolving Credit Agreement (as defined below) (provided that, any Issuing Lender (as defined in the Prepetition Revolving Credit Agreement) shall have no obligation to extend, renew or otherwise modify any letters of credit, but the obligations of the parties with respect to existing letters of credit shall not be modified by the Interim Order (as defined below)), obtain new letters of credit to replace or backstop the existing letters of credit, cash collateralize new letters of credit and perform all acts related thereto, in each case, to the extent permitted by the DIP Documents;

(5)     authorization for the Debtors to use Cash Collateral (as defined below) and the other Prepetition Collateral (as defined below) of the Prepetition Secured Parties (as defined below);

(6)     the grant of adequate protection to the Prepetition Secured Parties with respect to, inter alia, the use of their Cash Collateral and the other Prepetition Collateral;

(7)     approving certain stipulations by the Debtors with respect to the Prepetition Secured Facilities and the related liens and security interests;

(8)     subject only to and effective upon entry of the Final Order (as defined below), the limitation of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(9)     modification of the automatic stay under section 362 of the Bankruptcy Code to the extent set forth herein and in the DIP Documents;

(10)     scheduling an interim hearing (the "***Interim Hearing***") with respect to the relief sought by the Motion to be held before this Court to consider entry of an interim order in the form filed with the Motion (the "***Interim Order***"), authorizing the Borrower, on an interim basis, to forthwith borrow from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $55,000,000 to (i) provide working capital to the Debtors; (ii) pay (a) all amounts payable to the DIP Agent and the DIP Lenders (as defined below) pursuant to the DIP Documents and/or this Interim Order, including, without limitation, the Backstop Fee (as defined in the DIP Credit Agreement) and (b) all reasonable and documented pre- and post-petition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and

4

expenses) incurred by the DIP Lenders, the DIP Agent, the Prepetition Secured Parties, the Prepetition Secured Term Parties, and the Ad Hoc Senior Secured Note Holder Committee (as defined in the DIP Credit Agreement), in each case, as set forth in the DIP Documents and/or this Interim Order, as applicable; (iii) fund the Prepetition Secured Note Trustee Escrow Account (as defined in the DIP Credit Agreement) and the fees related thereto as set forth in the Citibank Preferred Custody Services Agreement by and among Magnetation LLC, the Prepetition Notes Trustee (as defined below), and Citibank, N.A., as escrow agent (the "***Prepetition Notes Trustee Escrow Agreement***"), in each case, in accordance with the DIP Documents and this Interim Order; and (iv) make all adequate protection payments authorized hereunder

(11)    that this Court schedule a final hearing (the "***Final Hearing***") to be held within 45 days of the entry of the Interim Order to consider entry of the order authorizing the balance of the borrowings under the DIP Documents and other relief sought by the Motion on a final basis (the "***Final Order***");

and due and appropriate notice of the Motion, the relief requested therein and of the Interim Hearing having been served by the Debtors in accordance with Local Rule 9013-3(a); and the Interim Hearing having been held before this Court on May 7, 2015; and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion and of the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(b) and (c) and Local Rule 9013-3(a)(2).

3.    *Immediate Entry*.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  No party has interposed an objection to the relief granted hereby or any such objection (to the extent not withdrawn) is hereby overruled.

4.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 18 and 19 below), the Debtors admit, stipulate and agree that:

(a)    The Prepetition Revolving Credit Facility.

(i)    (A) As of the filing of the Cases (the "***Petition Date***"), the Debtors are truly and justly indebted and liable to the lenders (the "***Prepetition Revolving Lenders***") and (as applicable) the Prepetition Revolving Agent under that certain Credit Agreement, dated as of May 20, 2013 (as heretofore amended, supplemented or otherwise modified, the "***Prepetition Revolving Credit Agreement***" and, together with all security, pledge and guaranty agreements and all other documentation heretofore executed in connection with any of the foregoing, each as heretofore amended, supplemented or otherwise modified, the "***Prepetition Revolving Credit Documents***") among the Borrower, the Prepetition Revolving Lenders, and JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the "***Prepetition Revolving Agent***"), without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less

than $56,000,000 in respect of loans made and not less than $8,877,700 in face amount of undrawn letters of credit issued pursuant to the Prepetition Revolving Credit Documents, plus accrued and unpaid interest, and any costs, fees, charges and expenses, in each case, that are chargeable and reimbursable under the Prepetition Revolving Credit Documents, secured swap agreements, cash management arrangements and purchasing card arrangements provided by the Prepetition Revolving Lenders, in each case, in accordance with the terms thereof, and other Obligations (as defined in the Prepetition Revolving Credit Documents) in connection therewith (collectively, the "***Prepetition Revolving Facility Debt***"), (B) the Prepetition Revolving Facility Debt constitutes the legal, valid and binding obligations of the Debtors enforceable in accordance with its terms (except to the extent such enforcement is stayed by section 362 of the Bankruptcy Code) and (C) no portion of the Prepetition Revolving Facility Debt is subject to objection, defense, counterclaim, claim (as such term is defined in the Bankruptcy Code), offset, contest, avoidance, reduction, disallowance, recharacterization, recovery or subordination (whether equitable, contractual or otherwise) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(ii)    As of the Petition Date, the liens and security interests (the "***Prepetition Revolving Facility Liens***") granted to the Prepetition Revolving Agent, for the benefit of the Prepetition Revolving Lenders and certain affiliates thereof, to secure the Prepetition Revolving Facility Debt (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Revolving Agent, or the Prepetition Revolving Lenders or their affiliates) are (A) valid, binding, perfected, enforceable, first-priority liens (subject to permitted exceptions under the Prepetition Revolving Credit Documents) on and security

interests in substantially all of the personal and real property of the Debtors constituting "Collateral" under, and as defined in, the Prepetition Revolving Credit Agreement (the "**Prepetition Revolving Facility Collateral**"); (B) not subject to objection, defense, counterclaim, claim (as such term is defined in the Bankruptcy Code), offset, contest, avoidance, reduction, disallowance, recharacterization or subordination (whether equitable, contractual or otherwise) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (C) subject and subordinate only to certain valid, perfected and unavoidable liens permitted under the Prepetition Revolving Credit Facility as senior to the Prepetition Revolving Facility Liens (the "**Permitted Senior Liens**");

(iii)    As of the Petition Date, the aggregate value of the Prepetition Revolving Facility Collateral substantially exceeds the aggregate amount of the Prepetition Revolving Facility Debt; and

(iv)    The Prepetition Revolving Agent and the Prepetition Revolving Lenders consent to the Debtors' use of Cash Collateral and other Prepetition Collateral, and the Debtors' entry into the DIP Documents, in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

(b)    The Prepetition Term Facility.

