UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

| | | |
|---|---|---|
| Magnetation LLC, | | Case No. 15-50307 |
| | Debtor. | Chapter 11 Case |
| Mag Lands, LLC, | | Case No. 15-50308 |
| | Debtor. | Chapter 11 Case |
| Mag Finance Corp., | | Case No. 15-50309 |
| | Debtor. | Chapter 11 Case |
| Mag Mining, LLC, | | Case No. 15-50310 |
| | Debtor. | Chapter 11 Case |
| Mag Pellet LLC, | | Case No. 15-50311 |
| | Debtor. | Chapter 11 Case |

**ORDER (I) GRANTING AN EXPEDITED HEARING, (II) AUTHORIZING THE
DEBTORS TO PAY THE PREPETITION CLAIMS OF CERTAIN CRITICAL
VENDORS AND (III) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[1] of Magnetation LLC and its subsidiaries that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") pursuant to

sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, for authority to pay in the

ordinary course of business prepetition claims of critical vendors[2] (the "**Critical Vendors**"), as

more fully described in the Motion; and upon consideration of the Declaration of Joseph A.

Broking, Chief Financial Officer of Magnetation LLC, filed in support of the Debtors' first-day

pleadings; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the requested

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

[2] Certain parties may receive payment on account of their prepetition claims pursuant to other motions that have been or may be filed by the Debtors. To the extent that a party receives payment on account of its prepetition claim pursuant to an order approving any such motion, this Order shall not apply to such prepetition claim.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/07/2015*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to parties in interest as specified in Local Rule 9013-3(a)(2), and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors, and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and the Court having determined that immediate relief is necessary to avoid irreparable harm, and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS ORDERED:

1.     The Motion is granted, including the request for expedited relief.

2.     Pursuant to sections 105(a), 363(b) and 503(b)(9) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of the Critical Vendors (the "**Vendor Claims**").

3.     The Debtors' payment of Vendor Claims shall not exceed $27.5 million in the aggregate (the "**Vendor Claims Cap**") unless otherwise ordered by the Court.

4.     The Debtors may condition payment of any Vendor Claims upon agreement by the Critical Vendor to continue to supply goods or services to the Debtors on such Critical Vendor's "**Customary Trade Terms**" for a period following the date of the agreement or on other such terms and conditions as are acceptable to the Debtors.  As used herein, "**Customary Trade Terms**" means, with respect to a Critical Vendor, (i) the normal and customary trade

terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, availability and other applicable terms and programs) that were most favorable to the Debtors and in effect between such Critical Vendor and the Debtors prior to the Petition Date or (ii) such other trade terms as agreed by the Debtors and such Critical Vendor.

5.     As a further condition of receiving payment on a Vendor Claim, the Debtors are authorized to require that such Critical Vendor agree to take whatever action is necessary to remove any existing trade liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Vendor Claim.

6.     After the date hereof, the Debtors shall determine, in the ordinary course of business, which entities are Critical Vendors by considering, among other things, (a) which suppliers were sole-source or limited-source suppliers, without whom the Debtors could not continue to operate without disruption, (b) which suppliers would be prohibitively expensive to replace, (c) which suppliers present an unacceptable risk should they cease the provision of truly essential services or supplies and (d) the extent to which suppliers may be able to obtain or have obtained trade liens on equipment, supplies or goods of the Debtors.

7.     The Debtors may require Critical Vendors to enter into an agreement (the "**Vendor Agreement**") including provisions substantially in the form attached to the Motion as Exhibit A as a condition to paying a Vendor Claim.  Any such Vendor Agreements shall be provided to the counsel to the agent and the ad hoc committee of senior secured noteholders on a professionals' eyes-only basis within five business days of execution.

8.     The Debtors are authorized, but not required, to enter into Vendor Agreements when the Debtors determine that it is appropriate to do so in connection with making payments

3

to Critical Vendors. However, the Debtors' inability to enter into a Vendor Agreement shall not preclude them from paying a Vendor Claim when such payment is necessary to the Debtors' operations.

9.      If the Debtors determine that a Critical Vendor has not complied with the terms and provisions of the Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the agreement, or on such terms as were individually agreed to between the Debtors and such Critical Vendor, the Debtors may terminate a Vendor Agreement, together with the other benefits to the Critical Vendor as contained in this Order; *provided, however*, that the Vendor Agreement may be reinstated if (x) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the Critical Vendor, (y) the underlying default under the Vendor Agreement is fully cured by the Critical Vendor not later than five business days after the date the initial default occurred or (z) the Debtors reach a subsequent agreement with the Critical Vendor.

10.      If a Vendor Agreement is terminated as set forth above, or if a Critical Vendor that has received payment of a prepetition claim later refuses to continue to supply goods or services for the applicable period in compliance with the Vendor Agreement or this Order, then (a) the Debtors may declare that the payment of the creditor's Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor, (b) the creditor shall immediately return such payments in respect of a Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments or offsets of any type whatsoever and (c) the

4

creditor's Vendor Claim shall be reinstated in such an amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Vendor Claim had been made.

11.     All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Order, upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

12.     The Debtors are authorized, but not required, in the exercise of their business judgment, to pay claims of any creditors or claimants entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code (the "**Twenty-Day Administrative Claims**") in the ordinary course of the Debtors' business and on such terms as the Debtors deem appropriate.

13.     Payments on account of any Twenty-Day Administrative Claims shall not count against the Vendor Claims Cap.

14.     All applicable banks and other financial institutions are hereby authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors under this Order, whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such banks and financial institutions are authorized to rely on representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

15.     Nothing contained in this Order shall be deemed to constitute (a) a rejection, assumption or postpetition reaffirmation of any executory contract or to require the Debtors to make any of the payments or to post any of the deposits authorized herein, (b) a grant of third-

5

party beneficiary status or bestowal of any additional rights on any third party or (c) a waiver of any rights, claims or defenses of the Debtors.

16.     Notwithstanding anything to the contrary contained herein, (i) any payment to be made, and any authorization contained, hereunder shall be subject to the applicable requirements imposed on the Debtors under any order approving the Debtors' postpetition financing facility (the "**DIP Order**") and the documentation in respect of the postpetition financing facility (the "**DIP Documents**"), (ii) nothing herein shall alter the rights of the secured parties under the DIP Order or DIP Documents and (iii) to the extent of any conflict between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order shall govern.

17.     Nothing in this Order or the Motion shall be construed as prejudicing any rights the Debtors may have to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Vendor Claims.

18.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

*/e/ Gregory F. Kishel*

Dated:   *May 07, 2015*

_____

Gregory F. Kishel
Chief United States Bankruptcy Judge

6