# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **Jointly Administered Under**<br>**Case No. 15-50307** |
| MAGNETATION LLC, et al., | Court File No. 15-50307 (GFK) |
| Debtors. | |
| | Court File Nos: |
| (includes: | |
| Mag Lands, LLC | 15-50308 (GFK) |
| Mag Finance Corp. | 15-50309 (GFK) |
| Mag Mining, LLC | 15-50310 (GFK) |
| Mag Pellet LLC) | 15-50311 (GFK) |
| | |
| | Chapter 11 Cases |
| | Chief Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

August 3, 2015

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (NY #2601094)
Michelle M. McGreal (NY #4599031)
Kevin J. Coco (NY #4787644)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
marshall.huebner@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

-and-

LAPP, LIBRA, THOMSON, STOEBNER & PUSCH, CHARTERED
Ralph V. Mitchell (#184639)
Mark J. Kalla (#159487)
120 South Sixth Street, Suite 2500
Minneapolis, Minnesota 55402
Telephone: (612) 338-5815
Facsimile: (612) 338-6651
RMitchell@lapplibra.com
MKalla@lapplibra.com

LOCAL COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

## TABLE OF CONTENTS

PAGE

ARTICLE 1
DEFINITIONS AND RULES OF INTERPRETATION

Section 1.1.  Definitions.........................................................................................................1
Section 1.2.  Rules of Interpretation ...................................................................................18
Section 1.3.  Computation of Time .....................................................................................19
Section 1.4.  References to Monetary Figures ....................................................................19
Section 1.5.  Exhibits; Schedules; Plan Supplement..........................................................19

ARTICLE 2
TREATMENT OF DIP FACILITY CLAIMS; ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY
TAX CLAIMS

Section 2.1.  Treatment of DIP Facility Claims...................................................................19
Section 2.2.  Treatment of Administrative Expense Claims...............................................20
Section 2.3.  Treatment of Priority Tax Claims .................................................................21

ARTICLE 3
CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

Section 3.1.  Classes and Treatment of Claims Against and Interests in the Debtors .......22
Section 3.2.  Treatment of Claims Against and Interests in the Debtors ...........................23
Section 3.3.  Treatment of Intercompany Claims ..............................................................25

ARTICLE 4
ACCEPTANCE OR REJECTION OF THE PLAN

Section 4.1.  Voting of Claims............................................................................................26
Section 4.2.  Presumed Acceptance of Plan.......................................................................26
Section 4.3.  Presumed Rejection of Plan ..........................................................................26
Section 4.4.  Acceptance by Impaired Classes ..................................................................26
Section 4.5.  Elimination of Vacant Classes ......................................................................26
Section 4.6.  Consensual Confirmation..............................................................................27
Section 4.7.  Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code...........27
Section 4.8.  Severability; Reservation of Rights ..............................................................27

ARTICLE 5
IMPLEMENTATION OF THE PLAN

Section 5.1.  Continued Corporate Existence ....................................................................28
Section 5.2.  Section 1145 Exemption................................................................................28
Section 5.3.  Authorization of New Stock ..........................................................................28
Section 5.4.  Cancellation of Existing Securities and Related Agreements and the
               Indenture ......................................................................................................29

Section 5.5.  Financing and Restructuring Transactions....................................................29

ARTICLE 6
PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.1.  Disbursing Agent .......................................................................................31
Section 6.2.  Timing and Delivery of Distributions.........................................................31
Section 6.3.  Manner of Payment Under Plan..................................................................34
Section 6.4.  Undeliverable or Non-Negotiated Distributions.........................................35
Section 6.5.  Claims Paid or Payable by Third Parties ....................................................35

ARTICLE 7
FILING OF ADMINISTRATIVE EXPENSE CLAIMS

Section 7.1.  Professional Fee Claims..............................................................................36
Section 7.2.  Administrative Expense Claims...................................................................37

ARTICLE 8
DISPUTED CLAIMS

Section 8.1.  Objections to Claims...................................................................................38
Section 8.2.  Resolution of Disputed Claims...................................................................38
Section 8.3.  Estimation of Claims and Interests ............................................................38
Section 8.4.  Payments and Distributions for Disputed Claims.......................................39
Section 8.5.  No Amendments to Claims.........................................................................41
Section 8.6.  No Interest...................................................................................................41

ARTICLE 9
EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 9.1.  Rejection of Executory Contracts and Unexpired Leases............................41
Section 9.2.  Schedules of Executory Contracts and Unexpired Leases..........................42
Section 9.3.  Categories of Executory Contracts to Be Assumed....................................43
Section 9.4.  Assumption and Rejection Procedures and Resolution of Treatment
        Objections ..................................................................................................44
Section 9.5.  Rejection Claims.........................................................................................46
Section 9.6.  Assignment .................................................................................................46
Section 9.7.  Approval of Assumption, Rejection, Retention or Assignment of
        Executory Contracts and Unexpired Leases ...............................................46
Section 9.8.  Modifications, Amendments, Supplements, Restatements or Other
        Agreements .................................................................................................47

ARTICLE 10
PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

Section 10.1.  Corporate Action.......................................................................................48
Section 10.2.  Certificates of Incorporation and Bylaws .................................................48
Section 10.3.  Directors and Officers of the Reorganized Debtors...................................49

## ARTICLE 11
### EFFECT OF CONFIRMATION

Section 11.1.  Vesting of Assets ...................................................................................50
Section 11.2.  Release of Liens....................................................................................50
Section 11.3.  Releases and Discharges.......................................................................50
Section 11.4.  Discharge and Injunction ......................................................................51
Section 11.5.  Term of Injunction or Stays .................................................................52
Section 11.6.  Exculpation ...........................................................................................52
Section 11.7.  Release by the Debtors..........................................................................53
Section 11.8.  Voluntary Releases by the Holders of Claims and Interests.................54
Section 11.9.  Injunction ..............................................................................................54
Section 11.10.  Setoff and Recoupment........................................................................55
Section 11.11.  Avoidance Actions ...............................................................................56
Section 11.12.  Preservation of Causes of Action.........................................................56
Section 11.13.  Compromise and Settlement of Claims and Controversies ....................56

## ARTICLE 12
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

Section 12.1.  Conditions to Confirmation ...................................................................57
Section 12.2.  Conditions to Effectiveness ..................................................................57
Section 12.3.  Waiver of Conditions to Confirmation or Effectiveness ............................58

## ARTICLE 13
### MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

Section 13.1.  Plan Modifications.................................................................................59
Section 13.2.  Revocation or Withdrawal of the Plan and Effects of Non-Occurrence
    of Confirmation or Effective Date .........................................................59

## ARTICLE 14
### RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

## ARTICLE 15
### MISCELLANEOUS

Section 15.1.  Exemption from Transfer Taxes and Recording Fees ...............................62
Section 15.2.  Expedited Tax Determination ...............................................................62
Section 15.3.  Payment of Statutory Fees ....................................................................62
Section 15.4.  Dissolution of the Creditors' Committee...............................................62
Section 15.5.  Plan Supplement ...................................................................................63
Section 15.6.  Claims Against Other Debtors ...............................................................63
Section 15.7.  Substantial Consummation ...................................................................63
Section 15.8.  Severability ............................................................................................63
Section 15.9.  Governing Law ......................................................................................63
Section 15.10.  Binding Effect.......................................................................................64
Section 15.11.  Notices ..................................................................................................64

Section 15.12.  Reservation of Rights..............................................................................65
Section 15.13.  Further Assurances..................................................................................65

**Schedules**

Schedule A:                    Persons and Entities that Are Not Released Parties

Schedule 9.2(a):               Executory Contracts and Unexpired Leases To Be Assumed
Schedule 9.2(b):               Executory Contracts and Unexpired Leases To Be Rejected
Schedule 11.11:                Released Avoidance Actions

# INTRODUCTION

Pursuant to section 1121(a) of the Bankruptcy Code,[1] the Debtors in the above-captioned jointly administered Chapter 11 Cases respectfully propose the Plan.  The Debtors are the proponents of the Plan under section 1129 of the Bankruptcy Code.

The Plan contemplates the reorganization of the Debtors and the resolution of all outstanding Claims against, and Interests in, the Debtors.

Pursuant to section 1125(b) of the Bankruptcy Code, votes to accept or reject a plan of reorganization cannot be solicited from holders of Claims or Interests entitled to vote on a plan until a disclosure statement has been approved by a bankruptcy court and distributed to such holders.  On [●], the Bankruptcy Court entered the Approval Order that, among other things, approved the Disclosure Statement, set voting procedures and scheduled the Confirmation Hearing.  The Disclosure Statement that accompanies the Plan contains, among other things, a discussion of the Debtors' history, businesses, properties and operations, projections for those operations, risk factors associated with the Debtors' businesses and the Plan, and a summary and analysis of the Plan and certain related matters.

# ARTICLE 1
## DEFINITIONS AND RULES OF INTERPRETATION

### Section 1.1.  Definitions

Unless the context requires otherwise, the following terms used in the Plan shall have the following meanings:

1.    "**Ad Hoc Committee**" means certain holders of Existing Notes that are parties to the RSA.

2.    "**Adjustment Distribution**" has the meaning set forth in Section 8.4(b)(iii) of the Plan.

3.    "**Administrative Expense Claim**" means a Claim against any of the Debtors for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, Professional Fee Claims (but excluding, for the avoidance of doubt, DIP Facility Claims).

4.    "**Administrative Expense Claim Bar Date**" means the date that is 30 calendar days after the Effective Date.

5.    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

---

[1] Capitalized terms shall have the meanings ascribed to them in Section 1.1 of the Plan.

6.     "**Allowed**" means, when used in reference to a Claim, all or that portion, as applicable, of any Claim against any Debtor (i) that has been listed by such Debtor in the Schedules (as such Schedules may be amended by the Debtors from time to time) as liquidated in amount and not disputed or contingent, and for which no contrary or superseding Proof of Claim has been filed, (ii) that has been expressly allowed by Final Order or under the Plan, (iii) that has been compromised, settled or otherwise resolved pursuant to the Bankruptcy Rules, Local Rules, another Final Order of the Bankruptcy Court or Section 8.2 of the Plan or (iv) that the Debtors do not timely object to in accordance with Section 8.1 of the Plan; *provided, however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed" for any other purpose under the Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein.  Unless otherwise specified under the Plan, under the Bankruptcy Code, by order of the Bankruptcy Court or as otherwise agreed by the Debtors, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs, fees or charges on such Claims from and after the Petition Date.

7.     "**Approval Order**" means the [*Order (i) Approving Disclosure Statement; (ii) Approving Solicitation and Notice Materials; (iii) Approving Forms of Ballots; (iv) Establishing Solicitation and Voting Procedures; (v) Establishing Procedures for Allowing and Estimating Certain Claims for Voting Purposes; (vi) Scheduling a Confirmation Hearing and (vii) Establishing Notice and Objection Procedures*, entered by the Bankruptcy Court on [●],] together with any supplemental order(s) that may be entered by the Bankruptcy Court in connection therewith.

8.     "**Assumption Effective Date**" means the date upon which the assumption of an executory contract or unexpired lease under the Plan is deemed effective, which in no case shall be later than the Effective Date unless otherwise agreed by the relevant Assumption Party.

9.     "**Assumption Party**" means a counterparty to an executory contract or unexpired lease to be assumed and/or assigned by the applicable Debtor under the Plan.

10.    "**Avoidance Actions**" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

11.    "**Ballot**" means the voting form distributed to each holder of an Impaired Claim entitled to vote on the Plan, on which the holder is to indicate acceptance or rejection of the Plan in accordance with the Voting Instructions and make any other elections or representations required pursuant to the Plan or the Approval Order.

12.     "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended, to the extent applicable to the Chapter 11 Cases.

13.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Minnesota, and, with respect to withdrawal of any reference under section 157 of title 28 of the United States Code and/or order of a district court pursuant to section 157(a) of title 28 of the United States Code with respect to the Chapter 11 Cases, the United States District Court for the District of Minnesota.

14.     "**Bankruptcy Court's Website**" means *www.mnb.uscourts.gov*.

15.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, each as now in effect or as hereafter amended, to the extent applicable to the Chapter 11 Cases.

16.     "**Bar Date Order**" means the *Order (i) Granting an Expedited Hearing and (ii) Setting a Bar Date*, entered by the Bankruptcy Court on May 7, 2015 [ECF No. 61], as modified by the *Order re: Deadline for Timely Filing of Proofs of Claim*, entered by the Bankruptcy Court on July 22, 2015 [ECF No. 263].

17.     "**Beneficial Ballots**" means the ballots upon which Beneficial Holders shall indicate to Nominees their acceptance or rejection of the Plan in accordance with the Voting Instructions.

18.     "**Beneficial Holder**" means, with respect to any security, the Entity having the Beneficial Ownership of such security.

19.     "**Beneficial Ownership**" means, with respect to any security, "beneficial ownership" of such security as determined pursuant to Rule 13d-3 of the Exchange Act.

20.     "**Board**" means, as of any date prior to the Effective Date, Mag LLC's then-existing board of directors, including any duly formed committee thereof.

21.     "**Business Day**" means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which banking institutions in either New York, New York or Minneapolis, Minnesota are required or authorized to close by law or executive order.

22.     "**Cash**" means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

23.     "**Cause of Action**" means, without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, including alter-ego claims and claims under chapter 5 of the Bankruptcy Code as well as any claims or rights created

3

pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date, counterclaims, cross-claims, affirmative defenses and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity or otherwise in any court, tribunal, forum or proceeding, under any local, state, federal, foreign, statutory, regulatory or other law or rule, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

24.     "**Chapter 11 Cases**" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date, pending in the Bankruptcy Court with the case numbers as set forth in the case caption to the Plan, that are jointly administered in the case styled *In re Magnetation LLC, et al,* Case No. 15-50307.

25.     "**Claim**" means a "claim" as defined in section 101(5) of the Bankruptcy Code.

26.     "**Claims Agent**" means Donlin, Recano & Company, Inc., which is located at 6201 15th Avenue, Brooklyn, NY 11219.

27.     "**Claims Objection Deadline**" means 11:59 p.m. (prevailing Central Time) on the 365th calendar day after the Effective Date, subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

28.     "**Class**" means any group of Claims or Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

29.     "**Collateral**" means any property or interest in property of any Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

30.     "**Confirmation**" means confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

31.     "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court on its docket.

32.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

33.     "**Confirmation Order**" means the order of the Bankruptcy Court entered pursuant to section 1129 of the Bankruptcy Code confirming the Plan.

34. "**Contingent**" means, when used in reference to a Claim, any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

35. "**Contingent DIP Obligations**" means all of the Debtors' obligations under the DIP Documents and the DIP Order that are Contingent and/or Unliquidated (including, without limitation, those set forth in Section 9.7 of the DIP Facility), other than DIP Facility Claims that are paid in full in Cash on or prior to the Effective Date.