(i)    (A) As of the Petition Date, the Debtors were indebted and liable to the Prepetition Term Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $3,837,270.74 (inclusive of capitalized payment in kind interest) in respect of loans made by the Prepetition Term Lenders pursuant to, and in accordance with the terms of, the Prepetition Term Credit Agreement, plus interest, fees, charges and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), in

each case, that are chargeable and reimbursable under the Prepetition Term Credit Agreement and related documents, in each case in accordance with the Prepetition Term Credit Agreement, and other obligations incurred in connection therewith as provided in the Prepetition Term Credit Agreement (collectively, the "***Prepetition Term Facility Debt***"), (B) the Prepetition Term Facility Debt constitutes legal, valid and binding obligation of the Debtors enforceable in accordance with its terms and (C) no portion of the Prepetition Term Facility Debt is subject to objection, defense, counterclaim, offset, avoidance, disallowance, recharacterization, recovery or subordination (except solely as to the order of application of Proceeds as defined and provided in that certain Intercreditor Agreement, dated as of April 17, 2015 (the "***Term Intercreditor Agreement***"), among the Borrower, the Prepetition Revolving Agent, the Prepetition Term Agent and the other parties thereto) pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(ii)    As of the Petition Date, the liens and security interests granted to the Prepetition Term Agent (the "***Prepetition Term Facility Liens***") to secure the Prepetition Term Facility Debt (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Term Agent, for its benefit and for the benefit of the Prepetition Term Lenders), are (A) valid, binding, perfected, enforceable, first-priority liens on and security interests in the personal and real property described in the Prepetition Term Credit Agreement and related documents (the "***Prepetition Term Collateral***"); (B) not subject to objection, defense avoidance, recharacterization or subordination (except solely as to the order of application of Proceeds (as defined and provided in the Term Intercreditor Agreement)) pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (C) subject and subordinate only to the

Prepetition Revolving Facility Liens (solely as to the order of application of Proceeds (as provided in the Term Intercreditor Agreement)), and any Permitted Senior Liens;

(iii)    As of the Petition Date, the aggregate value of the Prepetition Term Collateral substantially exceeds the aggregate amount of the Prepetition Term Facility Debt.

(c)    <u>The Prepetition Senior Secured Notes</u>.

(i)    (A) As of the Petition Date, the Debtors were indebted and liable, without defense, counterclaim or offset of any kind, in respect of the 11.0% senior secured notes of the Borrower due 2018 (the "***Prepetition Notes***") issued pursuant to the Indenture dated May 20, 2013 (as heretofore amended, supplemented or otherwise modified, the "***Prepetition Notes Indenture***" and, together with the Prepetition Revolving Credit Agreement, the "***Prepetition Secured Facilities***") among the Debtors and Wilmington Trust, National Association, as successor Trustee and Collateral Agent (in such capacity, the "***Prepetition Notes Trustee***" and, together with the holders of the Prepetition Notes (the "***Prepetition Noteholders***"), the Prepetition Revolving Agent and the Prepetition Revolving Lenders, the "***Prepetition Secured Parties***"), in the aggregate principal amount of not less than $425,000,000, plus interest, fees, charges and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Notes Indenture), and other obligations incurred in connection therewith as provided in the Prepetition Notes Indenture (collectively, the "***Prepetition Notes Debt***" and, together with the Prepetition Revolving Facility Debt, the "***Prepetition Secured Debt***"), (B) the Prepetition Notes Debt constitutes legal, valid and binding obligation of the Debtors enforceable in accordance with its terms and (C) no portion of the Prepetition Notes Debt is subject to objection, defense, counterclaim, offset,

10

avoidance, disallowance, recharacterization, recovery or subordination (except solely as to the order of application of Proceeds (as defined and provided in that certain Intercreditor Agreement, dated as of May 20, 2013 (as heretofore amended, supplemented or otherwise modified, the "***Notes Intercreditor Agreement***"), among the Borrower, the Prepetition Revolving Agent, the Prepetition Term Agent, the Prepetition Notes Trustee and the other parties thereto) pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(ii)     As of Petition Date, the liens and security interests (the "***Prepetition Notes Liens***" and, together with the Prepetition Revolving Facility Liens, the "***Prepetition Liens***") securing the Prepetition Notes (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Notes Trustee, for its benefit and for the benefit of the Prepetition Noteholders), are (A) valid, binding, perfected, enforceable, first-priority liens on and security interests in the personal and real property described in the Prepetition Notes Indenture and related documents (the "***Prepetition Notes Collateral***" and, together with the Prepetition Revolving Facility Collateral, the "***Prepetition Collateral***"); (B) not subject to objection, defense avoidance, recharacterization or subordination (except solely as to the order of application of Proceeds as provided in the Notes Intercreditor Agreement) pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (C) subject and subordinate only to (1) the Prepetition Revolving Facility Liens (solely as to the order of application of Proceeds pursuant to the Notes Intercreditor Agreement); (2) the Prepetition Term Facility Liens (solely as to the order of application of Proceeds pursuant to the Notes Intercreditor Agreement); and (3) the Permitted Senior Liens; and

11

(iii)     As of the Petition Date, the aggregate value of the Prepetition Notes Debt substantially exceeds the aggregate amount of the Prepetition Notes Collateral.

(d)     The Prepetition Secured Facilities and the Prepetition Term Credit Agreement

(i)     As of the Petition Date, the Debtors have no claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights (other than any setoff rights under any swap agreements in accordance with their terms) against any of the Prepetition Secured Parties, the Prepetition Secured Term Parties, the Prepetition Secured Debt, the Prepetition Term Facility Debt, the Prepetition Term Facility Liens, and the Prepetition Liens under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination (whether equitable, contractual or otherwise, except solely as to the order of application of Proceeds as provided in the Term Intercreditor Agreement and the Notes Intercreditor Agreement, as applicable), avoidance or other claim arising under or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law (all of the foregoing, the "***Challenges***"), and to the extent any Challenges are deemed to have existed, the Debtors hereby forever waive, discharge and release any and all Challenges and the assertion of them against the Prepetition Secured Parties, the Prepetition Secured Term Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case, in connection with any matter related to the Prepetition Secured Debt, the Prepetition Term Facility Debt, the Prepetition Term Facility Liens, the Prepetition Liens, the Prepetition Secured Facilities, the Prepetition Term Credit Agreement or the financings and transactions contemplated thereby; and

(ii)    As of the Petition Date, the Prepetition Secured Debt and the Prepetition Term Facility Debt are subject to the Term Intercreditor Agreement and the Notes Intercreditor Agreement (as applicable), and the provisions of each of the Term Intercreditor Agreement and the Notes Intercreditor Agreement are valid and enforceable, and not subject to any defense or claim of invalidity.  The Prepetition Revolving Facility Debt constitutes "Priority Payment Lien Obligations" under, and as defined in, each of the Term Intercreditor Agreement, the Notes Intercreditor Agreement and the Prepetition Notes Indenture.