36. "**Contingent Prepetition Credit Facility Obligations**" means all of the Debtors' obligations arising under or relating to the Prepetition Credit Facility that are Contingent and/or Unliquidated, including, without limitation, those set forth in Section 10.5 of the Prepetition Credit Facility, other than the Prepetition Credit Facility Claims that are paid in full in Cash on or prior to the Effective Date.

37. "**Convenience Class Claim**" means (i) a Claim against any of the Debtors that would otherwise be a General Unsecured Claim and that is greater than $0 and less than or equal to $[●] in Allowed amount or (ii) a Claim against any of the Debtors that would otherwise be a General Unsecured Claim in an amount greater than $[●] but that is reduced to $[●] by an irrevocable written election of the Holder of such Claim made on a properly executed and delivered Ballot; *provided*, *however*, that a General Unsecured Claim originally Allowed in an amount in excess of $[●] may not be subdivided into multiple Claims of $[●] or less for purposes of receiving treatment as a Convenience Class Claim.

38. "**Creditor**" means any holder of a Claim against any of the Debtors.

39. "**Creditors' Committee**" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time.

40. "**Cure**" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure (including if such Proposed Cure is zero dollars) or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure, then in an amount equal to the unpaid monetary obligations owing by the applicable Debtor and required to be paid pursuant to section 365(b) of the Bankruptcy Code, as may be (x) determined by Final Order or (y) otherwise agreed upon by such Debtor and the applicable Assumption Party.

41.    "**Debtors**" means Magnetation LLC, Mag Lands, LLC, Mag Finance Corp., Mag Mining, LLC and Mag Pellet LLC.  To the extent that the context requires any reference to the Debtors after the Effective Date, Debtors shall mean the Reorganized Debtors.

42.    "**Debtors' Case Information Website**" means *www.donlinrecano.com/mag*.

43.    "**DEED**" means the Department of Employment and Economic Development.

44.    "**DIP Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent under the DIP Facility.

45.    "**DIP Credit Agreement**" means that certain Debtor In Possession Credit Agreement, dated as of May 7, 2015, among, *inter alios*, Mag LLC as Borrower, the lenders party thereto from time to time and the DIP Agent, as approved by the Bankruptcy Court pursuant to the DIP Order, including any amendments, restatements, modifications or extensions thereof.

46.    "**DIP Facility**" means the credit facility under the DIP Credit Agreement.

47.    "**DIP Documents**" has the meaning set forth in the DIP Order.

48.    "**DIP Facility Claim**" means a Claim of the DIP Agent or any DIP Lender against a Debtor arising out of or related to the DIP Facility, including, without limitation, the Superpriority Claims and Claims secured by the DIP Liens granted pursuant to, and each as defined in, the DIP Order.

49.    "**DIP Lender**" means any lender under the DIP Credit Agreement as of the Effective Date.

50.    "**DIP Order**" means the *Final Order (i) Granting an Expedited Hearing; (ii) Authorizing the Debtors (a) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and (b) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (iii) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11. U.S.C. §§ 361, 362, 363, 364 and 507*, entered by the Bankruptcy Court on June 10, 2015 [ECF No. 169], as it has been or is hereafter modified, amended, supplemented or extended from time to time during the pendency of the Chapter 11 Cases.

51.    "**Disallowed**" means, when used in reference to a Claim, all or that portion, as applicable, of any Claim against any Debtor that (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) is listed in the Schedules as "$0," or as contingent, disputed or unliquidated and as to which a deadline by which to file a proof of claim has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, (iii) has been agreed to be equal to "$0" or to be disallowed or expunged pursuant to the Bankruptcy Rules,

the Local Rules or otherwise or (iv) is not listed on the Schedules and as to which a deadline by which to file a proof of claim has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court.

52.    "**Disbursing Agent**" means Reorganized Mag LLC or any Person or Entity designated or retained by the Reorganized Debtors, in their sole discretion and without the need for any further order of the Bankruptcy Court, to serve as disbursing agent under the Plan.

53.    "**Disclosure Statement**" means the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, as amended, supplemented or modified from time to time, in each case, as approved by the Approval Order.

54.    "**Disputed**" means, when used in reference to a Claim, any Claim against any of the Debtors or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim.

55.    "**Disputed Claims Reserve**" has the meaning set forth in Section 8.4(b)(i) of the Plan.

56.    "**Distribution Date**" means any of (i) the Initial Distribution Date, (ii) each Interim Distribution Date and (iii) the Final Distribution Date.

57.    "**Distribution Record Date**" means (i) the Confirmation Date or (ii) such other date as designated in an order of the Bankruptcy Court.

58.    "**DTC**" means the Depository Trust Company.

59.    "**Effective Date**" means the Business Day selected by the Debtors that is (i) on or after the Confirmation Date and on which date no stay of the Confirmation Order is in effect and (ii) on or after the date on which the conditions to effectiveness of the Plan specified in Section 12.1 of the Plan have been either satisfied or waived as set forth herein.

60.    "**Entity**" means an "entity," as defined in section 101(15) of the Bankruptcy Code.

61.    "**Environmental Law**" means all federal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders, agreements and determinations and all common law concerning pollution or protection of the environment, or environmental impacts on human health and safety, including, without limitation, the Clean Air Act and any state or local equivalents.

62.   "**ERISA**" means the Employee Retirement Income Security Act of 1974, 29, U.S.C. § 1001, et seq.

63.   "**Estate**" means, individually, the estate of each of the Debtors and collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.  These Estates are jointly administered for procedural purposes only pursuant to the *Order Authorizing Joint Administration* [ECF No. 72].

64.   "**Exchange Act**" means the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder.

65.   "**Existing Notes**" means those certain 11.0% Senior Secured Notes due 2018 in the aggregate principal amount of $425,000,000 issued pursuant to the Indenture, including that certain tack-on offering of $100,000,000 of the 11.0% Senior Secured Notes due 2018 under the Indenture that were not subject to the roll-up in connection with the DIP Facility.

66.   "**Existing Notes Claims**" means, collectively, the Existing Notes Issuer Claims and the Existing Notes Guarantor Claims.

67.   "**Existing Notes Guarantor Claim**" means a Claim against a Debtor other than Mag LLC or Mag Finance Corp. held by the Beneficial Holder of, and on account of, an Existing Note.

68.   "**Existing Notes Issuer Claim**" means a Claim against Mag LLC or Mag Finance Corp. held by the Beneficial Holder of, and on account of, an Existing Note.

69.   "**Existing Notes Stock Allocation**" means (i) 75% of the New Common Stock and (ii) 90% of the New Convertible Preferred Stock, in each case subject to any future dilution by any shares of New Stock issued under the Management Incentive Plan, as applicable.

70.   "**Exit Credit Facilities**" means the Exit First Out First Lien Credit Facility and the Exit Second Out First Lien Credit Facility and/or any additional or alternative sources of exit financing the material terms of which are set forth in the Plan Supplement, which shall provide for sufficient financing to repay all DIP Facility Claims and pay Administrative Expense Claims, Priority Claims, Other Secured Claims and Prepetition Credit Facility Claims, in each case, in Cash in full (unless otherwise agreed to by the holders of such Claims as set forth herein) prior to or as of the Effective Date.

71.   "**Exit Credit Facilities Documents**" means all loan and security documents, intercreditor agreements and other documents and filings, in each case related to the Exit Credit Facilities and as the same may be amended, restated, supplemented or otherwise modified from time to time.

72. "**Exit Credit Facilities Parties**" means the banks, financial institutions and other lenders party to the Exit Credit Facilities from time to time, each in their capacity as such.

73. "**Exit First Lien Credit Agreement**" means a first lien term loan credit agreement to be entered into by the Reorganized Debtors, the material terms of which are set forth in the Plan Supplement.

74. "**Exit First Out First Lien Credit Facility**" means a first lien term loan credit facility provided under the Exit First Lien Credit Agreement, senior in right of payment to the Exit Second Out First Lien Credit Facility, the material terms of which are set forth in the Plan Supplement.

75. "**Exit Second Out First Lien Credit Facility**" means a first lien term loan credit facility provided under the Exit First Lien Credit Agreement, junior in right of payment to the Exit First Out First Lien Credit Facility, the material terms of which are set forth in the Plan Supplement.

76. "**Exit Second Out First Lien Term Loans**" means the term loans made under the Exit Second Out First Lien Credit Facility.

77. "**Exit Second Lien Notes**" has the meaning set forth in Section 5.5(b) of the Plan.

78. "**Final Distribution Date**" means a date selected by the Reorganized Debtors in their sole discretion that is no earlier than 20 calendar days after the date on which all Disputed General Unsecured Claims and Disputed Convenience Class Claims have become either Allowed Claims or Disallowed Claims.

79. "**Final Order**" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the Bankruptcy Court (or such other court) on the docket in the Chapter 11 Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated without the consent of the Debtors.

80. "**General Unsecured Claim**" means any prepetition Claim against any of the Debtors that is not a DIP Facility Claim, Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Existing Notes Claim, Convenience Class Claim, Section 510(b) Claim or Intercompany Claim, including any unsecured Claims under section 506(a)(1) of the Bankruptcy Code.

81. "**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

82. "**Impaired**" means, when used in reference to a Claim, any Claim against any of the Debtors that is impaired within the meaning of section 1124 of the Bankruptcy Code.

83.    "**Indenture**" means that certain Indenture, dated as of May 20, 2013, between the Debtors and the Indenture Trustee with respect to the 11.0% Senior Secured Notes due 2018.

84.    "**Indenture Trustee**" means Wilmington Trust, National Association, in its capacity as indenture trustee under the Indenture.

85.    "**Initial Distribution Date**" means a date selected by the Reorganized Debtors in their sole discretion that is as soon as reasonably practicable after the Effective Date, which shall be the date on which initial distributions under the Plan are made.

86.    "**Insurance Plans**" means the Debtors' insurance policies and any agreements, documents or instruments relating thereto entered into before the Petition Date.

87.    "**Intercompany Claim**" means a Claim by a Debtor against another Debtor other than with respect to the Intercompany Note.

88.    "**Intercompany Contract**" means a contract solely between two or more Debtors entered into before the Petition Date other than the Management Services Agreement and the Technology License Agreement.

89.    "**Intercompany Note**" means that certain note, dated October 4, 2011, between Mag Inc. and Mag LLC.

90.    "**Interest**" means any equity security within the meaning of section 101(16) of the Bankruptcy Code including, without limitation, all issued, unissued, authorized or outstanding shares of stock (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

91.    "**Interim Distribution Date**" means the date that is no later than 180 calendar days after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, which shall be the date on which interim distributions under the Plan are made, with such periodic Interim Distribution Dates occurring until the Final Distribution Date has occurred, it being understood that the Reorganized Debtors may increase the frequency of Interim Distribution Dates in their sole discretion as circumstances warrant.

92.    "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

93.    "**IRRRB**" means the Minnesota Iron Range Resources and Rehabilitation Board.

94.    "**IRS**" means the Internal Revenue Service of the United States of America.

95.    "**L/C**" means any letter of credit issued under the Prepetition Credit Facility.

10

96.    "**L/C Issuer**" means the issuer of an L/C.

97.    "**Lien**" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

98.    "**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the District of Minnesota.

99.    "**Mag Inc.**" means Magnetation, Inc., a Minnesota corporation.

100.   "**Mag LLC**" means Magnetation LLC, a Delaware limited liability company.

101.   "**Management Incentive Plan**" means a plan that will authorize the distribution by the New Board of not less than 25% of the New Common Stock (subject to antidilution protection to maintain a 25% ownership in the event the New Convertible Preferred Stock is converted) and 10% of the New Convertible Preferred Stock in accordance with Schedule 1 of the RSA, which New Common Stock and New Convertible Preferred Stock shall vest upon the earlier of (i) three years after the Effective Date with one-third vesting annually for each year or (ii) upon a sale of Mag LLC (including, without limitation, the sale of substantially all or all of Mag LLC's assets or stock, a merger, or the combination of any of the foregoing).

102.   "**Management Services Agreement**" means that certain management services agreement by and between Mag LLC and Mag Inc., dated October 4, 2011, as the same may have been amended, restated, supplemented or otherwise modified from time to time.

103.   "**Master Ballots**" means the master ballots upon which the Nominees of Beneficial Holders shall reflect the acceptances and rejections of the Plan by their respective Beneficial Holders in accordance with the Voting Instructions.

104.   "**MR License**" means that certain license granted to Mining Resources, LLC, a joint venture between Mag Inc. and Steel Dynamics, Inc., in which Mag Inc. is a 20% member and Steel Dynamics, Inc. is a 80% member.

105.   "**New Board**" means the board of directors of Reorganized Mag LLC on the Effective Date as specified in Section 10.3 herein.

106.   "**New Bylaws**" means the bylaws of Reorganized Mag LLC, which shall be substantially in the form set forth in the Plan Supplement and in form and substance acceptable to the Debtors and the Ad Hoc Committee.

107.   "**New Certificate of Incorporation**" means the certificate of incorporation of Reorganized Mag LLC, which shall be substantially in the form set forth in the Plan Supplement and in form and substance acceptable to the Debtors and the Ad Hoc Committee.

108.  "**New Common Stock**" means the shares of common stock, par value [●] per share, of Reorganized Mag LLC to be authorized and issued hereunder or for purposes specified herein, which shall be entitled to a single vote per share on all matters on which the New Common Stock is entitled to vote.

109.  "**New Convertible Preferred Stock**" has the meaning set forth in Section 5.5(c).

110.  "**New Management Agreements**" means employment agreements between members of Senior Management (as defined in the RSA) and Reorganized Mag LLC in form and substance acceptable to the Debtors and the Ad Hoc Committee.

111.  "**New Securities**" has the meaning set forth in Section 5.2 of the Plan.

112.  "**New Stock**" means the New Common Stock and the New Convertible Preferred Stock.

113.  "**New Stockholders' Agreement**" means the stockholders' agreement substantially in the form included in the Plan Supplement in form and substance acceptable to the Ad Hoc Committee, the Debtors and Senior Management, *provided* that the consent Senior Management shall not be unreasonably withheld, to be entered into by and among Reorganized Mag LLC and certain holders of New Common Stock whose holdings of New Common Stock (calculated on a fully diluted basis) are equal to or greater than [●] percent of the total number of outstanding shares of New Common Stock (calculated on a fully diluted basis) on the Effective Date.

114.  "**Nominee**" means any broker, dealer, commercial loans institution, financial institution or other nominee (or its mailing agent) in whose name securities are registered or held of record on behalf of a Beneficial Holder.

115.  "**Notice of Intent to Assume or Reject**" means a notice delivered by the Debtors or by the Reorganized Debtors pursuant to Article 9 of the Plan stating an intent to assume or reject an executory contract or unexpired lease and including a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure and/or a statement of proposed assignment.

116.  "**Other Priority Claim**" means a Claim against any Debtor, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code.