5.    *Findings Regarding DIP Financing and Use of Cash Collateral.*

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The Debtors have an immediate need to obtain the DIP Financing and to use Cash Collateral (as defined below) and the other Prepetition Collateral to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and the other Prepetition Collateral, incurrence of indebtedness under the DIP Documents, and other financial accommodations provided under the DIP Financing is vital to the preservation and maintenance of the Debtors' going concern values and to their successful reorganization.

(c)    The Debtors are unable to obtain financing from other sources on more favorable terms than the DIP Financing provided by the DIP Lenders.  The Debtors are (i) unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, and (ii) unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the DIP

Agent and the DIP Lenders the DIP Liens and the DIP Superpriority Claims under the terms and subject to the conditions set forth in this Interim Order and the DIP Documents, as well as any and all other protections provided to the DIP Agent and the DIP Lenders herein and therein.

(d)     The terms of the DIP Financing and the conditions for the use of the Cash Collateral are fair and reasonable, reflect the Debtors' prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Financing has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Documents (collectively, the "*DIP Obligations*"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections granted by section 364(e) of the Bankruptcy Code, and shall be entitled to all of the protections set forth in section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     No party in interest has filed or objected to the relief sought in the Motion or to the entry of this Interim Order, and if any objections to the foregoing were made, to the extent such objections have not been withdrawn, they are hereby overruled on the merits.

(g)     Absent the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Cash Collateral in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

6.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     The Debtors are hereby authorized to enter into and perform all obligations under the DIP Documents.  The Borrower is hereby authorized to borrow money and roll up the Term Roll-Up DIP Loans and the Notes Roll-Up DIP Loans pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty the Borrower's obligations with respect to such borrowings, the Term Roll-Up DIP Loans and the Notes Roll-Up DIP Loans up to $135 million (plus capitalized fees and interest) upon entry of this Interim Order, in accordance with the terms of this Interim Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, (i) to provide working capital to the Debtors (but not, for the avoidance of doubt, to any equityholder or other affiliate of the Debtors); (ii) to pay (a) all amounts payable to the DIP Agent and the DIP Lenders under the DIP Documents, including, without limitation, the Backstop Fee, (b) the reasonable and documented pre- and post-petition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the DIP Lenders, the DIP Agent, the Prepetition Secured Term Parties, and the Ad Hoc Senior Secured Note Holder Committee, including, without limitation, those incurred in connection with the preparation, negotiation, documentation and court approval of the documentation and transactions contemplated by the DIP Documents and the restructuring of the Prepetition Secured Debt and the Prepetition Term Facility Debt, in each case, as provided for in this Interim Order and/or the DIP Documents, as applicable, and (c) JPMorgan Chase Bank, N.A. in accordance with the Business Purpose Promissory Note, dated as of June 22, 2012, and the Business Purpose Promissory Note, dated as of February 29, 2012, (in each case, together with related collateral and other documentation and as heretofore amended, supplemented or otherwise modified) in the amounts as and set forth in the DIP Budget; (iii) to fund the Prepetition Secured Note Trustee

Escrow Account and any fees related thereto as set forth in the Prepetition Notes Trustee Escrow

Agreement; and (iv) to make all adequate protection payments authorized hereunder.

(b)    In furtherance of the foregoing and without further approval of this Court,

each Debtor is authorized and directed to perform, all acts, to make, execute and deliver all

instruments and documents (including, without limitation, security agreements, mortgages and

financing statements), and to pay all fees that may be reasonably required or necessary for the

Debtors' performance of their obligations under the DIP Documents or related to the DIP

Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the

DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more

amendments to or waiver of the requirements of the DIP Documents for, among other things, the

purpose of adding additional financial institutions or qualified institutions as DIP Lenders and

reallocating the commitments for the DIP Financing among the DIP Lenders, in each case in

such form as the Debtors, the DIP Agent, the DIP Lenders, and the Ad Hoc Senior Secured Note

Holder Committee may agree (it being understood that no further approval of the Court shall be

required for amendments to the DIP Documents (and any fees paid in connection therewith) that

do not alter the maturity of the extensions of credit thereunder or increase the commitments or

the rate of interest payable thereunder); provided that the Prepetition Revolving Agent shall be

given five (5) days' notice of any proposed amendments or other modifications to any DIP

Document, and (x) with respect to any amendments or other modifications to any DIP Document

that adversely affect the adequate protection rights of the Prepetition Revolving Agent or the

Prepetition Revolving Lenders or their respective rights under paragraph 16 of this Interim

Order, in each case as provided in this Interim Order and the DIP Credit Agreement, the prior written consent of the Prepetition Revolving Agent and the Prepetition Revolving Lenders shall be required, and (y) with respect to any change to the rights of the Prepetition Revolving Agent under Section 10.1(b) of the DIP Credit Agreement, the prior written consent of the Prepetition Revolving Agent shall be required.

(iii)     the non-refundable payment to the DIP Agent or those of the DIP Lenders that are members of the Ad Hoc Senior Secured Note Holder Committee (the "***DIP Backstop Lenders***") of the fees referred to in the DIP Credit Agreement or in any separate letter agreements between them in connection with the DIP Financing (including, without limitation, the Backstop Fee and the Commitment Fee (as defined in the form of DIP Credit Agreement attached to the Motion)), and the costs and expenses due from time to time to any of them, including, without limitation, fees and expenses of the professionals retained by any of them, in each case, as provided for in the DIP Documents and this Interim Order; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents, including the granting and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(c)     Upon execution and delivery of the DIP Documents, the Debtors' obligations thereunder shall constitute valid and binding obligations of the Debtors and their respective estates, enforceable against each Debtor and its estate in accordance with their respective terms.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code (including, without limitation, under section 502(d) of the Bankruptcy Code) or under any other applicable law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)    Upon entry of this Interim Order, all Prepetition Noteholders shall have the opportunity to become DIP Lenders in accordance with the Solicitation Procedures attached to the Motion as Exhibit E, _provided, however_, that a Prepetition Noteholder may only participate in the Notes Roll-Up DIP Loans if such Prepetition Noteholder also participates in the NM DIP Loans.

(e)    Except as otherwise provided in the DIP Credit Agreement, all NM DIP Loans shall be funded into or credited to the Funding Account (as defined in the DIP Credit Agreement) to be withdrawn therefrom in accordance with the conditions and procedures set forth in the DIP Credit Agreement, and the use of all such proceeds for the purposes set forth in the DIP Documents shall be deemed authorized hereby.