117.  "**Other Secured Claim**" means any Secured Claim against any Debtor, and for the avoidance of doubt, excluding DIP Facility Claims.

118.  "**Outstanding L/C**" means any L/C that is outstanding on the Effective Date.

119.  "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

120.    "**Petition Date**" means May 5, 2015.

121.    "**Plan**" means this Joint Plan of Reorganization under Chapter 11 of the
Bankruptcy Code, including the Plan Supplement and all exhibits, supplements,
appendices and schedules to any of the foregoing, as any of them may be
amended or modified from time to time hereunder or in accordance with
applicable law.

122.    "**Plan Documents**" means the agreements, instruments and documents to be
executed, delivered, assumed and/or performed in conjunction with the
consummation of the Plan on and after the Effective Date, including, without
limitation, those contained in the Plan Supplement.

123.    "**Plan Supplement**" means, collectively, the documents, agreements, instruments,
schedules and exhibits and forms thereof to be filed as specified in Section 15.5 of
the Plan as the Plan Supplement, as each such document, agreement, instrument,
schedule and exhibit and form thereof may be altered, restated, modified or
replaced from time to time, including subsequent to the filing of any such
documents.  Each such document, agreement, instrument, schedule or exhibit or
form thereof is referred to herein as a "Plan Supplement."  For the avoidance of
doubt, Schedules 9.2(a) and 9.2(b) hereto shall not be deemed to be included in
the "Plan Supplement."[2]

124.    "**Police or Regulatory Law**" means any police or regulatory statute or regulation
including, but not limited to, any Environmental Law and ERISA.

125.    "**Prepetition Credit Facility**" means the revolving credit facility under the
Prepetition Credit Facility Agreement.

126.    "**Prepetition Credit Facility Agent**" means JPMorgan Chase Bank, N.A. in its
capacity as administrative agent under the Prepetition Credit Facility.

127.    "**Prepetition Credit Facility Agreement**" means that certain $65,000,000 Credit
Agreement, dated as of May 20, 2013 (as modified by amendments dated as of
July 11, 2014, December 15, 2014 and April 17, 2015), among the Debtors, the
Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders.

128.    "**Prepetition Credit Facility Claim**" means a Claim of the Prepetition Agent,
any Prepetition Lender or any L/C Issuer against a Debtor arising out of or related
to the Prepetition Credit Facility, including, without limitation, Claims secured by
the Prepetition Revolving Facility Adequate Protection Liens and the Prepetition

---

[2] The Plan Supplement may include, among other documents, the following: (a) the form of the
New Certificate of Incorporation and other organizational documents of the Debtors; (b) the form or
material terms of the Exit Credit Facilities Documents; and (c) the identity and affiliations of each director
and officer of the Reorganized Debtors.

Revolving Facility Section 507(b) Claim granted pursuant to, and each as defined in, the DIP Order.

129.    "**Prepetition Credit Facility Lenders**" means the lenders and issuers of letters of credit under the Prepetition Credit Facility, in their capacity as such.

130.    "**Priority Claims**" means, collectively, Priority Tax Claims and Other Priority Claims.

131.    "**Priority Tax Claim**" means a Claim (whether secured or unsecured) of a Governmental Unit against any Debtor entitled to priority pursuant to section 507(a)(8) or specified under section 502(i) of the Bankruptcy Code.

132.    "**Professional**" means a person retained in the Chapter 11 Cases by separate Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

133.    "**Professional Fee Claims**" means an Administrative Expense Claim of a Professional against any Debtor for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date through and including the Confirmation Date.

134.    "**Proof of Claim**" means a proof of claim against a Debtor filed by a holder of a Claim against any Debtor in accordance with the Bar Date Order.

135.    "**Proposed Cure**" means, for a particular executory contract or unexpired lease, the consideration that the Debtors propose (which may be zero or some amount greater than zero) on a Notice of Intent to Assume or Reject as full satisfaction of the Debtors' obligations with respect to such executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code.

136.    "**Reinstated**" or "**Reinstatement**" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder thereof so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding and without giving effect to any contractual provision or applicable law that entitles a Creditor to demand or receive accelerated payment of a Claim after the occurrence of a default, (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) reinstating the maturity of such Claim as such maturity existed before such default, (C) compensating the Creditor for any damages incurred as a result of any reasonable reliance by such Creditor on such contractual provision or such applicable law and (D) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Creditor; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, without limitation, financial covenant ratios, negative pledge covenants, covenants or

14

restrictions on merger or consolidation, "going dark" provisions and affirmative covenants regarding corporate existence, prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to accomplish Reinstatement.

137. "**Rejection Bar Date**" means the deadline for filing Proofs of Claim arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, which deadline shall be 30 calendar days after the Debtors serve notice of the entry of an order (including, without limitation, the Confirmation Order) approving the rejection of such executory contract or unexpired lease.

138. "**Rejection Claim**" means a Claim against any Debtor under section 502(g) of the Bankruptcy Code.

139. "**Rejection Effective Date**" means the date upon which the rejection of an executory contract or unexpired lease under the Plan is deemed effective.

140. "**Rejection Party**" means a counterparty to an executory contract or unexpired lease to be rejected by the Debtors under the Plan.

141. "**Released Parties**" means (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Credit Facility Agent; (f) the Prepetition Credit Facility Lenders; (g) the arranger and syndication agents for the Prepetition Credit Facility; (h) the L/C Issuers; (i) the Creditors' Committee and its current and former members; (j) the Exit Credit Facilities Parties; (k) the Indenture Trustee; (l) each of the following entities and the funds managed thereby: AllianceBernstein L.P., Apollo Capital Management L.P., Davidson Kempner Capital Management LP, Archview Investment Group LP and Spectrum Group Management LLC; and (m) as to each of the foregoing entities in clauses (a) through (l), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and their current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other Professionals (in each case, solely in their capacity as such); *provided, however*, that the Persons and Entities set forth on Schedule A to the Plan shall not be Released Parties.

142. "**Reorganized Debtors**" means, the Debtors and any successors thereto, whether by merger, consolidation or otherwise, on and after the Effective Date.

143. "**Reorganized Mag LLC**" means Mag LLC and any successor thereto, whether by merger, consolidation or otherwise, on and after the Effective Date.

144. "**Reorganized Subsidiary Debtors**" means the Reorganized Debtors other than Reorganized Mag LLC.

145.   "**Reorganized Subsidiary Debtors' Bylaws**" means the bylaws of the Reorganized Subsidiary Debtors.

146.   "**Reorganized Subsidiary Debtors' Certificates of Incorporation**" means the certificates of incorporation of the Reorganized Subsidiary Debtors or, if any Reorganized Subsidiary Debtor is merged into another entity pursuant to the Restructuring Transactions, then the surviving entity of such merger.

147.   "**Restructuring Advisory Agreement**" means that certain restructuring advisory agreement dated as of [●] between Mag LLC and Mag Inc. on the terms set forth in the RSA and in form and substance acceptable to the Debtors and the Ad Hoc Committee.

148.   "**RSA**" means the restructuring support agreement (as amended, supplemented or otherwise modified from time to time) by and among Mag LLC, the Subsidiary Debtors and the holders of the Existing Notes party thereto from time to time, and consented to by Mag Inc., dated as of June 1, 2015.

149.   "**Restructuring Transactions**" means those transactions described in Section 5.5 of the Plan.

150.   "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules and statements have been or may be supplemented, modified or amended from time to time.

151.   "**Section 510(b) Claim**" means a Claim or Cause of Action against any of the Debtors (i) arising from rescission of a purchase or sale of shares, notes or any other securities of any of the Debtors or an Affiliate of any of the Debtors, (ii) for damages arising from the purchase or sale of any such security, (iii) for violations of the securities laws, misrepresentations or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (iv) for reimbursement, contribution or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer or sale of securities or (v) for attorneys' fees, other charges or costs incurred on account of any of the foregoing Claims or Causes of Action.

152.   "**Secured Claim**" means a Claim against a Debtor or portion thereof other than a DIP Facility Claim or a Priority Tax Claim (i) that is reflected in the Schedules as or asserted in a Proof of Claim to be a secured claim and that is secured by a Lien on Collateral, to the extent of the value of such Collateral, as determined in accordance with section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code or (ii) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

153.   "**Securities Act**" means the Securities Act of 1933, as amended.

16

154. "**Servicer**" means an indenture trustee, owner trustee, pass-through trustee, subordination agent, agent, servicer or any other authorized representative of Creditors recognized by the Debtors or the Reorganized Debtors.

155. "**Solicitation Agent**" means the Debtors' solicitation agent, Donlin, Recano & Company, Inc., which is located at 6201 15th Avenue, Brooklyn, NY 11219.

156. "**Subsidiary Debtors**" means, collectively, each of the Debtors except Mag LLC.

157. "**Technology License Agreement**" means that certain technology license agreement, dated as of October 4, 2011 and amended on May 16, 2013, between Mag Inc. and Mag LLC, as the same may have been amended, restated, supplemented or otherwise modified from time to time.

158. "**Transfer**" and words of like import mean, as to any security or the right to receive a security or to participate in any offering of any security (each, a "**security**" for purposes of this definition), the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in or other disposition of such security or the Beneficial Ownership thereof, the offer to make such a sale, transfer, constructive sale or other disposition, and each option, agreement, arrangement or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing. The term "**constructive sale**" for purposes of this definition means a short sale with respect to such security, entering into or acquiring an offsetting derivative contract with respect to such security, entering into or acquiring a futures or forward contract to deliver such security, or entering into any transaction that has substantially the same effect as any of the foregoing.

159. "**Treatment Objection**" means an objection to the Debtors' proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of the Plan (including an objection to the proposed Assumption Effective Date or Rejection Effective Date, the Proposed Cure and/or any proposed assignment, but not including an objection to any Rejection Claim) that is properly filed with the Bankruptcy Court and served in accordance with the Local Rules by the applicable Treatment Objection Deadline.

160. "**Treatment Objection Deadline**" means the deadline for filing and serving a Treatment Objection, which deadline shall be 4:00 p.m. (prevailing Central Time) on, (i) for an executory contract or unexpired lease listed on Schedule 9.2(a) or 9.2(b), the 15th calendar day after the relevant schedule is filed and notice thereof is mailed, (ii) for an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 9.2(a) or 9.2(b), the 15th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (iii) for an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 15th calendar day after such notice is filed and mailed and (iv) for any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to

Sections Section 9.1 or Section 9.3 of the Plan (without being listed on Schedule 9.2(a) or 9.2(b)), the deadline for objections to Confirmation of the Plan established pursuant to the Approval Order or other applicable order of the Bankruptcy Court.

161.    "**Unimpaired**" means any Claim or Interest that is not Impaired.

162.    "**United States of America**" or "**United States**" means the United States of America and its federal agencies.

163.    "**United States Trustee**" means the United States Trustee for Region 12.

164.    "**Unliquidated**" means, when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is sought to be estimated.

165.    "**Voting Deadline**" means the date established by the Approval Order by which the Solicitation Agent must actually receive a valid Ballot properly voting on the Plan in order for the applicable vote to count as a vote to accept or reject the Plan. Such deadline is [●] (prevailing Central Time) on [●].

166.    "**Voting Instructions**" means the instructions for voting on the Plan contained in the Approval Order, [Article 7] of the Disclosure Statement and the Ballots, the Master Ballots and the Beneficial Ballots.

167.    "**Voting Record Date**" means the record date for voting on the Plan, which shall be [●].

168.    "**Workers' Compensation Plan**" means each of the Debtors' written contracts, agreements, agreements of indemnity and qualified self-insurance for workers' compensation, policies, programs and plans for workers' compensation entered into prior to the Petition Date.

### Section 1.2.    Rules of Interpretation

Unless otherwise specified, all article, section, exhibit, schedule or Plan Supplement references in the Plan are to the respective article in, section in, exhibit to, schedule to or Plan Supplement to the Plan, as the same may be amended, waived or modified from time to time in accordance with the terms hereof or thereof. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained herein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural and any pronoun stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender. Captions and headings in the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof. Whenever the words "include," "includes" or "including" are used in the Plan, they shall

be deemed to be followed by the words "without limitation," whether or not they are in fact followed by those words or words of like import.  References from or through any date mean, unless otherwise specified, from and including or through and including, respectively.  Any references herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.  If a particular term of the Plan (including any exhibits, schedules or Plan Supplement hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation, settlement or other agreement shall control and shall be binding on the parties thereto.

As to any reference in the Plan to a consent, approval or acceptance by any party, or to an issue, agreement, order or other document (or the terms thereof) that shall be reasonably acceptable to any such party, such consent, approval or acceptance shall not be unreasonably conditioned, delayed or withheld.

### Section 1.3.   Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### Section 1.4.   References to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### Section 1.5.   Exhibits; Schedules; Plan Supplement

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.  Copies of such exhibits, schedules and Plan Supplement can be obtained by downloading such documents from the Debtors' Case Information Website or the Bankruptcy Court's Website.

## ARTICLE 2
### TREATMENT OF DIP FACILITY CLAIMS; ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### Section 2.1.   Treatment of DIP Facility Claims

All DIP Facility Claims shall be deemed Allowed as of the Effective Date in the amount equal to (i) the principal amount outstanding under the DIP Facility on such date

19

(other than Contingent DIP Obligations), (ii) all interest accrued and unpaid thereon to the date of payment and (iii) all accrued and unpaid fees, expenses and non-contingent indemnification obligations payable under the DIP Credit Agreement and the DIP Order. Except to the extent that a holder of a DIP Facility Claim agrees in its sole discretion to less favorable treatment, on or before the Effective Date, all Allowed DIP Facility Claims shall be exchanged for the Exit Second Out First Lien Term Loans in an aggregate principal amount equal to the aggregate amount of the Allowed DIP Facility Claims. On the Effective Date, (i) the commitments under the DIP Facility shall automatically terminate, (ii) except as provided herein, the DIP Facility and the "Loan Documents" referred to therein shall be deemed canceled, (iii) all Liens (as defined in the DIP Credit Agreement) on property of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility shall automatically terminate, and all Collateral subject to such Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders and (iv) all guarantees of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility Claims shall be automatically discharged and released, in each case without further action by the DIP Agent or the DIP Lenders. The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release and discharge as reasonably requested by the Debtors or the Reorganized Debtors.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, (a) the Contingent DIP Obligations shall survive the Effective Date on an unsecured basis and shall not be discharged or released pursuant to this Plan or the Confirmation Order and (b) the following provisions of the DIP Facility and the DIP Documents shall continue in full force and effect after the Effective Date: those provisions (i) governing the Contingent DIP Obligations, (ii) governing the relationships among the DIP Agent and the DIP Lenders, including but not limited to those provisions relating to the rights of the DIP Agent to expense reimbursement, indemnification and other similar amounts, (iii) relating to the Reorganized Debtors' obligation to reimburse the DIP Agent for its reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Agent after the Effective Date and (iv) that survive termination or maturity of the DIP Facility in accordance with the terms thereof. The Reorganized Debtors shall pay all of the amounts that may become payable to the DIP Agent or any of the DIP Lenders under any of the foregoing provisions in accordance with the terms of the DIP Documents and the DIP Order.