7.    _DIP Superpriority Claims._  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to and effective upon entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims are secured by a judgment lien or other non-consensual lien, levy or attachment, which claims (the "**_DIP Superpriority Claims_**") shall be payable from and have recourse to all pre-and post-petition property of the Debtors and the Debtors' estates and all proceeds thereof, including, effective upon entry of the Final Order, any Avoidance Proceeds (as defined below) (but excluding Avoidance Actions (as defined below)), subject, solely to (i) the Prepetition Revolving Facility Section 507(b) Claim (as defined below); (ii) the provisions of paragraph 16 below, and (iii) in the event of the occurrence and during the continuance of an Event of Default (as defined

in the DIP Credit Agreement), the payment of the Carve-Out, <u>provided, however</u>, that an amount of the DIP Superpriority Claims equal to the amount of all funds that shall have been funded to the Carve-Out Account (as defined in the DIP Credit Agreement) from proceeds of the NM DIP Loans or the Funding Account and then actually applied to pay the Carve-Out (which amount shall not in any event exceed the Carve-Out Cap) (the "***Carve-Out Claim***") shall constitute a superpriority claim against the Debtors that is senior in priority to the Prepetition Revolving Facility Section 507(b) Claim (the "***Carve-Out Claim***").

8.    *DIP Liens*.   As security for the DIP Obligations, the DIP Agent, for its own benefit and for the benefit of the DIP Lenders, is hereby granted, effective and perfected upon the entry of this Interim Order (without the necessity for the execution, recordation or filing of any mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent of, or over, any DIP Collateral (as defined below)), the following security interests in and liens on (the "***DIP Liens***") all of the property identified in clauses (a), (b) and (c) below (collectively, the "***DIP Collateral***"), which security interests and liens shall be (i) junior in lien and payment priority to the Prepetition Revolving Facility Liens and the Prepetition Revolving Facility Adequate Protection Liens (as defined below), except for such liens on and security interests in the Funding Account and the Carve-Out Account, which at all times shall be subject to a first priority security interest and lien in favor of the DIP Lenders, and (ii) subject to, upon the occurrence and during the continuance of an Event of Default, the payment of the Carve-Out as described herein;

(a)    <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority

security interest in and lien on all pre-and post-petition property of the Debtors, including

without limitation the Funding Account and the Carve-Out Account, whether existing on the

Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid,

perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), and the proceeds of

all the foregoing, other than the proceeds of the Funding Account and the Carve-Out Account,

which are subject to the provisions of paragraph 11(a).   For the purposes of this Interim Order,

Unencumbered Property does not include the Debtors' claims and causes of action (or any

proceeds therefrom) under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy

Code, or any other avoidance actions under the Bankruptcy Code or otherwise (collectively, the

"**Avoidance Actions**"), but, subject to and effective upon entry of the Final Order,

Unencumbered Property shall include all proceeds or property recovered, unencumbered or

otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or

otherwise (the "**Avoidance Proceeds**").

(b)    Liens Priming Certain Prepetition Liens.  Pursuant to section 364(d)(1) of

the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority

priming security interest in and lien upon all pre-and post-petition property of the Debtors and

their estates, whether now existing or hereafter acquired, that is subject to any liens in existence

as of the Petition Date, except for (i) the Prepetition Revolving Facility Liens and the Prepetition

Revolving Facility Adequate Protection Liens (other than with respect to the Funding Account

and the Carve-Out Account) and (ii) the Permitted Senior Liens.

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in

and lien upon all pre-and post-petition property of the Debtors (other than the property described

in clauses (a) and (b) of this paragraph 8, as to which the liens and security interests in favor of

the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired,

that is subject to valid, perfected and unavoidable liens in existence on the Petition Date or to

valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected

subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which

security interest and lien shall be immediately junior to such valid, perfected and unavoidable

liens.

9.    *Carve-Out*.

(a)    For purposes of this Interim Order, the "***Carve-Out***" means (i) all fees

required to be paid pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, whether arising prior to

or after the delivery of the Carve-Out Trigger Notice (as defined below); (ii) all reasonable fees

and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount

not to exceed $50,000; (iii) to the extent allowed by the Court at any time, whether by interim

order, procedural order or otherwise, and whether before or after delivery of a Carve-Out Trigger

Notice, all unpaid fees, costs, disbursements and expenses of professionals retained by the

Debtors or the official committee of unsecured creditors appointed in these Cases (the

"***Creditors' Committee***") (but excluding fees and expenses of any professionals employed

individually by members of the Creditors' Committee) pursuant to sections 327 and 1103 of the

Bankruptcy Code, respectively (collectively, the "***Professionals***") incurred at any time on or

prior to the first Business Day (as defined in the DIP Credit Agreement) following the delivery

by the DIP Agent or the Prepetition Revolving Agent, as applicable, of a Carve-Out Trigger

Notice in accordance with terms of this Interim Order; and (iv) to the extent allowed at any time

by the Court, whether by interim order, procedural order or otherwise, the unpaid fees, costs,

disbursements and expenses incurred by Professionals after the first Business Day following the delivery by the DIP Agent or the Prepetition Revolving Agent of the Carve-Out Trigger Notice not to exceed $3,500,000 (the "***Carve-Out Cap***").  Notwithstanding anything to the contrary in this Interim Order, all liens and claims (including claims with superpriority) granted pursuant to this Interim Order shall be subject to the Carve-Out as provided for herein.

(b)    "***Carve-Out Trigger Notice***" shall mean a written notice delivered by the DIP Agent on behalf of the DIP Lenders or, in the case of a material violation of paragraph 11 or 16 of this Interim Order, the Prepetition Revolving Agent on behalf of the Prepetition Revolving Lenders (with copy to the DIP Agent), to the Debtors' lead counsel, the U.S. Trustee, the lead counsel to the Creditors' Committee, and the lead counsel to the DIP Agent or the lead counsel to the Prepetition Revolving Agent, as applicable, following the occurrence and continuation of an Event of Default, describing the Event of Default that is alleged to have occurred and be continuing, or, in the case of the Prepetition Revolving Agent, the material violation that is alleged to have occurred and be continuing, and expressly stating that the Carve-Out Cap has been invoked.

(c)    Upon the receipt of a Carve-Out Trigger Notice, the Borrower shall (i) submit a Withdrawal Request (as defined in the DIP Credit Agreement) for the amount of the Carve-Out Cap (or such amount as is then available in the Funding Account if the amount in the Funding Account is less than the Carve-Out Cap) and (ii) unless waived by the Required Lenders (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement, prepay DIP Loans in an amount equal to the amount of any funds in the Funding Account in excess of the Carve-Out Cap, in each case, in accordance with Section 2.3 of the DIP Credit Agreement. Upon receipt of the amount described in clause (i) of this subparagraph (c), the Borrower shall

transfer such amount to the Carve-Out Account, the proceeds of which shall be available only to pay the Carve-Out.  The DIP Lenders shall not sweep or foreclose on the cash in the Funding Account to the extent the amount remaining therein thereafter would be less than the Carve-Out Cap (less any amounts already funded to the Carve-Out Account).  Upon payment in full of the amounts set forth in clause (iv) of paragraph 9(a), the Borrower shall promptly remit all amounts remaining in the Carve-Out Account, if any, to the Funding Account.