### Section 2.2.   Treatment of Administrative Expense Claims

(a)     Administrative Expense Claims

Except to the extent that the applicable holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with the Reorganized Debtors, each Allowed Administrative Expense Claim shall be paid in full in Cash (i) on or as soon as reasonably practicable after the Effective Date (for Claims Allowed as of the Effective Date), (ii) on or as soon as practicable after the date such Claim is Allowed (or upon such other terms as may be agreed upon by such holder and the applicable Reorganized Debtor) or (iii) as otherwise ordered by the Bankruptcy Court.

Allowed Administrative Expense Claims regarding assumed agreements, obligations incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases and non-ordinary course obligations approved by the Bankruptcy Court shall be paid in full and performed by the Reorganized Debtors in the ordinary course of business (or as otherwise approved by the Bankruptcy Court) in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such Claims.

**(b)**    Professional Fee Claims

Except to the extent that the applicable holder of an Allowed Professional Fee Claim agrees to less favorable treatment with the Reorganized Debtors, each holder of a Professional Fee Claim shall be paid in full in Cash pursuant to Section 7.1 hereof.

### Section 2.3.   Treatment of Priority Tax Claims

Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or the applicable Reorganized Debtor and such holder agree to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, (a) payment in full in Cash made on or as soon as reasonably practicable after the later of the Effective Date and the first Distribution Date occurring at least 20 calendar days after the date such Claim is Allowed, (b) regular installment payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code or (c) such other amounts and in such other manner as may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

The Reorganized Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

### ARTICLE 3
#### CLASSIFICATION AND TREATMENT OF OTHER CLAIMS AND INTERESTS

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.  Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the official claims register without a claims objection having

to be filed and without any further notice to or action, order or approval of the Bankruptcy Court. Except as otherwise specifically provided for in the Plan, the Confirmation Order or other order of the Bankruptcy Court (including, without limitation, the DIP Order), or required by applicable non-bankruptcy law, in no event shall (i) any holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such holder's Claim or (ii) any holder of an Allowed Existing Notes Issuer Claim and an Allowed Existing Notes Guarantor Claim be entitled to receive distributions that, in the aggregate, exceed the Allowed amount of such holder's Allowed Existing Notes Issuer Claim.

**Section 3.1.   Classes and Treatment of Claims Against and Interests in the Debtors**

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. For brevity and convenience, the classification and treatment of Claims and Interests have been arranged into one chart.

The following table designates the classes of Claims against and Interests in the Debtors and specifies which of those classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to accept or reject the Plan.

| Class | Designation | Plan Treatment of Allowed Claims | Status | Voting Rights |
|---|---|---|---|---|
| A | Other Priority Claims | Payment in full in Cash; or other treatment that will render the Claim Unimpaired. | Unimpaired | Deemed to Accept |
| B | Other Secured Claims | Payment in full in Cash; Reinstatement of the legal, equitable and contractual rights of the holder of such Claim; payment of the proceeds of the sale or disposition of the Collateral securing such Claim, in each case, to the extent of the value of the holder's secured interest in such Collateral; return of Collateral securing such Claim; or other treatment that will render the Claim Unimpaired. | Unimpaired | Deemed to Accept |
| C | Prepetition Credit Facility Claims | Payment in full in Cash; unless otherwise agreed to by the Prepetition Credit Facility Agent, the Debtors and the Ad Hoc Committee. | Unimpaired | Deemed to Accept |

| Class | Designation | Plan Treatment of Allowed Claims | Status | Voting Rights |
|---|---|---|---|---|
| D | Existing Notes Claims | Each holder of an Allowed Existing Notes Claim shall be entitled to a pro rata share of (i) 100% of the Exit Second Lien Notes and (ii) the Existing Notes Stock Allocation. | [●] | [●] |
| E | General Unsecured Claims | [●] | Impaired | [●] |
| F | Convenience Class Claims | [●] | Impaired | Entitled to Vote |
| G | Section 510(b) Claims | No distribution. | Impaired | Deemed to Reject |
| H | Intercompany Note | No distribution.  Deemed to be paid in full and canceled by mutual consent. | Unimpaired | Deemed to Accept |
| I | Interests in Mag LLC | No distribution. | Impaired | Deemed to Reject |
| J | Interests in Subsidiary Debtors | Reinstatement of Interests. | Unimpaired | Deemed to Accept |

**Section 3.2.   Treatment of Claims Against and Interests in the Debtors**

(a)      Other Priority Claims (Class A)

Except to the extent that the applicable Creditor agrees to less favorable treatment (or as provided in Section 6.2 hereof) with the applicable Reorganized Debtor, each holder of an Allowed Other Priority Claim against any of the Debtors shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, Cash in an amount equal to the Allowed amount of such Claim, or treatment in any other manner so that such Claim shall otherwise be rendered Unimpaired, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) 20 calendar days after the date such Claim becomes Allowed and (iii) the date for payment provided by any applicable agreement between the Reorganized Debtors and the holder of such Claim.

(b)      Other Secured Claims (Class B)

Except to the extent that the applicable Creditor agrees to less favorable treatment with the applicable Reorganized Debtor, each holder of an Allowed Other Secured Claim shall receive, at the sole option of the applicable Reorganized Debtor, and in full

23

satisfaction, settlement, release and discharge of and in exchange for such Allowed Other Secured Claim, one of the following treatments: (i) payment in Cash in the amount of such Allowed Other Secured Claim, (ii) Reinstatement of the legal, equitable and contractual rights of the holder relating to such Allowed Other Secured Claim, (iii) a distribution of the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such Collateral, (iv) a distribution of the Collateral securing such Allowed Other Secured Claim without representation or warranty by or recourse against the Debtors or Reorganized Debtors or (v) such other treatment as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code. If an Other Secured Claim is satisfied under clause (i), (ii), (iii), (iv) or (v)**,** the Liens securing such Other Secured Claim shall be deemed released without further action by any party. Each holder of an Allowed Other Secured Claim shall take all actions to effectuate and confirm such termination, release and discharge as reasonably requested by the Debtors or the Reorganized Debtors.

Any distributions made pursuant to this Section 3.2 shall be made on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) 20 calendar days after the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement between the applicable Debtor and the holder of such Claim.

**(c)** Prepetition Credit Facility Claims (Class C)

All Prepetition Credit Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to (i) the principal amount outstanding under the Prepetition Credit Facility (other than Contingent Prepetition Credit Facility Obligations) on such date, (ii) all interest accrued and unpaid thereon to the date of payment and (iii) all accrued and unpaid fees, expenses and non-contingent indemnification obligations payable under the Prepetition Credit Facility and the DIP Order. On the Effective Date, unless otherwise agreed to by the Prepetition Agent, the Debtors and the Ad Hoc Committee, Allowed Prepetition Credit Facility Claims other than Contingent Prepetition Credit Facility Claims shall be paid in Cash in full.

On the Effective Date, all Outstanding L/Cs [●].

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, (a) the Contingent Prepetition Credit Facility Obligations shall survive the Effective Date on an unsecured basis and shall not be discharged or released pursuant to this Plan or the Confirmation Order and (b) the following provisions of the Prepetition Credit Facility shall continue in full force and effect after the Effective Date: those provisions (i) governing the Contingent Prepetition Credit Facility Obligations, (ii) governing the relationships among the Prepetition Credit Facility Agent and the Prepetition Credit Facility Lenders, including but not limited to those provisions relating to the rights of the Prepetition Credit Facility Agent to expense reimbursement, indemnification and other similar amounts, (iii) relating to the Reorganized Debtors' obligation to reimburse the Prepetition Credit Facility Agent for its reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred by the Prepetition Credit Facility Agent after the Effective Date and (iv) that survive termination or maturity of the

Prepetition Credit Facility in accordance with the terms thereof.  The Reorganized Debtors shall pay all of the amounts that may become payable to the Prepetition Credit Facility Agent or any of the Prepetition Credit Facility Lenders under any of the foregoing provisions in accordance with the terms of the Prepetition Credit Facility Documents (and the Loan Documents as defined therein) and the DIP Order.

      **(d)**      Existing Notes Claims (Class D)

      On the Effective Date, each holder of an Allowed Existing Notes Claim shall be entitled to a pro rata share of (i) 100% of the Exit Second Lien Notes and (ii) the Existing Notes Stock Allocation.

      **(e)**      General Unsecured Claims (Class E)

      [●]

      **(f)**      Convenience Class Claims (Class F)

      [●]

      **(g)**      Section 510(b) Claims (Class G)

      The holders of Section 510(b) Claims shall neither receive any distributions nor retain any property on account thereof pursuant to the Plan.  All Section 510(b) Claims shall be canceled and extinguished.

      **(h)**      Intercompany Note (Class H)

      Mag Inc. shall neither receive any distributions nor retain any property on account of the Intercompany Note pursuant to the Plan.  The Intercompany Note shall be deemed paid in full and canceled by mutual consent of Mag LLC and Mag Inc.

      **(i)**      Interests in Mag LLC (Class I)

      The holders of Interests in Mag LLC shall neither receive any distributions nor retain any property on account thereof pursuant to the Plan.  All Interests in Mag LLC shall be canceled and extinguished.

      **(j)**      Interests in Subsidiary Debtors (Class J)

      The Interests in the Subsidiary Debtors shall be, in Reorganized Mag LLC's sole discretion, Reinstated or canceled on the Effective Date or as soon thereafter as reasonably practicable.

### Section 3.3.   Treatment of Intercompany Claims

      In accordance with and giving effect to the provisions of section 1124(1) of the Bankruptcy Code, Intercompany Claims are Unimpaired by the Plan.  However, the Debtors retain the right to eliminate or adjust any Intercompany Claims as of the

Effective Date by offset, cancellation, contribution or otherwise.  In no event shall Intercompany Claims be allowed as General Unsecured Claims or Convenience Class Claims or entitled to any distribution of Cash, Exit First Out Second Lien Term Loans, Exit Second Lien Notes or New Stock under the Plan.

# ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

### Section 4.1.  Voting of Claims

Each holder of a Claim in an Impaired Class that is entitled to vote on the Plan as of the Voting Record Date pursuant to Article 3 of the Plan shall be entitled to vote to accept or reject the Plan as provided in the Approval Order or any other order of the Bankruptcy Court.

### Section 4.2.  Presumed Acceptance of Plan

Administrative Expense Claims, Priority Tax Claims, Other Priority Claims (Class A), Other Secured Claims (Class B), Prepetition Credit Facility Claims (Class C), Intercompany Note Claims (Class H) and Interests in Subsidiary Debtors (Class J) are Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in such Classes are conclusively presumed to have accepted the Plan, and the votes of such holders will not be solicited.

### Section 4.3.  Presumed Rejection of Plan

Section 510(b) Claims (Class G) and Interests in Mag LLC (Class I) shall not receive any distribution under the Plan on account of such Claims or Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, the holders of Claims and Interests in such Classes are conclusively presumed to have rejected the Plan, and the votes of such holders will not be solicited.

### Section 4.4.  Acceptance by Impaired Classes

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class entitled to vote that actually vote on the Plan have voted to accept the Plan.  [●] Claims (Classes [●]) are Impaired, and the votes of holders of Claims in such Classes will be solicited.  If holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan, but no holders of Claims in such Impaired Class of Claims voted to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

### Section 4.5.  Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court

solely for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan solely for purposes of (i) voting to accept or reject the Plan and (ii) determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### Section 4.6.   Consensual Confirmation

The Plan shall be deemed a separate chapter 11 plan for each Debtor.  To the extent that there is no rejecting Class of Claims in the chapter 11 plan of any Debtor, such Debtor shall seek Confirmation of its plan pursuant to section 1129(a) of the Bankruptcy Code.

### Section 4.7.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Those Debtors whose plans contain a rejecting Class of Claims, if any, shall seek Confirmation of such plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any such rejecting Class or Classes.  Subject to Article 13 of the Plan, the Debtors reserve the right to amend the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### Section 4.8.   Severability; Reservation of Rights

Subject to Article 13 of the Plan and the terms of the RSA, the Debtors reserve the right, after consultation with the Ad Hoc Committee and the Creditors' Committee, to modify or withdraw the Plan, in its entirety or in part, for any reason, including, without limitation, if the Plan as it applies to any particular Debtor is not confirmed.  In addition, and also subject to Article 13 of the Plan, should the Plan fail to be accepted by the requisite number and amount of Claims and Interests voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Debtors reserve the right to reclassify Claims or Interests or otherwise amend, modify or withdraw the Plan in its entirety, in part or as to a particular Debtor. Without limiting the foregoing, if the Debtors withdraw the Plan as to any particular Debtor because the Plan as to such Debtor fails to be accepted by the requisite number and amount of Claims voting or due to the Bankruptcy Court, for any reason, denying Confirmation as to such Debtor, then at the option of such Debtor, after consultation with the Ad Hoc Committee and the Creditors' Committee, (a) the Chapter 11 Case for such Debtor may be dismissed or (b) such Debtor's assets may be sold to another Debtor, such sale to be effective at or before the Effective Date of the Plan of the Debtor transferee, and the sale price shall be paid to the seller in Cash and shall be in an amount equal to the fair value of such assets as proposed by the Debtors and approved by the Bankruptcy Court.

# ARTICLE 5

## IMPLEMENTATION OF THE PLAN

### Section 5.1.  Continued Corporate Existence

Except as otherwise provided in the Plan and subject to the Restructuring Transactions, each Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, each with all the powers of a corporation under the laws of its respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

### Section 5.2.  Section 1145 Exemption

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Common Stock, New Convertible Preferred Stock, Exit Second Lien Notes and Exit First Lien Second Out Term Loans shall be exempt from, among other things, the registration and prospectus delivery requirements of Section 5 of the Securities Act and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act.  The offering, issuance and distribution of the New Common Stock, New Convertible Preferred Stock, Exit Second Lien Notes and Exit First Lien Second Out Term Loans will be made pursuant to the exemption set forth in Section 4(2) of the Securities Act or another exemption thereunder.  In addition, any securities contemplated by the Plan and any and all agreements incorporated therein, including the New Common Stock, New Convertible Preferred Stock, and the Exit Second Lien Notes (collectively, the "**New Securities**"), shall be subject to (i) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments; and (iii) applicable regulatory approval, if any.  The New Securities will be distributed pursuant to the Plan.

### Section 5.3.  Authorization of New Stock

On the Effective Date, the New Certificate of Incorporation shall have provided for sufficient shares of authorized New Stock to effectuate the issuances of New Stock contemplated by the Plan, and Reorganized Mag LLC shall issue or reserve for issuance a sufficient number of shares of New Stock to effectuate such issuances.  The shares of New Stock issued in connection with the Plan shall be authorized without the need for further corporate action or without any further action by any Person or Entity, and once issued, shall be duly authorized, validly issued, fully paid and non-assessable.