10.     *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the terms and conditions of the DIP Documents and this Interim Order, to use the collateral of the Prepetition Secured Parties that constitutes cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***") in accordance with the Budget (as defined in the DIP Credit Agreement) and as otherwise provided in the DIP Credit Agreement.  The Debtors' right to use Cash Collateral shall terminate automatically on the Final Maturity Date (as defined in the DIP Credit Agreement).  In addition, (i) upon the occurrence of and during the continuance of an Event of Default by the Debtors of this Interim Order, the DIP Agent shall have the immediate right unilaterally to terminate the Debtors' right to use Cash Collateral subject to the giving of five (5) Business Days' prior written notice to the Debtors (with a copy to counsel to the Creditors' Committee, the U.S. Trustee, the Prepetition Revolving Agent, and the Prepetition Notes Trustee) and (ii) upon the occurrence of a material violation of paragraphs 11 or 16 of this Interim DIP Order, either the DIP Agent or the Prepetition Revolving Agent shall have the immediate right unilaterally to terminate the Debtors' right to use Cash Collateral subject to the giving of five (5) Business Days' prior written notice to the Debtors (with a copy to counsel to the Creditors' Committee, the U.S. Trustee, the DIP Agent or the Prepetition Revolving Agent (as applicable), and the Prepetition Notes Trustee); provided that the Debtors reserve their rights

to challenge such termination and/or seek to continue to use Cash Collateral under the terms

determined by the Court at such time.

11.    *Adequate Protection of the Prepetition Secured Parties' Interests.*    The

Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the

Bankruptcy Code, to adequate protection of their interest in their respective Cash Collateral, as

well as for (and equal in amount to) the aggregate diminution, if any, in the value of their

respective interests in the Prepetition Collateral, resulting, without limitation, from the sale, lease

or use by the Debtors of the Prepetition Collateral, the priming of the applicable Prepetition

Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code

(collectively, the "**Adequate Protection Claims**").    As adequate protection of the Adequate

Protection Claims, the Prepetition Secured Parties are hereby granted the following:

(a)    <u>Adequate Protection Liens</u>.  Effective and perfected upon the date of entry

of this Interim Order and without the necessity of the execution of any mortgages, security

agreements, pledge agreements, financing statements or other agreements, in the amount of such

diminution, a senior replacement security interest in and lien upon all DIP Collateral (the

"**Adequate Protection Liens**"), subject and subordinate only (i) in the case of the Adequate

Protection Liens granted to the Prepetition Revolving Agent (the "**Prepetition Revolving Facility**

**Adequate Protection Liens**"), to the DIP Liens on the Funding Account and the Carve-Out

Account, (ii) in the case of the Adequate Protection Liens granted to the Prepetition Notes

Trustee (the "**Prepetition Notes Adequate Protection Liens**"), to the DIP Liens, the Prepetition

Revolving Facility Liens, and the Prepetition Revolving Facility Adequate Protection Liens, and

(iii) in the case of all Adequate Protection Liens, to the payment of the Carve-Out.

(b)      Section 507(b) Claims.  Superpriority claims under section 507(b) of the Bankruptcy Code (the "**Section 507(b) Claims**"), (i) in the case of the Prepetition Revolving Agent, in the amount of the Adequate Protection Claim of the Prepetition Revolving Lenders (the "**Prepetition Revolving Facility Section 507(b) Claim**"), subject solely to (x) the Carve-Out Claim and (y) the payment of the Carve-Out, and (ii) in the case of the Prepetition Notes Trustee, in the amount of the Adequate Protection Claim of the Prepetition Noteholders (such claim, together with the DIP Superpriority Claim and the Prepetition Revolving Facility Section 507(b) Claim, the "**Superpriority Claims**")), subject to (w) the Carve-Out Claim, (x) the DIP Superpriority Claim, (y) the Prepetition Revolving Facility Section 507(b) Claim, and (z) the payment of the Carve-Out.

(c)      Payments, Fees, and Expenses.  In addition, with respect to the Prepetition Revolving Credit Agreement: (i) upon entry of the Interim Order, immediate cash payment of all accrued and unpaid (A) fees and disbursements of counsel to the Prepetition Revolving Agent and the fees of counsel to Associated Bank, N.A., in each case, chargeable and reimbursable under the Prepetition Revolving Credit Agreement (with all fees and expenses invoiced as of the Petition Date being deemed reasonable and reimbursable under the Prepetition Revolving Credit Agreement), (B) all accrued interest (at the non-default interest rate) on loans outstanding under the Prepetition Revolving Credit Agreement that is due and owing pursuant to the Prepetition Revolving Credit Agreement as of the Petition Date, (C) all amounts under any swap agreements (other than termination payments), cash management arrangements and purchasing cards constituting Obligations (as such term is defined in the Prepetition Revolving Credit Agreement) under the Prepetition Revolving Credit Agreement, in each case, that are due and owing as of the Petition Date, and (D) all letter of credit fees and all other accrued and unpaid disbursements, in

each case, due and owing to the Prepetition Revolving Agent and the Prepetition Revolving Lenders pursuant to the Prepetition Revolving Credit Agreement as of the Petition Date; and (ii) thereafter, payment in cash (A) monthly of an amount equal to accrued post-petition interest and letter of credit fees under the Prepetition Revolving Credit Agreement at the non-default interest rate, (B) all amounts due and owing under any swap agreements, cash management arrangements and purchasing cards constituting Obligations (as such term is defined in the Prepetition Revolving Credit Agreement), and (C) monthly of the reasonable and documented costs, fees and expenses of the Prepetition Revolving Agent and the Prepetition Revolving Lenders (including the reasonable and documented fees and expenses of one primary counsel and one local counsel to the Prepetition Revolving Agent, counsel to Associated Bank, N.A. (provided that, the post-petition fees and expenses of counsel to Associated Bank, N.A. shall not exceed $20,000 in the aggregate) and, after the occurrence of an Event of Default, one financial advisor to the Prepetition Revolving Agent, (it being understood that nothing herein shall impair the right of the Prepetition Revolving Agent to seek approval of the Court to modify the adequate protection granted herein to include payment of the reasonable and documented fees and expenses of one financial advisor to the Prepetition Revolving Agent in the absence of or before the occurrence of an Event of Default or the right of the Debtors or any other party to object thereto) (the "***Prepetition Revolving Facility Adequate Protection Payments***").  With respect to the Prepetition Notes Indenture: upon entry of the Interim Order, (i) immediate cash payment of all accrued and unpaid costs, fees and expenses of the Prepetition Notes Trustee, including fees and disbursements of counsel to the Prepetition Notes Trustee chargeable and reimbursable under the Prepetition Notes Indenture, and (ii) thereafter, payment in cash monthly of the reasonable and documented fees of the Prepetition Notes Trustee chargeable and reimbursable

26

under the Prepetition Notes Indenture (including the reasonable and documented fees and expenses of one primary counsel and one local counsel).  None of the costs, fees and expenses payable under this paragraph 11 shall be subject to separate court approval and the recipients shall not be required to file any fee applications therefor; provided, that this Court shall resolve any disputes as to the reasonableness of such fees and expenses.