The New Certificate of Incorporation and the New Stockholders' Agreement will contain restrictions on holders' ability to transfer New Stock and other New Securities

designed to ensure that the number of holders of such securities does not exceed the threshold at which Reorganized Mag LLC would be required to become a reporting company under the Exchange Act. Among other things, the New Certificate of Incorporation will require notice to Reorganized Mag LLC of any proposed transfer of New Stock or other New Securities and will restrict such transfer if Reorganized Mag LLC determines that the transfer would, if effected, result in Reorganized Mag LLC potentially having 2,000 or more holders of record of New Stock or 500 or more non-accredited holders of record of New Stock (in each case as determined under the Exchange Act).

**Section 5.4.   Cancellation of Existing Securities and Related Agreements and the Indenture**

On the Effective Date, all rights of any holder of Claims against, or Interests in, the Debtors, including options or warrants to purchase Interests, obligating the Debtors to issue, transfer or sell Interests or any other capital stock of the Debtors shall be canceled.

The Indenture shall terminate as of the Effective Date, except as necessary to (i) enforce the rights, Claims and interests of the Indenture Trustee and (ii) to allow the Indenture Trustee to receive distributions under the Plan and to distribute them to the holders of the Existing Notes in accordance with the terms of the Indenture. Except for the foregoing, the Indenture Trustee and its agents shall be relieved of all further duties and responsibilities related to the Indenture.

**Section 5.5.   Financing and Restructuring Transactions**

**(a)**      Exit Credit Facilities

On or before the Effective Date, Reorganized Mag LLC shall enter into the Exit Credit Facilities, and, subject to the satisfaction of the DIP Facility Claims and the Prepetition Credit Facility Claims in accordance herewith, grant the Liens and security interests provided for therein. The Reorganized Debtors that are the guarantors under the Exit Credit Facilities shall issue the guarantees and grant the Liens and security interests as provided therein. The Exit Credit Facilities shall be on terms and conditions substantially as set forth in the Plan Supplement.

**(b)**      Exit Second Lien Notes

On the Effective Date, Reorganized Mag LLC will issue new second lien notes (the "**Exit Second Lien Notes**") in an original aggregate principal amount of $232.5 million plus accrued interest through the Effective Date (to the extent the holders of the Existing Notes are entitled to postpetition interest), and all of the direct and indirect domestic subsidiaries of Reorganized Mag LLC shall guarantee the payment of the Exit Second Lien Notes in accordance with their terms. The Exit Second Lien Notes, the terms of which shall be set forth in the Plan Supplement, will contain the terms and conditions set forth in the RSA unless otherwise agreed to by the Debtors and the Ad Hoc Committee.

The Exit Second Lien Notes shall mature on the tenth anniversary of the Effective Date.  The Exit Second Lien Notes shall bear interest at a rate of 5.0%, and such interest shall be paid in kind on a semiannual basis.  The Exit Second Lien Notes shall be redeemable at the option of Reorganized Mag LLC at par.

      **(c)**    New Convertible Preferred Stock

On the Effective Date, Reorganized Mag LLC will issue to holders of the Existing Notes 90% of its new convertible preferred stock (the "**New Convertible Preferred Stock**") in an original aggregate face amount of $138.9 million.  Shares representing 10% of the New Convertible Preferred stock on the Effective Date will be distributed under the Management Incentive Plan.  The New Convertible Preferred Stock, the terms of which shall be set forth in the Plan Supplement, will contain the terms and conditions set forth in the RSA unless otherwise agreed to by the Debtors and the Ad Hoc Committee.  The New Convertible Preferred Stock will include customary provisions for such a security.

The New Convertible Preferred Stock shall accrete at a rate of 5.0% per annum.  Holders of the New Convertible Preferred Stock may convert such preferred stock into New Common Stock at Plan value as determined by the Debtors and the Ad Hoc Committee.

      **(d)**    Restructuring Transactions

On or after the Effective Date, including after the cancellation and discharge of all Claims pursuant to the Plan and before the issuance of the New Stock, the Reorganized Debtors may engage in or take such actions as may be necessary or appropriate to effect corporate restructurings of their respective businesses, including actions necessary to simplify, reorganize and rationalize the overall reorganized organizational structure of the Reorganized Debtors (together, the "**Restructuring Transactions**").  The Restructuring Transactions may include (a) dissolving companies or creating new companies (including limited liability companies), (b) merging, dissolving, transferring assets or otherwise consolidating any of the Debtors in furtherance of the Plan, or engaging in any other transaction in furtherance of the Plan, (c) executing and delivering appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, liquidation, domestication, continuation or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (d) executing and delivering appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, debt or obligation on terms consistent with the terms of the Plan; (e) filing appropriate certificates or articles of merger, consolidation or dissolution or other filings or recordings pursuant to applicable state law; and (f) taking any other action reasonably necessary or appropriate in connection with such organizational restructurings.  In each case in which the surviving, resulting or acquiring Entity in any of these transactions is a successor to a Reorganized Debtor, such surviving, resulting or acquiring Entity will perform the obligations of the applicable Reorganized Debtor pursuant to the Plan, including the assumption of the surviving obligations to the DIP Agent and the DIP

Lenders as set forth herein, and paying or otherwise satisfying the applicable Allowed Claims.   Implementation of any Restructuring Transactions shall not affect any performance obligations, distributions, discharges, exculpations, releases or injunctions set forth in the Plan.

## ARTICLE 6
### PROVISIONS GOVERNING DISTRIBUTIONS

### Section 6.1.  Disbursing Agent

The Disbursing Agent shall make all distributions required under this Plan, except as to a Creditor whose distribution is to be administered by a Servicer, which distributions shall be deposited with the appropriate Servicer for distribution to Creditors in accordance with the provisions of this Plan and the terms of the governing agreement. Distributions on account of such Claims shall be deemed complete upon delivery to the appropriate Servicer; provided, however, that if any Servicer is unable to make such distributions, the Disbursing Agent, with such Servicer's cooperation, shall make such distributions to the extent reasonably practicable to do so.   The DIP Agent, the Prepetition Credit Facility Agent and the Indenture Trustee will be considered Servicers for the DIP Facility Claims, the Prepetition Credit Facility Claims and the Existing Notes Claims, respectively.

The Reorganized Debtors shall be authorized, without further Bankruptcy Court approval, but not directed to, reimburse any Servicer for its reasonable, documented, actual and customary out-of-pocket expenses incurred in providing postpetition services directly related to distributions pursuant to the Plan.

### Section 6.2.  Timing and Delivery of Distributions

**(a)**      Timing

Subject to any reserves or holdbacks established pursuant to the Plan, and taking into account the matters discussed in Section 6.3 of the Plan, on the appropriate Distribution Date or as soon as practicable thereafter, holders of Allowed Claims against all Debtors shall receive the distributions provided for Allowed Claims in the applicable Classes as of such date.

If and to the extent there are Disputed Claims as of the Effective Date, distributions on account of such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in the Plan on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after each such Claim is Allowed; *provided, however,* that distributions on account of the Claims set forth in Article 3 of the Plan shall be made as set forth therein and Professional Fee Claims shall be made as soon as reasonably practicable after such Claims are Allowed or as provided in any other applicable order of the Bankruptcy Court.  Because of the size and complexities of the Chapter 11 Cases, the

Debtors at the present time cannot accurately predict the timing of the Final Distribution Date.

      **(b)**    *De Minimis* Distributions

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors, any Servicer nor the Disbursing Agent shall have any obligation to make any distributions under the Plan with a value of less than $[●], unless a written request therefor is received by the Disbursing Agent from the relevant recipient at the addresses set forth in Section 15.11 hereof within 120 days after the later of the (a) Effective Date and (b) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to Reorganized Mag LLC. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors, nor any Servicer or Disbursing Agent shall have any obligation to make a particular distribution to a specific holder of an Allowed Claim if such holder is also the holder of a Disputed Claim.

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors, any Servicer nor any Disbursing Agent shall have any obligation to make any distributions on any Interim Distribution Date unless the sum of all distributions authorized to be made to all holders of Allowed Claims on such Interim Distribution Date exceeds $[●] in value.

      **(c)**    Fractional Shares

Notwithstanding any other provision of the Plan, no fractional shares of New Stock shall be distributed; *provided*, *however*, that any fractional shares of New Stock shall be rounded down to the next whole number or zero, as applicable, and no consideration shall be provided in lieu of fractional shares that are rounded down.

      **(d)**    Delivery of Distributions – Allowed Claims

Distributions shall only be made to the record holders of Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, at the close of business for the relevant register, all registers maintained by the Debtors, Reorganized Debtors, any Servicers and the Disbursing Agent and each of the foregoing's respective agents, successors and assigns shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Plan. The Debtors, Reorganized Debtors, Servicers, Disbursing Agent, Indenture Trustee and all of their respective agents, successors and assigns shall have no obligation to recognize, for purposes of distributions pursuant to or in any way arising from the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, they shall be entitled to recognize only those record holders set forth in the registers as of

the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred 20 or fewer calendar days before the Distribution Record Date, the Disbursing Agent or applicable Servicer, as applicable, shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

If any dispute arises as to the identity of a holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Plan, the Disbursing Agent or applicable Servicer may, in lieu of making such distribution to such person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

Subject to Bankruptcy Rule 9010, a distribution to a holder of an Allowed Claim may be made by the Disbursing Agent in its sole discretion: (i) to the address set forth on the first page of the Proof of Claim filed by such holder (or at the last known address of such holder if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address), (ii) to the address set forth in any written notice of an address change delivered to the Disbursing Agent after the date of any related Proof of Claim, (iii) to the address set forth on the Schedules, if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of an address change or (iv) to the address of any counsel that has appeared in the Chapter 11 Cases on such holder's behalf. In the case of a holder whose Claim is governed by an agreement and administered by a Servicer, the applicable Servicer shall make the distribution to the address contained in the official records of such Servicer.

**(e)**      Delivery of Distributions – Allowed Existing Notes Claims; Surrender of Canceled Instruments or Securities

Subject to the provisions of Section 5.4 of the Plan, as to any holder of an Allowed Existing Notes Claim that is held in the name of, or by a nominee of, DTC, the Debtors and the Reorganized Debtors shall seek the cooperation of DTC to provide appropriate instructions to the Indenture Trustee and such distribution shall be made through a mandatory and/or voluntary exchange on or as soon as practicable after the Effective Date.

Any holder of an Allowed Existing Notes Claim who fails to surrender its Existing Note(s) in accordance with this Section 6.2(e) within one year after the Effective Date shall be deemed to have forfeited all rights and Claims in respect of such Existing Note and shall not participate in any distribution hereunder, and all property relating to such forfeited distribution, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat laws to the contrary.

### Section 6.3.   Manner of Payment Under Plan

**(a)**     At the Disbursing Agent's option, any Cash payment may be made by check, wire transfer or any other customary payment method.

**(b)**     The Disbursing Agent shall distribute New Common Stock, New Convertible Preferred Stock, Exit Second Out First Lien Term Loans, Exit Second Lien Notes or Cash as required under the Plan.  Where the applicable Reorganized Debtor is a Reorganized Subsidiary Debtor, Reorganized Mag LLC shall be deemed to have made a direct capital contribution to the applicable Reorganized Subsidiary Debtor of an amount of Cash to be distributed to the Creditors of such Reorganized Debtor, but only at such time as, and to the extent that, such amounts are actually distributed to holders of Allowed Claims. Any distributions of New Common Stock, New Convertible Preferred Stock, Exit Second Out First Lien Term Loans, Exit Second Lien Notes or Cash that revert to Reorganized Mag LLC or are otherwise canceled (such as to the extent any distributions have not been claimed within one year) shall revest solely in Reorganized Mag LLC, and no other Reorganized Debtor shall have (nor shall it be considered to ever have had) any ownership interest in the amounts distributed.

**(c)**     Allocation of Plan Distributions Between Principal and Interest

To the extent that any Claim entitled to a distribution under the Plan is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**(d)**     Compliance Matters

In connection with the Plan, each Debtor, each Reorganized Debtor and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, each Debtor, each Reorganized Debtor and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors or the Reorganized Debtors, as applicable, believe are reasonable and appropriate.  For tax purposes, distributions received with respect to Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

The Debtors, the Reorganized Debtors and the Disbursing Agent, as applicable, reserve the right to allocate and distribute all distributions made under the Plan in

compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

**(e)**     Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m., midrange spot rate of exchange for the applicable currency as published in *The Wall Street Journal*, National Edition, on the day after the Petition Date.

### Section 6.4.   Undeliverable or Non-Negotiated Distributions

If any distribution is returned as undeliverable, no further distributions to the applicable Creditor shall be made unless and until the Disbursing Agent or appropriate Servicer is notified in writing of such holder's then-current address, at which time the undelivered distribution shall be made to such Creditor without interest or dividends. Undeliverable distributions shall be returned to Reorganized Mag LLC until such distributions are claimed.   All undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to Reorganized Mag LLC.   Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within 120 calendar days from and after the date of issuance thereof.   Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the holder of the relevant Allowed Claim within the 120-calendar-day period.   After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to Reorganized Mag LLC, notwithstanding any federal or state escheat laws to the contrary.

### Section 6.5.   Claims Paid or Payable by Third Parties

**(a)**     Claims Paid by Third Parties

To the extent a Creditor receives a distribution on account of a Claim and also receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Creditor shall, within 30 calendar days of receipt thereof, repay and/or return the distribution to the applicable Reorganized Debtor, to the extent the Creditor's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

A Claim may be adjusted or expunged on the official claims register, without a claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Creditor receives payment in full or in part on account of such Claim; *provided*, *however*, that to the extent the non-Debtor

party making the payment is subrogated to the Creditor's Claim, the non-Debtor party shall have a 30-calendar-day grace period following payment in full to notify the Claims Agent of such subrogation rights.

**(b)**     Claims Payable by Third Parties

To the extent that one or more of the Debtors' insurers agrees (or if and to the extent any such insurer is required by a court or other tribunal of competent jurisdiction) to satisfy any Claim, then immediately upon such court or other tribunal determination or insurers' agreement, such Claim may be expunged (to the extent of any agreed-upon or determined satisfaction) on the official claims register without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE 7
### FILING OF ADMINISTRATIVE EXPENSE CLAIMS

### Section 7.1.  Professional Fee Claims

**(a)**     Final Fee Applications

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court by the date that is 60 calendar days after the Confirmation Date.  Such requests shall be filed with the Bankruptcy Court and served as required by the Local Rules; *provided* that if any Professional is unable to file its own request with the Bankruptcy Court, such Professional may deliver an original, executed copy and an electronic copy to the Debtors' attorneys and the Reorganized Debtors at least three Business Days before the deadline, and the Debtors' attorneys shall file such request with the Bankruptcy Court.  The objection deadline relating to the final requests shall be 4:00 p.m. (prevailing Central Time) on the date that is 15 calendar days after the filing deadline.  If no objections are timely filed and properly served as to a given request, or all timely objections are subsequently resolved, such Professional shall submit to the Bankruptcy Court for consideration a proposed order approving the Professional Fee Claim as an Allowed Administrative Expense Claim in the amount requested (or otherwise agreed), and the order may be entered without a hearing or further notice to any party.  The Allowed amounts of any Professional Fee Claims subject to unresolved timely objections shall be determined by the Bankruptcy Court at a hearing to be held no later than 30 calendar days after the objection deadline.  Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed or in accordance with any other applicable Order.