(d)    Information.  Contemporaneous provision to the Prepetition Revolving Agent of any required periodic reporting or notices (other than any notices provided pursuant to Sections 2.2, 2.3, 5.3 or 5.4 of the DIP Credit Agreement) that are provided to the DIP Agent, the DIP Lenders, the Ad Hoc Senior Secured Note Holder Committee, or the Prepetition Notes Trustee pursuant to the DIP Credit Agreement or the Prepetition Notes Indenture, respectively.

12.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that the Prepetition Secured Parties and the Prepetition Secured Term Parties may request further or different adequate protection (and in the case of the Prepetition Secured Term Parties, to the extent that the Term Roll-Up DIP Loans are unwound, rejected, or reversed, the Prepetition Secured Term Parties shall be entitled to seek adequate protection), and the Debtors, the DIP Agent, and the DIP Lenders or any other party may contest any such request (subject to the Term Intercreditor Agreement and the Notes Intercreditor Agreement).  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization to use Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity

to the Prepetition Secured Parties, the DIP Agent or any DIP Lender to assert rights of setoff or other rights with respect thereto as permitted by law.

13. *Perfection of DIP Liens and Adequate Protection Liens*.

(a) The DIP Agent, the DIP Lenders, and each Prepetition Secured Party are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over any DIP Collateral, or take any other action in order to validate and perfect, the liens and security interests granted to them hereunder. Whether or not the DIP Agent, the Prepetition Revolving Agent or the Prepetition Notes Trustee (each, on behalf of its constituency) file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any DIP Collateral, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at any time after the entry of this Interim Order. Upon the request of the DIP Agent, without any further consent of any party, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors are authorized to execute, deliver and file any instruments necessary or desirable to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.

(b) A certified copy of this Interim Order may be filed with or recorded in any filing or recording offices in addition to or in lieu of financing statements, mortgages, notices of lien or similar instruments, and all filing or recording officers are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.

(c)     Notwithstanding anything to the contrary in the Motion, the DIP Documents or this Interim Order, for purposes of this Interim Order, in no event shall the DIP Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right, to which any Debtor is a party, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in:  (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein, or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective or unenforceable by applicable non-bankruptcy law or the Bankruptcy Code.

14.     *Limitation on Certain Rights.*  Notwithstanding anything to the contrary in the Bankruptcy Code, but in each case subject to entry of the Final Order, (a) except to the extent of the Carve-Out, the Debtors shall not have the right to surcharge the Prepetition Secured Parties, the DIP Lenders, or their respective collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, and (b) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception provided by section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties.

15.     *Protection of DIP Lenders' Rights.*

(a)     Until such time as all DIP Loans and other amounts outstanding under the DIP Documents (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) have been indefeasibly paid in full in cash, and

all Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement have been terminated (collectively, the "***Discharge of DIP Obligations***") and so long as the Prepetition Revolving Lenders are continuing to receive without interruption their adequate protection as and when due (including all payments as set forth in paragraph 11 hereof), each of the Prepetition Secured Parties shall (i) have no right to and take no action to foreclose upon, or recover in connection with, the Prepetition Liens, or otherwise seek or exercise any enforcement rights or remedies against any Prepetition Collateral, (ii) be deemed to have consented to any release of the DIP Collateral authorized under the DIP Documents, and (iii) except as provided for in paragraph 13(a), not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Prepetition Collateral.

(b)     Subject to paragraph 16, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders (i) upon two (2) Business Days' prior written notice to the Debtors (with copy to counsel to the Creditors' Committee, the U.S. Trustee, and the Prepetition Revolving Agent) of the occurrence and continuance of an Event of Default to exercise all rights and remedies under the DIP Documents other than rights and remedies against the DIP Collateral, and (ii) upon the occurrence and during the continuance of an Event of Default and five (5) Business Days' prior written notice to the Debtors (with a copy to counsel to any Committee, the U.S. Trustee, and the Prepetition Revolving Agent), to exercise all rights and remedies against the DIP Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by

any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, and the Prepetition Secured Parties shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(c)  Any order approving (i) any refinancing of the DIP Facility during the Cases, (ii) any of the Debtors subsequently obtaining any credit or incurring any debt pursuant to section 364 of the Bankruptcy Code during the Cases, or (iii) any refinancing of the Prepetition Revolving Facility Debt during the Cases (each of (i), (ii), and (iii), a "***DIP Refinancing***") shall provide (w) to the extent that such DIP Refinancing results in an amount of indebtedness or credit exceeding an amount necessary to result in the Discharge of Prepetition Revolving Obligations (as defined below) and provides any party with liens priming the DIP Liens, for the Discharge of DIP Obligations and Discharge of Prepetition Revolving Obligations; (x) for appropriate adequate protection for the Prepetition Notes Trustee and the Prepetition Noteholders; (y) that the Debtors shall not amend, modify, or assign any of the Material Contracts (as defined in the DIP Credit Agreement) without the prior written consent of the Ad Hoc Senior Secured Note Holder Committee; and (z) that the Debtors continue to comply with any remaining milestones provided for in the DIP Credit Agreement, unless otherwise ordered by the Court.