**(b)**     Payment of Interim Amounts

Professionals shall be paid pursuant to the Local Rules with respect to all calendar months ending before the Confirmation Date and, for the month in which the Confirmation Date occurred, the Confirmation Date and the days prior to the Confirmation Date.

**(c)**     Post-Confirmation Date Fees

Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and Reorganized Debtors may employ and pay all Professionals without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

Upon the Confirmation Date, the Debtors may also pay the reasonable and documented fees and expenses of each of the Prepetition Credit Facility Agent's, the DIP Agent's and the Ad Hoc Committee's professionals in accordance with the Loan Documents (as defined in the DIP Credit Agreement), the Prepetition Credit Facility Agreement (and the Loan Documents as defined therein) and the DIP Order, as applicable, in the ordinary course of business (including for the month in which the Confirmation Date occurred) without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

### Section 7.2.  Administrative Expense Claims

**(a)**     A notice setting forth the Administrative Expense Claim Bar Date will be (i) filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' Case Information Website.  No other notice of the Administrative Expense Claim Bar Date will be provided.

**(b)**     All requests for payment of Administrative Expense Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of Section 7.1 of the Plan) must be filed with the Claims Agent and served on counsel for the Debtors and Reorganized Debtors by the Administrative Expense Claim Bar Date.  Any requests for payment of Administrative Expense Claims pursuant to this Section 7.2 that are not properly filed and served by the Administrative Expense Claim Bar Date shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.

**(c)**     The Reorganized Debtors, in their sole discretion, shall have exclusive authority to settle Administrative Expense Claims without further Bankruptcy Court approval.

**(d)**     Unless the Debtors or the Reorganized Debtors object to a timely filed and properly served Administrative Expense Claim by the Claims Objection Deadline, such Administrative Expense Claim shall be deemed allowed in the amount requested.  If the Debtors or the Reorganized Debtors object to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

**(e)**     Notwithstanding the foregoing, requests for payment of Administrative Expense Claims need not be filed for Administrative Expense Claims that (i) are for goods or services provided to the Debtors in the ordinary course of business,

(ii) previously have been Allowed by Final Order of the Bankruptcy Court, (iii) are for Cure amounts, (iv) are on account of postpetition taxes (including any related penalties or interest) owed by the Debtors or the Reorganized Debtors to any Governmental Unit or (A) the Debtors or Reorganized Debtors have otherwise agreed in writing do not require such a filing.

# ARTICLE 8
## DISPUTED CLAIMS

### Section 8.1.   Objections to Claims

**(a)**     After the Effective Date, the Reorganized Debtors shall have the sole authority to object to all Claims against the Debtors; *provided*, *however*, that the Reorganized Debtors shall not be entitled to object to any Claim that has been expressly allowed by Final Order or under the Plan.  Any objections to Claims shall be filed on the Bankruptcy Court's docket on or before the Claims Objection Deadline.

**(b)**     Claims objections filed before, on or after the Effective Date shall be filed, served and administered in accordance with the Bankruptcy Rules and the Local Rules; *provided*, *however*, that, on and after the Effective Date, filings and notices need only be served on the relevant claimants.

### Section 8.2.   Resolution of Disputed Claims

On and after the Effective Date, the Reorganized Debtors shall have the sole authority to litigate, compromise, settle, otherwise resolve or withdraw any objections to all Claims against the Debtors and to compromise and settle any such Claims without notice to or approval by the Bankruptcy Court or any other party.

### Section 8.3.   Estimation of Claims and Interests

The Debtors or Reorganized Debtors may, in their sole discretion, after consultation with the Ad Hoc Committee and the Creditors' Committee (if prior to the Effective Date) determine, resolve and otherwise adjudicate all Contingent Claims, Unliquidated Claims and Disputed Claims in the Bankruptcy Court or such other court of the Debtors' or Reorganized Debtors' choice having jurisdiction over the validity, nature or amount thereof.  The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, regardless of whether any of the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim, and the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the ultimate

allowance of such Claim; *provided*, *however*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such Claim unless the holder of such Claim has filed a motion requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

### Section 8.4.   Payments and Distributions for Disputed Claims

**(a)**     No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, no payments or distributions shall be made for a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

**(b)**     Disputed Claims Reserve

(i)     On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors shall hold in reserve (the "**Disputed Claims Reserve**") the amount of [Cash] that the Reorganized Debtors determine would likely have been distributed to the Holders of all Disputed Claims as if such Disputed Claims had been Allowed on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be the lesser of (a) the asserted amount of the Disputed Claim filed with the Bankruptcy Court as set forth in the nonduplicative Proof of Claim, or (if no proof of such Claim was filed) listed by the Debtors in the Schedules, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or ordered by other order of the Bankruptcy Court, or (c) the amount otherwise agreed to by the Debtors or the Reorganized Debtors and the Holder of such Disputed Claim for distribution purposes. With respect to all Disputed Claims that are General Unsecured Claims or Convenience Class Claims and are unliquidated or contingent and for which no dollar amount is asserted on a Proof of Claim, the Debtors will reserve Cash adjusted from time to time equal to the amount reasonably determined by the Reorganized Debtors.

(ii)     The Disbursing Agent may, at the direction of the Debtors or the Reorganized Debtors, adjust the Disputed Claims Reserve to reflect all earnings thereon (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed on the

Distribution Dates, as required by the Plan. The Disbursing Agent shall hold in the Disputed Claims Reserve all dividends, payments and other distributions made on account of, as well as any obligations arising from, the property held in the Disputed Claims Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise. The taxes imposed on the Disputed Claims Reserve (if any) shall be paid by the Disbursing Agent from the property held in the Disputed Claims Reserve, and the Reorganized Debtors shall have no liability for such taxes.

(iii)    After any reasonable determination by the Reorganized Debtors that the Disputed Claims Reserve should be adjusted downward in accordance with Section 8.4(b)(i) of the Plan, the Disbursing Agent shall, at the direction of the Debtors or the Reorganized Debtors, effect a distribution in the amount of such adjustment as required by the Plan (an "**Adjustment Distribution**"), and any date of such distribution shall be an Interim Distribution Date.

(iv)    After all Disputed Claims have become either Allowed Claims or Disallowed Claims and all distributions required pursuant to Section 8.4(c) of the Plan have been made, the Disbursing Agent shall, at the direction of the Reorganized Debtors, effect a final distribution of the Cash remaining in the Disputed Claims Reserve.

(v)    It is expected that the Disbursing Agent will (A) make an election pursuant to United States Treasury Regulations section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section and (B) allocate taxable income or loss to the Disputed Claims Reserve with respect to any taxable year that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims). The affected holders of the Disputed Claims shall be bound by such election, if made by the Disbursing Agent. For federal income tax purposes, absent definitive guidance from the IRS or a contrary determination by a court of competent jurisdiction, the Disbursing Agent shall, to the extent permitted by applicable law, report consistently with the foregoing characterization for state and local income tax purposes. All affected holders of Disputed Claims shall report, for income tax purposes, consistently with the foregoing.

**(c)**    Distributions After Allowance

(i)    To the extent that a Disputed Claim, other than a Convenience Class Claim, becomes an Allowed Claim after the Effective Date, the Disbursing Agent will, out of the Disputed Claims Reserve, distribute to the holder thereof the distribution, if any, to which such holder is entitled under the Plan in accordance with Section 6.2(a) of the Plan. Subject to Section 8.6 of the Plan, all distributions made under this Section 8.4(c)(i) on account of Allowed Claims will be made together with any dividends, payments or other distributions made on account of, as well as any obligations arising from, the distributed property, then

40

held in the Disputed Claims Reserve as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claim holders included in the applicable class under the Plan.

(ii)   To the extent that a Convenience Class Claim becomes an Allowed Claim after the Effective Date, the Disbursing Agent will distribute to the holder thereof the distribution, if any, to which such holder is entitled under the Plan in accordance with Section 6.2(a) and Section 8.6 of the Plan.

## Section 8.5.   No Amendments to Claims

A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules, the Local Rules or applicable non-bankruptcy law.  On or after the Confirmation Date, the holder of a Claim (other than an Administrative Expense Claim or a Professional Fee Claim) must obtain prior authorization from the Bankruptcy Court or Reorganized Debtors to file or amend a Claim.  Any new or amended Claim (other than Rejection Claims) filed after the Confirmation Date without such prior authorization will not appear on the official claims register and will be deemed disallowed in full and expunged without any action required of the Debtors or the Reorganized Debtors and without the need for any court order.

## Section 8.6.   No Interest

Other than as provided by section 506(b) of the Bankruptcy Code or as specifically provided for in the Plan, the Confirmation Order, the DIP Order, or with respect to the DIP Facility, postpetition interest shall not accrue or be paid on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Claim or Disputed Claim for the period from and after the Effective Date; *provided*, *however*, that nothing in this Section 8.6 shall limit any rights of any Governmental Unit to interest under sections 503, 506(b), 1129(a)(9)(A) or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

# ARTICLE 9
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## Section 9.1.   Rejection of Executory Contracts and Unexpired Leases

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each executory contract and unexpired lease to which any Debtor is a party shall be deemed automatically rejected by the Debtors effective as of the Effective Date, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, (ii) is the subject of a motion to assume or reject pending on the Effective Date, (iii) is assumed, rejected or otherwise treated pursuant to Section 9.3 of the Plan, (iv) is listed on Schedule 9.2(a) or 9.2(b) of the Plan or (v) as to which a Treatment Objection has been filed and properly

served by the Treatment Objection Deadline.  If an executory contract or unexpired lease either (x) has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date or (y) is the subject of a motion to assume or reject pending on the Confirmation Date, then the listing of any such executory contract or unexpired lease on the aforementioned schedules shall be of no effect.

### Section 9.2.    Schedules of Executory Contracts and Unexpired Leases

**(a)**      Schedules 9.2(a) and 9.2(b) of the Plan shall be filed by the Debtors as specified in Section 15.5 of the Plan and shall represent the Debtors' then-current good-faith belief regarding the intended treatment of all executory contracts and unexpired leases listed thereon.  The Debtors reserve the right, on or before 3:00 p.m. (prevailing Central Time) on the Business Day immediately before the Confirmation Hearing to (i) amend Schedules 9.2(a) and 9.2(b) to add, delete or reclassify any executory contract or unexpired lease or amend a proposed assignment and (ii) amend the Proposed Cure, in each case as to any executory contract or unexpired lease previously listed as to be assumed; *provided*, *however*, that if the Confirmation Hearing is adjourned, such amendment right shall be extended to 3:00 p.m. on the Business Day immediately before the rescheduled or continued Confirmation Hearing, and this proviso shall apply in the case of any and all subsequent adjournments of the Confirmation Hearing; *provided, further* that (a) for Intercompany Contracts and agreements proposed to be rejected as of the above deadline, the Debtors reserve the right to make amendments at any time before Confirmation and (b) the Debtors may amend Schedules 9.2(a) and 9.2(b) to add, delete or reclassify any executory contracts or unexpired leases or amend proposed assignments after such date to the extent agreed with the relevant counterparties.  Pursuant to sections 365 and 1123 of the Bankruptcy Code, and except for executory contracts and unexpired leases as to which a Treatment Objection is properly filed and served by the Treatment Objection Deadline, (x) each of the executory contracts and unexpired leases listed on Schedule 9.2(a) shall be deemed assumed (and, if applicable, assigned) effective as of the Assumption Effective Date specified thereon, and the Proposed Cure specified in the notice made to each Assumption Party shall be the Cure and shall be deemed to satisfy fully any obligations the Debtors might have regarding such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code and (y) each of the executory contracts and unexpired leases listed on Schedule 9.2(b) shall be deemed rejected effective as of the Rejection Effective Date specified thereon.

**(b)**      The Debtors shall file initial versions of Schedules 9.2(a) and 9.2(b) and any amendments thereto with the Bankruptcy Court and shall serve all notices thereof only on the DIP Agent, the Ad Hoc Committee, the Creditors' Committee and the relevant Assumption Parties and Rejection Parties.  For any executory contract or unexpired lease first listed on Schedule 9.2(b) later than the date that is 10 calendar days before the Voting Deadline, the Debtors shall use their best efforts to notify the DIP Agent, the Ad Hoc Committee, the Creditors' Committee and the applicable Rejection Party promptly of such proposed treatment via facsimile, email or telephone at any notice address or number included in the relevant executory contract or unexpired lease or as otherwise timely provided in writing to the Debtors by any such counterparty or its counsel.

42

**(c)**    For any executory contracts or unexpired leases first listed on Schedule 9.2(b) later than the date that is 10 calendar days before the Voting Deadline, affected Rejection Parties shall have five calendar days from the date of such amendment to Schedule 9.2(b) to object to Confirmation of the Plan.  For any executory contracts or unexpired leases first listed on Schedule 9.2(b) later than the date that is five calendar days before the Confirmation Hearing, affected Rejection Parties shall have until the Confirmation Hearing to object to Confirmation of the Plan.

**(d)**    The listing of any contract or lease on Schedule 9.2(a) or 9.2(b) is not an admission that such contract or lease is an executory contract or unexpired lease or that any Debtor has any liability thereunder.  The Debtors reserve the right to assert that any of the agreements listed on Schedule 9.2(a) or 9.2(b) are not executory contracts or unexpired leases.

**Section 9.3.   Categories of Executory Contracts to Be Assumed**

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each of the executory contracts within the following categories shall be deemed assumed as of the Effective Date (and the Proposed Cure for each shall be zero dollars), except for any such executory contract (i) that has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 9.2(a) or 9.2(b), (iv) that is otherwise expressly assumed or rejected pursuant to the terms of the Plan or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

**(a)**    Insurance Plans, Intercompany Contracts and Workers' Compensation Plans

Subject to the terms of the first paragraph of this Section 9.3, each Insurance Plan, Intercompany Contract and Workers' Compensation Plan shall be deemed assumed effective as of the Effective Date.  Nothing contained in this Section 9.3(a) shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Insurance Plans.  Except as provided in the previous sentence, all Proofs of Claim on account of or in respect of any agreement covered by this Section 9.3(a) shall be deemed withdrawn automatically and without any further notice to or action by the Bankruptcy Court.