16.  *Protection of Prepetition Revolving Lenders' Rights.*  Notwithstanding anything herein to the contrary, until the Prepetition Revolving Facility Debt (other than contingent

indemnity obligations as to which no claim has been asserted when all other amounts have been

paid) is paid in full in cash and all issued and undrawn letters of credit under the Prepetition

Revolving Facility Documents are 103% cash collateralized pursuant to arrangements

satisfactory to the issuer(s) thereof (collectively, the "***Discharge of Prepetition Revolving***

***Obligations***"), the DIP Agent and the DIP Lenders shall not receive or retain any payments,

distributions or other amounts on account of the DIP Loans, whether such payments,

distributions or amounts are from proceeds of the DIP Collateral or DIP Refinancings or from

any other source (including debt or equity issued or distributed in connection with a plan of

reorganization or any proceeds of such debt or equity) and whether such payments, distributions

or amounts are distributed or made in connection with or pursuant to a plan of reorganization or

liquidation, sale pursuant to section 363 of the Bankruptcy Code, foreclosure or otherwise, other

than (u) funds deposited in or otherwise credited to the Funding Account at the time of such

payment or other distribution to the DIP Agent or the DIP Lenders, (v) funds deposited in the

Carve-Out Account; (w) the Backstop Fee and the Commitment Fee, (x) interest that is paid in

kind, (y) indemnification payments (to the extent provided in the DIP Credit Agreement;

provided that, such amounts in no event shall include principal, interest or amounts or payments

in lieu thereof), and (z) the fees and expenses required to be paid pursuant to the DIP

Documents.  If the DIP Agent or any DIP Lender receives any payments, distributions or other

amounts in violation of this paragraph 16, then the DIP Agent or such DIP Lender, as applicable,

shall hold such amounts in trust for the benefit of the Prepetition Revolving Agent and the

Prepetition Revolving Lenders and shall promptly turn over such amounts to the Prepetition

Revolving Agent.

     17.    *Preservation of Rights Granted Under this Interim Order*.

(a)       No claims or liens having a priority senior to or *pari passu* with those granted by the Interim Order to the Prepetition Secured Parties, other than (i) with respect to the Prepetition Revolving Agent, the DIP Liens on the Funding Account, the Carve-Out Account, and the Carve-Out Claim and (ii) with respect to the Prepetition Notes, the DIP Liens, the Prepetition Revolving Facility Liens, the Prepetition Revolving Facility Section 507(b) Claims, the Prepetition Revolving Facility Adequate Protection Liens, the Funding Account, the Carve-Out Account, the Carve-Out Claim, and the DIP Superpriority Claims, shall be granted or allowed while any portion of the Adequate Protection Claims or the Prepetition Secured Debt remain outstanding, and the Adequate Protection Liens shall not be, except as provided herein, (y) subject or junior to any lien or security interest that is avoided and preserved for the benefit of any Debtor's estate under section 551 of the Bankruptcy Code, or (z) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)       If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity or priority of any DIP Obligations, the Prepetition Secured Debt, the Prepetition Term Facility Debt, or Adequate Protection Claims incurred prior to the actual receipt by the DIP Agent or the applicable Prepetition Secured Party, as applicable, of written notice of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority  or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations, the Prepetition Revolving Facility Debt or Adequate Protection Claims.  Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations and Adequate Protection Claims accrued prior to the actual receipt of such notice by the DIP

Agent or the applicable Prepetition Secured Party shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents.

(c)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, granted by this Interim Order and the DIP Documents shall continue in full force and effect until the Discharge of DIP Obligations, Discharge of Prepetition Revolving Obligations and the payment in full of all other Prepetition Secured Debt have occurred, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, terminating the joint administration of these Cases or appointing a trustee or examiner with expanded powers in any of the Cases, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents) or (iii) the entry of an order confirming a plan of reorganization or liquidation in any of the Cases.  Notwithstanding the preceding sentence, until the Discharge of Prepetition Revolving Obligations, the Adequate Protection Claims of the Prepetition Revolving Agent and the Prepetition Revolving Lenders, the Prepetition Revolving Facility Section 507(b) Claim, and all other rights and remedies of the Prepetition Revolving Agent the Prepetition Revolving Lenders shall continue in full force and effect and not be modified, impaired or discharged by any of the events described in the foregoing clauses (i), (ii) or (iii).  The terms and

provisions of this Interim Order and the DIP Documents shall continue in these Cases, and in any successor or superseding cases.

18.    *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor(s) thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected in any of the Cases) in all circumstances, as of the time this Interim Order is entered by the Court, and any and all Claims and Defenses (as defined below) are hereby irrevocably waived and relinquished by the Debtors (on their own behalf and on behalf of their estates and any of their successors in interest).  The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committee appointed or formed in these Cases (a "***Committee***"), unless (a) a party in interest has filed an adversary proceeding or contested matter by no later than the date that is 30 days after the date of entry of the Final Order (or such later date (x) as has been agreed to, in writing, by the applicable Prepetition Secured Parties and the Prepetition Secured Term Parties in their respective sole discretion or (y) as has been ordered by the Court) (the "***Challenge Period***") (i) challenging the validity, enforceability, priority or extent of the Prepetition Secured Debt, the Prepetition Term Facility Debt,  the Prepetition Liens, or the Prepetition Term Facility Liens, or (ii) asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "***Claims and Defenses***") against any of the Prepetition Secured Parties, the Prepetition Secured Term Parties, or any of their respective affiliates, representatives, attorneys or advisors in connection with matters related to

the Prepetition Secured Facilities, the Prepetition Term Credit Agreement, the Prepetition

Secured Debt, the Prepetition Term Facility Debt, the Prepetition Liens, the Prepetition Term

Facility Liens, the Adequate Protection Liens, the Prepetition Term Collateral or the Prepetition

Collateral, and (b) a final order is entered in favor of the plaintiff sustaining any such challenge

or claim in such timely filed adversary proceeding or contested matter.  If no such adversary

proceeding or contested matter is timely filed, (x) the Prepetition Secured Debt and the

Prepetition Term Facility Debt shall not be subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent

chapter 7 cases and (y) the Prepetition Liens, the Prepetition Term Facility Liens, and the

Adequate Protection Liens shall be deemed to have been, as of the Petition Date, legal, valid,

binding and perfected, not subject to recharacterization, subordination or avoidance, and not

subject to any challenge by any party in interest.  If any such adversary proceeding or contested

matter is timely filed, the stipulations and admissions contained in paragraph 4 of this Interim

Order shall remain binding and preclusive on all Persons (as defined in the Bankruptcy Code),

except to the extent that any particular finding or admission was expressly challenged in such

adversary proceeding or contested matter.  Nothing in this Interim Order vests or confers on any

Person, including any Committee, standing or authority to pursue any cause of action belonging

to the Debtors or their estates, including, without limitation, any Claims and Defenses.

      19.    *Limitation on Use of Financing Proceeds and Collateral*.