**(b)**    Employee Benefits

As of the Effective Date, unless specifically listed on Schedule 9.2(a) or 9.2(b) or rejected or otherwise addressed by an order of the Bankruptcy Court (including, without limitation, by virtue of the Debtors having been granted the authority to terminate any such plan, policy, program or agreement or the Bankruptcy Court determining that the Debtors cannot successfully reorganize absent such termination), the Debtors and the Reorganized Debtors, in their sole discretion, may (but have no obligation to) honor, in the ordinary course of business, the Debtors' written contracts, agreements, policies,

programs and plans for, among other things, compensation, reimbursement, health-care benefits, disability benefits, deferred compensation benefits, travel benefits (including retiree travel benefits), vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the Debtors who served in such capacity at any time. To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless a Treatment Objection is timely filed and properly served, each of them will be deemed assumed (as modified or terminated) as of the Effective Date with a Cure of zero dollars. However, notwithstanding anything else herein, the assumed plans shall be subject to modification in accordance with the terms thereof at the discretion of the Reorganized Debtors.

**Section 9.4.   Assumption and Rejection Procedures and Resolution of Treatment Objections**

(a)     Proposed Assumptions

(i)     As to any executory contract or unexpired lease to be assumed pursuant to any provision of the Plan or any Notice of Intent to Assume or Reject, unless an Assumption Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed assumed and, if applicable, assigned as of the Assumption Effective Date proposed by the Debtors or Reorganized Debtors, without any further notice to or action by the Bankruptcy Court, and any obligation the Debtors or Reorganized Debtors may have to such Assumption Party with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code shall be deemed fully satisfied by the Proposed Cure, if any, which shall be the Cure.

(ii)     Any objection to the assumption or assignment of an executory contract or unexpired lease that is not timely filed and properly served shall be denied automatically and with prejudice (without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court), and any Claim relating to such assumption or assignment shall be forever barred from assertion and shall not be enforceable against any Debtor or Reorganized Debtor or their respective Estates or properties without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court, and any obligation the Debtors or the Reorganized Debtors may have under section 365(b) of the Bankruptcy Code (over and above any Proposed Cure) shall be deemed fully satisfied, released and discharged, notwithstanding any amount or information included in the Schedules or any Proof of Claim.

**(b)**      Proposed Rejections

(i)      As to any executory contract or unexpired lease to be rejected pursuant to any provision of the Plan or any Notice of Intent to Assume or Reject, unless a Rejection Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed rejected as of the Rejection Effective Date proposed by the Debtors or Reorganized Debtors without any further notice to or action by the Bankruptcy Court.

(ii)      Any objection to the rejection of an executory contract or unexpired lease that is not timely filed and properly served shall be deemed denied automatically and with prejudice (without the need for any objection by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval by the Bankruptcy Court).

**(c)**      Resolution of Treatment Objections

(i)      On and after the Effective Date, the Reorganized Debtors may, in their sole discretion, settle Treatment Objections without any further notice to or action by the Bankruptcy Court or any other party (including by paying any agreed Cure amounts).

(ii)      For each executory contract or unexpired lease as to which a Treatment Objection is timely filed and properly served and that is not otherwise resolved by the parties after a reasonable period of time, the Debtors, in consultation with the Bankruptcy Court, shall schedule a hearing on such Treatment Objection and provide at least 21 calendar days' notice of such hearing to the relevant Assumption Party or Rejection Party.  Unless the Bankruptcy Court expressly orders or the parties agree otherwise, any assumption or rejection approved by the Bankruptcy Court notwithstanding a Treatment Objection shall be effective as of the Assumption Effective Date or Rejection Effective Date originally proposed by the Debtors or specified in the Plan.

(iii)      Any Cure shall be paid as soon as reasonably practicable following the entry of a Final Order resolving an assumption dispute and/or approving an assumption (and, if applicable, assignment), unless the Debtors or Reorganized Debtors file a Notice of Intent to Assume or Reject under Section 9.4(d).

(iv)      No Cure shall be allowed for a penalty rate or default rate of interest, each to the extent not proper under the Bankruptcy Code or applicable law.

**(d)**      Reservation of Rights

If a Treatment Objection is filed regarding any executory contract or unexpired lease sought to be assumed or rejected by any of the Reorganized Debtors, the Reorganized Debtors reserve the right (i) to seek to assume or reject such agreement at

45

any time before the assumption, rejection or assignment of, or Cure for, such agreement is determined by Final Order and (ii) to the extent a Final Order is entered resolving a dispute as to Cure or the permissibility of assignment (but not approving the assumption of the executory contract or unexpired lease sought to be assumed), to seek to reject such agreement within 14 calendar days after the date of such Final Order, in each case by filing with the Bankruptcy Court and serving upon the applicable Assumption Party or Rejection Party, as the case may be, a Notice of Intent to Assume or Reject.

### Section 9.5.    Rejection Claims

Any Rejection Claim must be filed with the Bankruptcy Court by the Rejection Bar Date.  Any Rejection Claim for which a Proof of Claim is not properly filed and served by the Rejection Bar Date shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective Estates or properties. The Debtors or the Reorganized Debtors may contest any Rejection Claim in accordance with Section 8.1 of the Plan.

### Section 9.6.    Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned pursuant to the Plan shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.  Any assignment by the Reorganized Debtors of an executory contract or unexpired lease after the Effective Date shall be governed by the terms of the executory contract or unexpired lease and applicable non-bankruptcy law.

### Section 9.7.    Approval of Assumption, Rejection, Retention or Assignment of Executory Contracts and Unexpired Leases

(a)    Entry of the Confirmation Order by the Bankruptcy Court shall, subject to the occurrence of the Effective Date, constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease that is assumed (and/or assigned) pursuant to the Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms as of the applicable Assumption Effective Date, except as modified by the provisions of the Plan, any order

46

of the Bankruptcy Court authorizing or providing for its assumption (and/or assignment), or applicable federal law.

**(b)** The provisions (if any) of each executory contract or unexpired lease assumed and/or assigned pursuant to the Plan that are or may be in default shall be deemed satisfied in full by the Cure, or by an agreed-upon waiver of the Cure. Upon payment in full of the Cure, any and all Proofs of Claim based upon an executory contract or unexpired lease that has been assumed in the Chapter 11 Cases or under the terms of the Plan shall be deemed disallowed and expunged with no further action required of any party or order of the Bankruptcy Court.

**(c)** Confirmation of the Plan and consummation of the Restructuring Transactions shall not constitute a change of control under any executory contract or unexpired lease assumed by the Debtors on or prior to the Effective Date.

### Section 9.8.  Modifications, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided by the Plan or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed, whether or not such executory contract or unexpired lease relates to the use, acquisition or occupancy of real property, shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in remedy related to such premises, unless any of the foregoing agreements has been or is rejected pursuant to an order of the Bankruptcy Court or is otherwise rejected as part of the Plan.

Modifications, amendments, supplements and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (i) do not alter in any way the prepetition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtors that may arise under the same, (ii) are not and do not create postpetition contracts or leases, (iii) do not elevate to administrative expense priority any Claims of the counterparties to the executory contracts and unexpired leases against any of the Debtors and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

47

# ARTICLE 10
## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### Section 10.1. Corporate Action

**(a)**     On and after the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated hereby for each of the Reorganized Debtors, including the Restructuring Transactions, shall be deemed authorized and approved in all respects. Without limiting the foregoing, such actions may include:  (i) the adoption and filing of the New Certificate of Incorporation, (ii) the adoption and filing of the Reorganized Subsidiary Debtors' Certificates of Incorporation, (iii) the approval of the New Bylaws, (iv) the approval of the Reorganized Subsidiary Debtors' Bylaws, (v) the election or appointment, as the case may be, of directors and officers for the Reorganized Debtors, (vi) the issuance of the Exit Second Lien Notes, New Convertible Preferred Stock and the New Common Stock, (vii) entry into the Exit First Lien Credit Agreement, (viii) entry into the Restructuring Advisory Agreement and (ix) the Restructuring Transactions to be effectuated pursuant to the Plan.

**(b)**     All matters provided for herein involving the corporate structure of any Debtor or any Reorganized Debtor, or any corporate action required by any Debtor or any Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of such Debtor or Reorganized Debtor or by any other stakeholder.

**(c)**     On or after the Effective Date, the appropriate officers of each Reorganized Debtor and members of the board of directors, board of managers or equivalent body of each Reorganized Debtor are authorized and directed to issue, execute, deliver, file and record any and all agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments contemplated by the Plan in the name of and on behalf of such Reorganized Debtor and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### Section 10.2. Certificates of Incorporation and Bylaws

**(a)**     The New Certificate of Incorporation and the New Bylaws shall be amended or deemed amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  The New Certificate of Incorporation will be amended or deemed amended to, among other purposes, (i) authorize the New Common Stock, (ii) pursuant to section 1123(a)(6) of the Bankruptcy Code, add a provision prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code and (iii) add restrictions on holders' ability to transfer New Common Stock and other New Securities designed to ensure that the number of holders of such securities does not exceed the threshold at which Reorganized Mag LLC would be required to become a reporting company under the Exchange Act; *provided* that such restrictions shall no longer be applicable in the event that the Reorganized Mag LLC makes a public offering of its securities within the meaning of the Securities Act.  After the Effective Date, the Reorganized Debtors may amend and restate their Certificates of

Incorporation, organizational documents or other analogous documents as permitted by applicable law.

**(b)**     Subject to the Restructuring Transactions, the Reorganized Subsidiary Debtors' organizational documents in effect before the Effective Date shall remain in effect after the Effective Date.  After the Effective Date, any of the Reorganized Debtors may file amended and restated certificates of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

### Section 10.3. Directors and Officers of the Reorganized Debtors

**(a)**     Subject to the Restructuring Transactions, on the Effective Date, the management, control and operation of each Reorganized Debtor shall become the general responsibility of the board of directors of such Reorganized Debtor or other governing body as provided in the applicable governing documents.

**(b)**     On the Effective Date, the term of the members of the Board shall expire and such members shall be replaced by the New Board.   The classification and composition of the New Board shall be consistent with the RSA, the New Certificate of Incorporation and the New Bylaws.  In the Plan Supplement, to the extent known, the Debtors will disclose pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of the Persons proposed to serve on the New Board.  The New Board members shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of the New Certificate of Incorporation and the New Bylaws.

**(c)**     Subject to the Restructuring Transactions, and except as specified in the Plan Supplement, the members of the boards of directors of the Subsidiary Debtors as of the Effective Date shall continue to serve in their current capacities after the Effective Date.  The classification and composition of the boards of directors of the Reorganized Subsidiary Debtors shall be consistent with the Reorganized Subsidiary Debtors' Certificates of Incorporation and Reorganized Subsidiary Debtors' Bylaws.  Each such director shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of the relevant Reorganized Debtor's constituent documents.

**(d)**     Subject to the Restructuring Transactions and any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as otherwise specified in the Plan Supplement, the principal officers of each Debtor immediately before the Effective Date will be the officers of the corresponding Reorganized Debtor as of the Effective Date.  Each such officer shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of such Reorganized Debtor's constituent documents.

## ARTICLE 11
### EFFECT OF CONFIRMATION

### Section 11.1. Vesting of Assets

Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights and privileges related thereto) of each of the Debtors shall vest in each of the respective Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests.  All Liens, Claims, encumbrances, charges and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

### Section 11.2. Release of Liens

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, settled, discharged and compromised, and all rights, titles and interests of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall revert to the Reorganized Debtors and their successors and assigns. The Reorganized Debtors shall be authorized to file any necessary or desirable documents to evidence such release in the name of the party secured by such pre-Effective Date mortgages, deeds of trust, Liens, pledges or other security interests.

### Section 11.3. Releases and Discharges

The releases and discharges of Claims and Causes of Action described in the Plan, including releases by the Debtors and by holders of Claims, constitute good-faith compromises and settlements of the matters covered thereby and are consensual.  Such compromises and settlements are made in exchange for consideration and are in the best interest of holders of Claims, are fair, equitable, reasonable and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.  Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan (a) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b) and 1334(e) of title 28 of the United States Code, (b) is an essential means of implementing the Plan, (c) is an integral and nonseverable element of the transactions incorporated into the Plan, (d) confers a material benefit on, and is in the best interests of, the Debtors, their

Estates and their Creditors, (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, (f) is fair, equitable and reasonable and in exchange for good and valuable consideration and (g) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

### Section 11.4. Discharge and Injunction

(a)    Except as otherwise specifically provided in the Plan or the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts of, and Claims against, the Debtors and shall terminate all Interests in the Debtors, as well as all interests of any kind, nature or description whatsoever in or against any of the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.   Except as otherwise specifically provided in the Plan or the Confirmation Order, upon the Effective Date, all existing Claims against the Debtors and Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests (and all representatives, trustees or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.   The Confirmation Order shall be a judicial determination of the discharge of all Claims against, liabilities of and Interests in the Debtors, subject to the occurrence of the Effective Date.

(b)    Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise specifically provided in the Plan or the Confirmation Order, each holder (as well as any representatives, trustees or agents on behalf of each holder) of a Claim or Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.   Upon the Effective Date, all such Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, the Debtors.

(c)    Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons or Entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and Affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including, without limitation, a Section 510(b) Claim) against or Interest in the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to the Plan, (ii) the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to the Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors other than to enforce any right to a distribution pursuant to the Plan or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

(d)      Nothing in this Plan or the Confirmation Order releases, discharges, precludes, or enjoins the enforcement of any liability to a Governmental Unit under applicable Environmental Law to which the Reorganized Debtors are subject to the extent that they are the owner or operator of real property after the Effective Date.

## Section 11.5. Term of Injunction or Stays

**Unless otherwise provided herein, any injunction or stay arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.**

## Section 11.6. Exculpation

**Pursuant to the Plan, and except as otherwise specifically provided in the Plan or the Confirmation Order, none of the Released Parties shall have or incur any liability to any holder of a Claim, Cause of Action or Interest for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the negotiation of any settlement or, agreement, contract, instrument, release or document created or entered into in connection with the Plan or in the Chapter 11 Cases (including the Plan Supplement, the DIP Facility, and, in each case, any documents related thereto), the pursuit of confirmation of the Plan, the consummation of the Plan, the preparation and distribution of the Disclosure Statement, the offer, issuance and distribution of any securities issued or to be issued under or in connection with the Plan, any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or the administration of the Plan or the property to be distributed under the Plan, except for any act or omission that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence. Each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan.**

**Section 11.7. Release by the Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan (including Section 11.12 of the Plan) or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to these Chapter 11 Cases, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors and their Estates from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws, or otherwise, including Avoidance Actions, Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, the Reorganized Debtors, their Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity or that any holder of a Claim or Interest or other entity would have been legally entitled to assert derivatively for or on behalf of the Debtors, their Estates or the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the RSA, the DIP Facility, the Loan Documents (as defined in the Prepetition Credit Facility Agreement), the Exit Credit Facilities Documents or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct, actual fraud or gross negligence; *provided, however*, that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, then the release set forth in this Section 11.7 shall automatically and retroactively be null and void *ab initio* with respect to the Released Party bringing or asserting such Claim or Cause of Action; *provided further* that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority or secured status of any prepetition or ordinary course administrative Claim against the Debtors, (ii) any release or indemnification provided for in any settlement or granted under any other court order, (iii) any action by the DIP Agent or DIP Lenders to enforce their

53

rights under the DIP Facility relating to Contingent DIP Obligations or (iv) any action by the Prepetition Credit Facility Agent or the Prepetition Credit Facility Lenders to enforce their rights under the Prepetition Facility relating to Contingent Prepetition Credit Facility Obligations, *provided that*, in the case of (i) through (iv), the Debtors shall retain all defenses related to any such action.