      (a)    Notwithstanding anything herein or in any other order by this Court to the

contrary, no borrowings under the DIP Financing, no DIP Collateral or Prepetition Collateral

(including Cash Collateral), or any portion of the Carve-Out may be used for the payment of fees

and expenses of any Professional incurred to (i) object or contest, or raise any defense to, the

36

validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Secured Facilities, or the Prepetition Term Credit Agreement, or the liens or claims (including any superpriority claims or adequate protection claims) granted under this Interim Order, the DIP Documents, the Prepetition Secured Facilities or the Prepetition Term Credit Agreement; (ii) contest the roll-up of the Prepetition Term Facility Debt or the Prepetition Secured Notes, (iii) assert any Claims and Defenses or causes of action against the DIP Agent, any of the DIP Lenders, any of the Prepetition Secured Parties, any of the Prepetition Secured Term Parties, or any of their respective agents, affiliates, representatives, attorneys or advisors, (iv) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Revolving Agent's assertion, enforcement or realization on any DIP Collateral in accordance with the DIP Documents or this Interim Order, (v) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Secured Term Parties or the Prepetition Secured Parties hereunder or under the DIP Documents, the Prepetition Secured Facilities, or the Prepetition Term Credit Agreement,  without the prior written consent of the applicable party, or (vi) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (A) approved by an order of this Court and (B) in accordance with the DIP Documents and the DIP Budget; *provided*, *however*, that in the case of clauses (i) and (iii) above, such limitations shall not apply to any investigation by the Creditors' Committee to the extent that the aggregate amount spent on such investigation does not exceed $50,000; and *provided further* that, to the extent any party in interest, including the Creditors' Committee, incurs any fees or expenses in violation of clauses (i) through (vi) above, the non-payment of such fees and expenses shall not constitute grounds to deny confirmation of any plan of reorganization for any of the Debtors.

(b)    <u>Funding Account</u>.  The proceeds of the NM DIP Loans shall be funded into or credited to a Funding Account in accordance with the DIP Credit Agreement.  The Borrower may withdraw funds from the Funding Account solely in the amounts and subject to the conditions set forth in the DIP Documents.

20.    *Milestone Defaults*.  Unless waived by the Required Lenders or otherwise ordered by the Court, the occurrence of any of the following shall be an Event of Default under the DIP Credit Agreement:

(a)    <u>Chief Restructuring Officer</u>:  The Debtors shall not have hired a Chief Restructuring Officer that is acceptable to the Required Lenders on or before the 15th day after the Petition Date.

(b)    <u>Restructuring Support Agreement</u>:  The Debtors shall not have entered into a restructuring support agreement (the "***RSA***") with the Required Lenders giving effect to the Plan Term Sheet (as defined in the DIP Credit Agreement) in form and substance acceptable to the Required Lenders on or before the 25th day after the Petition Date.

(c)    <u>Motion to Approve a Restructuring Support Agreement</u>:  The Debtors shall not have filed with the Court a motion to approve the RSA (the "***RSA Motion***") on or before the 40th day after the Petition Date.

(d)    <u>Final Order</u>:  The Court shall not have entered the Final Order on or before the 45th day after the Petition Date.

(e)    <u>Approval of Restructuring Support Agreement</u>:  The Court shall not have entered an order approving the RSA Motion on or before the 75th day after the Petition Date.

(f)   <u>Filing of Disclosure Statement and Plan</u>:  The Debtors shall not have filed

with the Court a plan of reorganization in form and substance acceptable to the Required

Lenders that gives effect to the terms of this Interim Order with respect to the Discharge

of Prepetition Revolving Obligations and the Plan Term Sheet or, if executed, the RSA

(the "***Plan***") and a disclosure statement in form and substance acceptable to the Required

Lenders (the "***Disclosure Statement***") on or before the 90th day after the Petition Date.

(g)   <u>Approval of Disclosure Statement or Filing of Sale Motion</u>:   At the

election of the Required Lenders, either (i) the Disclosure Statement shall not have been

approved by the Court or, in the alternative, (ii) the Debtors shall not have filed a motion

with the Court seeking approval of a sale of all, or substantially all, of the Debtors' assets

on terms acceptable to the Required Lenders pursuant to section 363 of the Bankruptcy

Code (the "***363 Sale***"), in either case on or before the 120th day after the Petition Date.

(h)   <u>Confirmation of Plan or Approval of 363 Sale Motion</u>:  At the election of

the Required Lenders, either (i) the Plan shall not have been confirmed by the Court or, in

the alternative, (ii) an order approving the 363 Sale shall not have been entered by the

Court, in either case on or before the 175th day after the Petition Date.

(i)   <u>Consummation</u>:  The effective date of the Plan shall not have occurred on

or before the 190th day after the Petition Date.

21.   *Consensual Plan Treatment in Respect of the DIP Facility.*  Notwithstanding

anything to the contrary in this Interim Order or the DIP Documents, the DIP Lenders may

consent to a different treatment under a chapter 11 plan, and such consent shall be deemed to

have been given, in accordance with the standards set forth in section 1126(c) of the Bankruptcy

Code, upon the consent of two-thirds in amount of holders of claims under the DIP Facility and

more than one-half in number of holders of claims under the DIP Facility, in each case, of those holders that have timely responded to a request for such consent.

22.   *Maintenance of Letters of Credit*.   Following entry of this Interim Order, the Debtors shall be authorized, but not directed, to (i) maintain and renew letters of credit issued or deemed issued under the Prepetition Revolving Credit Agreement on an uninterrupted basis, in accordance with the same practices and procedures as were in effect prior to the Petition Date and subject to the terms and conditions of the Prepetition Revolving Credit Agreement, and to take all actions reasonably appropriate with respect thereto (provided that any Issuing Lender shall have no obligation to extend, renew or otherwise modify any letters of credit, but the obligations of the parties with respect to existing letters of credit shall not be modified by the Interim Order), and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit, and to take all actions reasonably appropriate with respect thereto, in each case, as permitted under the DIP Documents.

23.   *No Waiver by Failure to Seek Relief*.   The delay or failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, or any other party in interest, unless such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

24.   *Interim Order Governs*.   In the event of any inconsistency between the provisions of this Interim Order and any of the DIP Documents, the provisions of this Interim Order shall govern.

25.    *Retention of Jurisdiction*.  This Court has and will retain exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Documents or this Interim Order.

26.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Prepetition Secured Term Parties, any Committee, and the respective successors and assigns of any of the foregoing (including any chapter 7 or chapter 11 trustee appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, *however*, that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed or elected for the estate of any of the Debtors.

27.    *Final Hearing*.  The Final Hearing will be held at a time, date and location to be determined.

28.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

29.    *Notice*.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing and the relief the Debtors intend to seek at such hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any additional party that has filed a request for

notices with this Court, and to any Committee after the same has been appointed or formed, or

such Committee's counsel, if the same shall have been retained.  Any party in interest objecting

to the relief sought at the Final Hearing shall serve and file written objections in accordance with

Local Rules 9006-1(c) and 9013-3(b).

*/e/ Gregory F. Kishel*

Dated:   *May 07, 2015*

_____

Gregory F. Kishel
Chief United States Bankruptcy Judge