### Section 11.8. Voluntary Releases by the Holders of Claims and Interests

Except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, holders of Claims that (i) are deemed to have accepted the Plan or (ii) vote to accept or reject the Plan shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws, or otherwise, including those Avoidance Actions, Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Estates, the restructuring, the Chapter 11 Cases, the DIP Facility, the Loan Documents (as defined in the Prepetition Credit Facility Agreement), the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Exit Credit Facilities Documents or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; *provided* that any holder of a Claim that elects to opt out of the releases contained in this paragraph shall not receive the benefit of the releases set forth in this paragraph (even if for any reason otherwise entitled).

### Section 11.9. Injunction

Except as otherwise specifically provided in the Plan or the Confirmation Order, all Persons and Entities who have held, hold or may hold Claims, interests, Causes of Action, Interests or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to Section 11.7 hereof; (3) have been released pursuant to Section 11.8 hereof;

**(4) are subject to exculpation pursuant to Section 11.6 hereof, including exculpated claims (but only to the extent of the exculpation provided in Section 11.6 hereof); or (5) are otherwise stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind, whether directly, derivatively or otherwise, including on account of any claims, interests, Causes of Action or liabilities that have been compromised or settled against any Released Party (or the property or estate of any Released Party) on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, interests, Causes of Action or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Released Party or its property on account of or in connection with or with respect to any such released, settled, compromised, or exculpated Claims, interests, Causes of Action, or liabilities; (c) creating, perfecting or enforcing any Lien, Claim, or encumbrance of any kind against any Released Party or its property on account of or in connection with or with respect to any such released, settled, compromised, or exculpated Claims, interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Released Party or its property on account of or in connection with or with respect to any such released, settled, compromised, or exculpated Claims, interests, Causes of Action or liabilities (unless such holder has filed a timely Proof of Claim with the Bankruptcy Court preserving the right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise); and (e) commencing or continuing in any manner any action or other proceeding of any kind against any Released Party or its property on account of or in connection with or with respect to any such released, settled, compromised, or exculpated Claims, interests, Causes of Action, or liabilities released, settled or compromised pursuant to the Plan; *provided* that nothing contained herein shall preclude a Person or Entity from obtaining benefits directly and expressly provided to such Person or Entity pursuant to the terms of the Plan; *provided*, further, that nothing contained herein shall be construed to prevent any Person or Entity from defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.**

**Section 11.10.        Setoff and Recoupment**

**The Debtors and the Reorganized Debtors may, but shall not be required to, set off or recoup against any Claim and any distribution to be made on account of such Claim, any and all Claims, rights and Causes of Action of any nature that the Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver, abandonment or release by the Debtors or the Reorganized Debtors of any such Claims, rights and Causes of Action that the Debtors or the Reorganized Debtors may have against the holder of such Claim.**

### Section 11.11. Avoidance Actions

On the Effective Date, the Reorganized Debtors shall be deemed to waive and release all Avoidance Actions other than any Avoidance Action listed on Schedule 11.11; *provided* that, except as expressly provided in this Article 11 or the Confirmation Order, the Reorganized Debtors shall retain the right to assert any Claims assertable in any Avoidance Action as defenses or counterclaims in any Cause of Action brought by any Creditor.  The Reorganized Debtors shall retain the right, after the Effective Date, to prosecute any of the Avoidance Actions listed on Schedule 11.11.

### Section 11.12. Preservation of Causes of Action

**(a)** Except as expressly provided in this Article 11 or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors, the Reorganized Debtors or the Estates may have or that the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or Claims against any person or entity, to the extent such person or entity asserts a cross-claim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors or representatives or (ii) the turnover of any property of the Estates.

**(b)** Except as set forth in this Article 11 or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

**(c)** Except as set forth in this Article 11 or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to release any post-Effective Date obligations of any party under the Plan, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### Section 11.13. Compromise and Settlement of Claims and Controversies

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise of all Claims, Causes of Action and controversies relating to the contractual, legal and subordination rights that a holder of an Allowed Claim may have against any Debtor, or

56

any distribution to be made on account of such an Allowed Claim.  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, except as set forth in the Plan, the provisions of the Plan shall also constitute a good-faith compromise of all Claims, Causes of Action and controversies by any Debtor against any other Debtor.  In each case, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and the holders of such Claims and is fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Entities, in their sole discretion, and after the Effective Date, such right shall pass to the Reorganized Debtors.

## ARTICLE 12
### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### Section 12.1. Conditions to Confirmation

Confirmation of the Plan will not occur unless each of the following conditions has been satisfied or waived in accordance with Section 12.3 of the Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Debtors and the Ad Hoc Committee, shall be entered; and

(b)    The Debtors shall have received a binding commitment for the Exit Credit Facilities.

### Section 12.2. Conditions to Effectiveness

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied on or prior to the Effective Date, or waived in accordance with Section 12.3 of the Plan:

(a)    The Approval Order, in form and substance acceptable to the Debtors and the Ad Hoc Committee, shall have been entered;

(b)    There shall be no stay or injunction in effect with respect to the Confirmation Order;

(c)    The Exit Credit Facilities Documents, in form and substance acceptable to the Debtors and the Ad Hoc Committee, shall have been duly executed and delivered by the Reorganized Debtors parties thereto, and all conditions precedent to the consummation of the Exit Credit Facilities shall have been waived or satisfied in

accordance with the terms thereof, and the closing of the Exit Credit Facilities shall have occurred;

(d)      All actions, documents and agreements necessary to implement the Plan, including the Plan Supplement, shall be in form and substance as required by the RSA to the extent applicable and have been performed or executed, as applicable;

(e)      The Debtors shall have received any authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and that are required by law, regulation or order;

(f)      The RSA shall not have been terminated;

(g)      Mag LLC and Mag Inc. shall have entered into the Restructuring Advisory Agreement in accordance with the RSA;

(h)      The New Management Agreements and the Management Incentive Plan shall be in full force and effect;

(i)      The Technology License Agreement shall have been amended to grant Mag LLC a perpetual royalty free (other than royalties due to DEED and IRRRB pursuant to the royalty agreement between Mag Inc. and the State of Minnesota), exclusive (subject to the MR License) license in North America for all rights and improvements to the technology licensed under the Technology License Agreement;

(j)      The Debtors shall have assumed the Management Services Agreement, as amended in accordance with the RSA; and

(k)      Each of the New Certificate of Incorporation, the New Bylaws, the Reorganized Subsidiary Debtors' Certificates of Incorporation and the Reorganized Subsidiary Debtors' Bylaws, in each case in form and substance acceptable to the Debtors and the Ad Hoc Committee, will be in full force and effect as of the Effective Date.

**Section 12.3. Waiver of Conditions to Confirmation or Effectiveness**

The Debtors, with the consent of the Ad Hoc Committee, may waive any of the conditions set forth in Section 12.1 or Section 12.2 hereof at any time, without any notice to other parties-in-interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan.  The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion).  The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

58

# ARTICLE 13
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### Section 13.1. Plan Modifications

(a)    Subject to certain restrictions and requirements set forth in section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan and the RSA, the Debtors may alter, amend or modify the Plan, including the Plan Supplement, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date.  After the Confirmation Date and before substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement, the Disclosure Statement or the Confirmation Order relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    Before the Effective Date, the Debtors may make appropriate adjustments and modifications to the Plan, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided* that such adjustments and modifications do not materially and adversely affect the treatment of holders of Claims or Interests.

### Section 13.2. Revocation or Withdrawal of the Plan and Effects of Non-Occurrence of Confirmation or Effective Date

The Debtors reserve the right to revoke, withdraw or delay consideration of the Plan before the Confirmation Date, either entirely or as to any one or more of the Debtors, and to file subsequent amended plans of reorganization.  If the Plan is revoked, withdrawn or delayed as to fewer than all of the Debtors, such revocation, withdrawal or delay shall not affect the enforceability of the Plan as it relates to the Debtors for which the Plan is not revoked, withdrawn or delayed.  If the Debtors revoke or withdraw the Plan in its entirety or if the Confirmation Date or the Effective Date does not occur, then, absent further order of the Bankruptcy Court, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases effected by the Plan and any document or agreement executed pursuant hereto, shall be deemed null and void and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person or Entity, (2) prejudice in any manner the rights of such Debtors or any other Person or Entity or (3) constitute an admission of any sort by the Debtors or any other Person or Entity.

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction over any request to extend the deadline for assuming or rejecting executory contracts or unexpired leases.

59

For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall alter the rights and remedies of the DIP Agent or the DIP Lenders under the DIP Documents and the DIP Order, inclusive of, without limitation, the DIP Agent's rights to exercise remedies should an event of default occur at any time (including between Confirmation and the Effective Date).

# ARTICLE 14
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Cases for, among other things, the following purposes:

**(a)** To hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

**(b)** To hear and determine any motion, adversary proceeding, application, contested matter or other matter pending on or commenced after the Confirmation Date in the Bankruptcy Court;

**(c)** To hear and determine all matters relating to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim against any of the Debtors;

**(d)** To hear and determine matters relating to the DIP Facility and the DIP Order;

**(e)** To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

**(f)** To hear and determine all applications for compensation and reimbursement of Professional Fee Claims;

**(g)** To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

**(h)** To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

**(i)** To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

   **(j)**     To issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan;

   **(k)**     To enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

   **(l)**     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

   **(m)**     To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

   **(n)**     To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Approval Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement;

   **(o)**     To recover all assets of the Debtors and property of the Debtors' Estates, which shall be for the benefit of the Reorganized Debtors, wherever located;

   **(p)**     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

   **(q)**     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

   **(r)**     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity;

   **(s)**     To hear any other matter not inconsistent with the Bankruptcy Code; and

   **(t)**     To enter a final decree closing the Chapter 11 Cases.

   Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims.

61

# ARTICLE 15
## MISCELLANEOUS

### Section 15.1. Exemption from Transfer Taxes and Recording Fees

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, Transfer or exchange of notes or equity securities under the Plan, the creation, the filing or recording of any mortgage, deed of trust or other security interest, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the Plan Documents, the New Common Stock, and any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 15.2. Expedited Tax Determination

The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of such Debtors or Reorganized Debtors for all taxable periods ending on or before the Effective Date.

### Section 15.3. Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of title 28 of the United States Code and/or section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

### Section 15.4. Dissolution of the Creditors' Committee

After the entry of the Effective Date, the Creditors' Committee's functions shall be restricted to, and shall not be heard on any issue except, applications filed pursuant to sections 330 and 331 of the Bankruptcy Code. Upon the resolution of all applications filed by the Creditors' Committee pursuant to sections 330 and 331 of the Bankruptcy Code, the Creditors' Committee shall dissolve, and the members thereof, in their capacities as such, shall be released and discharged from all rights, duties, responsibilities and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; *provided* that the Creditors' Committee shall have the right to be heard solely in

connection with all Professional Fee Claims and shall be deemed to remain in existence solely with respect thereto.

### Section 15.5. Plan Supplement

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement.  Unless otherwise expressly provided in the Plan, the Debtors may file or amend any Plan Supplement document until five (5) days prior to the Voting Deadline and may alter, modify or amend any Plan Supplement document in accordance with Section 13.1 of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Debtors' Case Information Website or the Bankruptcy Court's Website.

### Section 15.6. Claims Against Other Debtors

Nothing in the Plan or the Disclosure Statement or any document or pleading filed in connection therewith shall constitute or be deemed to constitute an admission that any of the Debtors are subject to or liable for any Claim against any other Debtor.

### Section 15.7. Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 15.8. Severability

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation; *provided* that such holding, alteration or interpretation does not have a materially adverse impact on any rights of the Ad Hoc Committee, the DIP Agent, the DIP Lenders, the Prepetition Credit Facility Agent, the Prepetition Credit Facility Lenders, the Indenture Trustee and/or the holders of Existing Notes Claims.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Section 15.9. Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or other federal law is applicable, or to the extent the Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the

rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to the principles of conflict of laws thereof.

### Section 15.10.          Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former holders of Claims against the Debtors or Interests in the Debtors and their respective heirs, executors, administrators, successors and assigns.

### Section 15.11.          Notices

To be effective, any notice, request or demand to or upon, as applicable, the Debtors, the Creditors' Committee or the United States Trustee must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually received and confirmed by the relevant party as follows:

If to the Debtors:

> Magnetation LLC
> 102 NE Third Street
> Grand Rapids, Minnesota 55744
> Attn:   Joseph A. Broking


> with a copy to:

> Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, New York 10017
> Attn:   Marshall S. Huebner
>              Michelle M. McGreal
> Telephone: (212) 450-4000
> Facsimile:  (212) 607-7983

If to the United States Trustee:

> Office of the United States Trustee
> 1015 U.S. Courthouse, 300 South 4th Street
> Minneapolis, Minnesota 55415
> Attn:   Sarah J. Wencil
> Telephone: (612) 334-1350

If to the Reorganized Debtors:

        Magnetation LLC
        102 NE Third Street
        Grand Rapids, Minnesota 55744
        Attn:   Joseph A. Broking

        with a copy to:

        Davis Polk & Wardwell LLP
        450 Lexington Avenue
        New York, New York 10017
        Attn:   Marshall S. Huebner
                Michelle M. McGreal
        Telephone: (212) 450-4000
        Facsimile:  (212) 607-7983

### Section 15.12.       Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Before the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtors related to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including as to the holders of Claims or Interests or as to any treatment or classification of any contract or lease.

### Section 15.13.       Further Assurances

The Debtors, the Reorganized Debtors and all holders of Claims receiving distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

Dated:    Grand Rapids, Minnesota
          August 3, 2015

Respectfully submitted,

MAGNETATION LLC (for itself and on behalf of all
Debtors)

By:    _____

       Name:    Joseph A. Broking
       Title:    Chief Financial Officer

**Schedule A**

Persons and Entities that Are Not Released Parties

[TO COME]

**Schedule 9.2(a)**

Executory Contracts and Unexpired Leases to Be Assumed

[TO COME]

**Schedule 9.2(b)**

Executory Contracts and Unexpired Leases to Be Rejected

[TO COME]

**Schedule 11.11**

Retained Avoidance Actions

[TO COME]