UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| In re: | **Jointly Administered under Case No. 15-50307** |
| MAGNETATION LLC, et al, | Court File No. 15-50307 (GFK) |
| Debtors. | |
| (includes: | Court File Nos.: |
| Mag Lands, LLC | 15-50308 (GFK) |
| Mag Finance Corp. | 15-50309 (GFK) |
| Mag Mining, LLC | 15-50310 (GFK) |
| Mag Pellet LLC) | 15-50311 (GFK) |
| | Chapter 11 Cases Chief Judge Gregory F. Kishel |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**NOTICE OF HEARING AND SECOND JOINT MOTION FOR AN ORDER
EXTENDING THE DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
A PLAN OF REORGANIZATION AND SOLICIT VOTES THEREON**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TO:    The parties in interest as specified in Local Rule 9013-3(a)(2).

1.    Magnetation LLC ("**Mag LLC**") and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") by this motion (this "**Motion**") move this Court for the relief requested below and give notice of hearing.

2.    The Court will hold a hearing on the Motion at 1:00 p.m. (prevailing Central time) on October 13, 2015 in Courtroom No. 2A, U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.    Any response to this Motion must be filed and served not later than October 8, 2015, which is five days before the time set for the hearing.    **UNLESS A**

RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 1070-1 and 1073-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by this Court.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   On May 5, 2015 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").   The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.       This Motion arises under sections 1121(b), (c) and (d) of the Bankruptcy Code. This Motion is filed under Local Rules 9013-1, 9013-2 and 9013-3.  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rules 2002(a) and 9013 and Local Rules 2002-1(b), 9013-2 and 9013-3.  The Debtors also request confirmation that a motion filed by the Debtors on or before the Extended Filing Deadline (as defined below) seeking a further extension of the Debtors' Exclusive Periods (as defined below) shall automatically extend the Debtors' Exclusive Periods under section 1121 of the Bankruptcy Code until the Court's determination of such motion, irrespective of whether the Court has entered an order granting or denying such motion by the Extended Filing Deadline.

## **BACKGROUND**

6.       In the weeks leading up to the Petition Date, the Debtors sought to secure a commitment for postpetition financing on the best possible terms available.  In consultation with their advisors, the Debtors determined that the offer by certain holders (the "**Ad Hoc**

**Committee**") of the Debtors' 11.0% senior secured notes due 2018 (the "**Senior Secured Notes**") represented the best source of financing under the circumstances. As a condition to the Ad Hoc Committee's providing postpetition financing, the Ad Hoc Committee required that the Debtors agree to the principal terms of a plan of reorganization and post-reorganization capital structure, as set forth in a term sheet (the "**Plan Term Sheet**") that was filed as Exhibit D to the Debtors' *Notice of Hearing and Joint Motion for Entry of Interim and Final Orders (i) Granting an Expedited Hearing, (ii) Authorizing the Debtors (a) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 and (b) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (iii) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507* [ECF No. 18] (the "**DIP Motion**").

7.       The DIP Credit Agreement (as defined in the DIP Motion), as has been amended from time to time, sets forth milestones for certain key events in the Debtors' chapter 11 cases, including requirements that, among other things, (i) the Debtors shall have filed a plan of reorganization and a disclosure statement, both in form and substance acceptable to the Required Lenders (as defined in the DIP Credit Agreement), on or before August 3, 2015 and October 6, 2015, respectively; (ii) at the election of the Required Lenders, either (a) the disclosure statement shall have been approved by the Court or (b) the Debtors shall have filed a motion with the Court seeking approval of a sale of all, or substantially all, of the Debtors' assets on terms acceptable to the Required Lenders pursuant to section 363 of the Bankruptcy Code (a "**363 Sale**"), in either case on or before November 11, 2015; (iii) at the election of the Required Lenders, either (a) a plan of reorganization shall have been confirmed by the Court or (b) an order approving a 363 Sale shall have been entered by the Court, in either case on or before January 5, 2016; and

(iv) the effective date of the plan of reorganization shall have occurred on or before January 20, 2016.

8.     The Debtors are party to a restructuring support agreement (the "**RSA**") with holders of over 78% in amount of the Senior Secured Notes and consented to by Magnetation Inc. ("**Mag Inc.**"), pursuant to which the parties thereto memorialized their support of the Plan Term Sheet subject to the terms therein.  The RSA also requires that the Debtors comply with the milestones set forth in the DIP Credit Agreement (as may be amended).

9.     In addition, on September 11, 2015, in exchange for the Required Lenders' agreement to exercise their right to extend the "Final Maturity Date" of the DIP Credit Agreement by three months, from December 7, 2015 to March 7, 2016, the Debtors agreed to effectuate certain transactions with Mag Inc. that were contemplated by the RSA by certain specified deadlines.  The Debtors and the Required Lenders memorialized this agreement by amending the DIP Credit Agreement to include a new milestone that provides that (i) the Debtors file a motion on or before October 20, 2015, and an order shall have been entered by the Court on or before November 12, 2015, approving, in each case as contemplated by the RSA and in form and substance acceptable to the Required Lenders, (a) employment agreements with all Mag Inc. employees, (b) a restructuring advisory agreement with Mag Inc., (c) an amendment to the Technology License Agreement (as defined in the DIP Credit Agreement) and (d) a settlement agreement with Mag Inc. to extinguish the promissory note between Mag Inc. and the Debtors (collectively, the "**Mag Inc. Agreements**"); and (ii) the Mag Inc. Agreements be executed by all parties thereto on or before November 20, 2015.

10.     On August 3, 2015, the Debtors filed the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 284] (the "**Plan**"), in form and substance

acceptable to the Required Lenders, thereby satisfying the applicable milestone in the DIP Credit Agreement and the RSA.  On August 19, 2015, the Court entered the *Order Extending the Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Votes Thereon* [ECF No. 303] (the "**First Extension Order**").  Pursuant to the First Extension Order, the Debtors' exclusive period within which to file a plan of reorganization was extended from September 2, 2015 to November 1, 2015, and the Debtors' exclusive period within which to solicit acceptances of a plan of reorganization was extended from November 1, 2015 to December 31, 2015.  Such extensions were granted without prejudice to the Debtors' right to seek additional extensions to such exclusive periods.

11.     While the Plan filed by the Debtors embodies the agreements, terms and conditions set forth in the RSA, the Debtors believe that additional negotiation and the resolution of certain key contingencies, including the Debtors' contractual arrangement with its sole customer, AK Steel Corporation ("**AK Steel**"), and recoveries to unsecured creditors, are necessary before they can solicit votes on and confirm a plan of reorganization.  Indeed, on September 8, 2015, the Debtors filed the *Notice of Hearing and Joint Motion for an Order Authorizing Assumption of Executory Contract with AK Steel Corporation* [ECF No. 340] (the "**AK Steel Motion**"), pursuant to which the Debtors are seeking authorization to assume their pellet purchase agreement with AK Steel.  A hearing on the AK Steel Motion is currently scheduled for October 13, 2015 before this Court.

12.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of Joseph A. Broking in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 8] (the "**Officer Declaration**"), filed on May 5, 2015, which is incorporated herein by reference.

## RELIEF REQUESTED

13.     By this Motion, the Debtors seek an order in the form attached hereto, pursuant to section 1121(d) of the Bankruptcy Code, extending by 120 days each of (i) the exclusive period for the Debtors to file a chapter 11 plan (the "**Exclusive Filing Period**"), from November 1, 2015 to February 29, 2016 (the "**Extended Filing Deadline**"), and (ii) the exclusive period for the Debtors to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Debtors' Exclusive Periods**"), from December 31, 2015 to April 29, 2016.  The Debtors seek these extensions to avoid the necessity of having to pursue confirmation of a plan of reorganization prematurely and to ensure that their plan of reorganization best addresses the interests of the Debtors and their employees, creditors and estates.

14.     Pursuant to Local Rule 9013-2, this Motion is verified and is accompanied by a memorandum of law and proposed order.

15.     Pursuant to Local Rule 9013-2, the Debtors give notice that they may, if necessary, call Joseph A. Broking, Chief Financial Officer of Magnetation LLC, an authorized representative of the Debtors, to testify at the hearing on the Motion regarding the facts set out herein.   The witness's business address is 102 NE 3rd Street, Suite 120, Grand Rapids, Minnesota 55744.

## THE DEBTORS' RESTRUCTURING EFFORTS

16.     The Debtors are an innovative natural resources company headquartered in Grand Rapids, Minnesota.  As of the Petition Date, the Debtors employed approximately 486 people, directly or contractually through a management services agreement with the majority member of

Mag LLC, Mag Inc., and operated three[1] plants at which they produce iron ore concentrate using the proprietary technology and associated intellectual property licensed from Mag Inc., one plant at which they produce iron ore pellets and a rail load-out facility.

17.     In addition to the substantial efforts required to operate their businesses in chapter 11, since the Petition Date, the Debtors have worked diligently to stabilize their businesses and reassure their vendors, employees and other key constituents.  In the approximately five months since the Petition Date, the Debtors and their advisors have also dedicated significant time and resources to, among other things, (a) obtaining final approval of the $135 million debtor-in-possession financing on appropriate terms, permitting the financing of the Debtors' operations during these chapter 11 cases, (b) obtaining approval of various other critical early case relief, (c) continuing the process of analyzing hundreds of leases and executory contracts to identify those that are beneficial to the Debtors' estates and should be assumed and those that should be rejected, and obtaining an extension of the deadline by which the Debtors must assume or reject their nonresidential real property leases, (d) obtaining approval for the rejection of several executory contracts that are no longer beneficial for the Debtors' estates, (e) negotiating and obtaining approval for the amendment and assumption of certain executory contracts and unexpired leases, (f) responding to a multitude of creditor and supplier inquiries, (g) finalizing and filing the Debtors' schedules of assets and liabilities, income and expenditures and executory contracts and unexpired leases, and their statements of financial affairs and amendments thereto (the "**Debtors' Schedules and Statements**"), (h) engaging in negotiations with critical vendors and contract counterparties, (i) establishing a deadline by which to file section 503(b)(9) claims and procedures to address such claims, (j) obtaining approval of a key employee incentive plan

---

[1] The Debtors' plant located in Keewatin, Minnesota is currently idled and has been placed in a care and maintenance program.

(which excluded insiders of the Debtors), (k) negotiating and securing approval for entry into the RSA, (l) obtaining approval of the retention and appointment of a chief restructuring officer, (m) filing the AK Steel Motion; (n) negotiating a beneficial claim settlement with Huston Electric, Inc. and Harleysville Insurance Company; (o) reviewing hundreds of prepetition transactions for potential avoidance and recovery; (p) complying with the monthly and quarterly reporting requirements set forth in the DIP Credit Agreement and (q) timely responding to numerous information requests from key stakeholders and their advisors.

18.    Tangible progress has been made toward the Debtors' goals of improving their capital structure and restructuring their business to address the difficulties posed by the current iron ore and steel markets.  As demonstrated by the successful negotiation and execution of the RSA and the filing of the Plan and the AK Steel Motion, the Debtors are moving forward with a plan of reorganization that will embody a viable, value-maximizing path forward.  Moreover, the level of diligence and energy that the Debtors have brought to these chapter 11 cases is reflected by the almost total absence of contested matters in these chapter 11 cases.  However, given the complexity of the issues faced by the Debtors and the competitive and unpredictable environment in which the Debtors are operating, additional time is necessary to reach consensual and productive resolutions of all outstanding issues.  Accordingly, the Debtors have identified a period of time, well within the standard time for a second extension of exclusivity in a case of this size, which they believe will allow them to make meaningful progress while still minimizing the time spent in chapter 11.

19.    Specifically, an extension of the Debtors' Exclusive Periods is required to enable the Debtors to:

      (a)      resolve their contractual arrangement with AK Steel going forward;

      (b)      continue to refine their business model to deliver both a more efficient cost structure and future revenue growth so that the Debtors can continue to compete effectively in the iron ore industry;

      (c)      further implement specific restructuring initiatives;

      (d)      complete analysis of the Debtors' executory contracts and leases;

      (e)      secure adequate liquidity upon emergence from chapter 11; and

      (f)      further develop support for a plan of reorganization reflecting the initiatives set forth above and others that are underway.

## NO PREVIOUS REQUEST

20.      No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

WHEREFORE, the Debtors request entry of an order:

A.      extending the Exclusive Filing Period from November 1, 2015 to February 29, 2016 and the Exclusive Solicitation Period from December 31, 2015 to April 29, 2016; and

B.      granting such other relief as the Court deems just and equitable.

Dated:   September 29, 2015              DAVIS POLK & WARDWELL LLP

*/s/ Michelle M. McGreal*
Marshall S. Huebner (NY #2601094)
Michelle M. McGreal (NY #4599031)
Kevin J. Coco (NY #4787644)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

*Counsel to the Debtors*
*and Debtors in Possession*

-and-

LAPP, LIBRA, THOMSON,
STOEBNER & PUSCH, CHARTERED
Ralph V. Mitchell (#184639)
Mark J. Kalla (#159487)
120 South Sixth Street, Suite 2500
Minneapolis, Minnesota 55402
Telephone:    (612) 338-5815
Facsimile:    (612) 338-6651
RMitchell@lapplibra.com
MKalla@lapplibra.com

*Local Counsel to the Debtors*
*and Debtors in Possession*

## VERIFICATION

I, Joseph A. Broking, Chief Financial Officer of Magnetation LLC, authorized representative of the Debtors herein, based upon my personal information and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct, according to the best of my knowledge, information and belief.

Dated: September 29, 2015        Signed: _____

Joseph A. Broking

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **Jointly Administered under Case No. 15-50307** |
| MAGNETATION LLC, et al, | Court File No. 15-50307 (GFK) |
| Debtors. | |
| (includes: | Court File Nos.: |
| Mag Lands, LLC | 15-50308 (GFK) |
| Mag Finance Corp. | 15-50309 (GFK) |
| Mag Mining, LLC | 15-50310 (GFK) |
| Mag Pellet LLC) | 15-50311 (GFK) |
| | Chapter 11 Cases |
| | Chief Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF SECOND JOINT MOTION FOR AN ORDER  EXTENDING THE DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A PLAN OF REORGANIZATION AND SOLICIT VOTES THEREON**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Magnetation LLC and each of its subsidiaries that are debtors and debtors in possession in these chapter 11 cases (collectively, the "**Debtors**") submit this memorandum of law in support of the motion submitted herewith (the "**Motion**") in accordance with Local Rule 9013-2(a).  The Debtors request that the Court extend the Exclusive Filing Period from November 1, 2015 to February 29, 2016 and the Exclusive Solicitation Period from December 31, 2015 to April 29, 2016.  The Court should grant the relief requested in the Motion in order to allow the Debtors the time and flexibility to resolve outstanding issues surrounding the Debtors'

businesses going forward and further develop and negotiate a consensual plan of reorganization

with their key stakeholders.

## BACKGROUND

The supporting facts are set forth in the verified Motion, verified by Joseph A. Broking,

Chief Financial Officer of Magnetation LLC.  All capitalized terms used herein and not

otherwise defined shall have the meanings ascribed to them in the Motion.

## LEGAL ANALYSIS

Pursuant to section 1121(d)(1) of the Bankruptcy Code, this Court may extend a debtor's

exclusive periods upon a demonstration of cause:

> Subject to paragraph (2),[1] on request of a party in interest made
> within the respective periods specified in subsections (b) and (c) of
> this section and after notice and a hearing, the court may for cause
> reduce or increase the 120-day period or the 180-day period
> referred to in this section.

11 U.S.C. § 1121(d)(1).

The exclusive periods provided by Congress were incorporated in the Bankruptcy Code

to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances

of such plan without the deterioration and disruption of the debtor's business that might be

caused by the filing of competing plans by non-debtor parties.  Moreover, the Debtors are the

only parties that have fiduciary duties to the entire enterprise, and they are the only parties that

are duty-bound to formulate a plan of reorganization that takes into account the interests of the

estates and all their constituents.  *Lange v. Schropp (In re Brook Valley VII)*, 496 F.3d 892, 900

(8th Cir. 2007) (debtors in possession "owe fiduciary duties to the bankruptcy estate"), *see also*

---

[1] Paragraph (2) states that the exclusive periods may not be extended beyond 18 and 20 months after the
petition date.

*Collier on Bankruptcy* ¶ 1103.05[2] nn. 21-23 (committees "do not have a fiduciary duty to the debtor, to other creditor groups, or to the estate generally"). To allow the Debtors' Exclusive Periods to lapse would defeat the very purpose of section 1121 of the Bankruptcy Code.

The principal goal of chapter 11 is the successful reorganization of debtors in order to increase the pool of assets available to creditors. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The Congressional intent woven throughout chapter 11 is that the principal means of a successful rehabilitation should be a considered and consensual plan. *See Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a plan of reorganization for a specified and extendable period. *See In re Ames Dep't Stores Inc.*, No. 90-11233, 1991 WL 259036 at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a plan of reorganization is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003). Congress intended to give the bankruptcy court maximum flexibility to make such a determination. *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (citation omitted); *see also* H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. While the term "cause" is not defined by the statute, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 95-595, at 231 (1978)); *see also In re*

3

*Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.").

In determining whether cause exists to extend a debtor's exclusive periods, the Bankruptcy Appellate Panel for the Eighth Circuit has identified the following factors:

> (a) the large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure;
>
> (b) the need of a creditors' committee to negotiate with the debtor and the ability to prepare adequate information;
>
> (c) the existence of good faith progress towards reorganization;
>
> (d) the existence of an unresolved contingency;
>
> (e) the fact that the debtor is paying bills as they become due;
>
> (f) the length of previous extensions of exclusivity;
>
> (g) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors;
>
> (h) the debtor's failure to resolve fundamental reorganization matters essential to its survival; and
>
> (i) the gross mismanagement of the debtor.

*Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. at 643-44 (B.A.P. 8th Cir. 2003). This list of factors is not exclusive, nor are all factors relevant in every case. *Id.* at 644. Other factors that courts have considered include "whether the debtor has demonstrated reasonable prospects for filing a viable plan" and "whether the debtor has made progress

negotiating with creditors." *See, e.g.*, *In re Service Merchandise Co.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000). Ultimately, these factors are merely aids to the court in evaluating whether extension will allow the debtor a "reasonable time in light of the bankruptcy case in its entirety" to allow the debtor to negotiate a plan of reorganization. *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

### Ample Cause Exists to Extend the Debtors' Exclusive Periods

An analysis of the various factors noted above demonstrates that sufficient cause exists for the extension of the Exclusive Filing Period from November 1, 2015 to February 29, 2016 and the Exclusive Solicitation Period from December 31, 2015 to April 29, 2016.

*a. The Debtors' Cases Are Large and Complex.*

Courts have regularly extended the exclusive periods under section 1121(d) of the Bankruptcy Code in large, complex chapter 11 cases so as to afford the debtor time to stabilize its business and lay the groundwork for an effective plan of reorganization before beginning the formal plan negotiation, filing and solicitation process. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990), *see also* H.R. Rep. No. 95-595, at 231-32 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for an extension of exclusivity. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco, Inc.*, 76 B.R. 322, 325-27 (Bankr. S.D.N.Y. 1987) (cause existed to warrant first extension of exclusivity based on the size and complexity of the case alone).

5

More than 350 motions, notices, applications, petitions, orders and other pleadings have been filed in the first five months of these cases.  Addressing these motions, negotiating with vendors and counterparties, responding to a multitude of creditor and supplier inquiries, gathering the information required to complete the Debtors' Schedules and Statements, continuing to analyze hundreds of leases and executory contracts and engaging with AK Steel, the Creditors' Committee, the Ad Hoc Committee and other constituencies has required extensive time and resources.  While such efforts have been productive, the breadth and depth of the issues that have arisen in these cases demonstrate their size and complexity and the appropriateness of an extension of the Debtors' Exclusive Periods.

*b. The Debtors Need More Time to Negotiate a Consensual Plan of Reorganization and Prepare Adequate Information.*

As set forth herein and in the Motion, there are certain critical matters that must be resolved before the Debtors can further pursue and gain approval of the Plan and an accompanying disclosure statement containing adequate information.

*c. The Debtors Have Made Good Faith Progress Toward Reorganization.*

The Debtors' demonstrated progress in resolving many issues that have come up since the Petition Date also justifies the requested extension of the Debtors' Exclusive Periods.  *See In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (granting an extension of the debtor's exclusive periods because the debtor was making reasonable efforts to implement its extensive turnaround program).  The Debtors have engaged with the Creditors' Committee and other constituents in order to resolve creditor concerns quickly, economically and, in virtually all cases, without judicial involvement.  Additionally, the Debtors have entered into the RSA,

providing significant detail about a viable path forward and illustrating the significant extent of financial stakeholder support for the Debtors' current roadmap to a successful reorganization.

*d. An Extension of the Debtors' Exclusive Periods Will Enable the Debtors to Resolve Certain Contingencies That Will Affect a Plan of Reorganization.*

The existence of unresolved contingencies, the resolution of which will affect a debtor's ability to confirm a plan of reorganization, supports an extension of the exclusive periods.  *In re McLean Indus., Inc.*, 87 B.R. at 834, *accord Bunch v. Hoffinger Indus., (In re Hoffinger Indus.*), 292 B.R. at 644 (the "existence of an unresolved contingency" is a factor in determining extension of exclusivity).  As this Court and all parties are aware, the Debtors must still address and resolve their contractual arrangement with their sole customer, AK Steel, as well as several other critical issues, before they can prosecute a plan of reorganization that will lead to long-term viability.  Indeed, the AK Steel Motion, pursuant to which the Debtors are seeking authorization to assume their pellet purchase agreement with AK Steel, is pending before this Court and a hearing on the motion is scheduled for October 13, 2015.

In addition, approximately 500 proofs of claim have been filed in the Debtors' chapter 11 cases.  Approximately 200 of these proofs of claim assert claims other than general unsecured claims, many of which will need to be resolved, either through negotiation or otherwise, prior to the Debtors' emergence from bankruptcy.  The Debtors are in the process of determining the most appropriate path forward with respect to such claims, including engaging in discussions with their key stakeholders.

*e. The Debtors Have Been Paying Their Postpetition Debts When Due.*

The fact that the Debtors have had sufficient liquidity to pay their postpetition debts as they come due supports the granting of an extension of the Debtors' Exclusive Periods, because

7

it suggests that such an extension will not jeopardize the rights of postpetition creditors and counterparties.  The Debtors have been paying their undisputed postpetition debts as they come due and expect to continue to be able to do so.  Further, the Debtors currently have more than $30 million in liquidity and are in compliance with the cash receipts and operating disbursements covenants set forth in the DIP Credit Agreement.

*f. These Cases Have Been Pending for Less Than Five Months.*

This is only the second request for an extension of the Debtors' Exclusive Periods, and it comes less than five months after the Debtors' chapter 11 filings.  Accordingly, the Debtors are not yet in a position to seek confirmation of a comprehensive plan of reorganization and approval of a disclosure statement containing adequate information.  Accordingly, an extension of the Debtors' Exclusive Periods is warranted.

*g. The Debtors' Motive in Requesting the Extensions Is Not to Pressure Their Creditors.*

Rather than requesting the extension of the Debtors' Exclusive Periods as a negotiation tactic or as a means of maintaining leverage over any group of creditors whose interests may be harmed by such an extension, the Debtors are requesting the extensions to give themselves sufficient time to further develop and negotiate a plan of reorganization that maximizes creditor recoveries.  Allowing the Debtors' Exclusive Periods to terminate at this premature point would defeat one of the primary purposes of section 1121 of the Bankruptcy Code, which is the development of a consensual plan of reorganization.  *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005) ("exclusivity is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.") (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344.

8

*h. The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan of Reorganization.*

As discussed above, the Debtors have already made progress in stabilizing their businesses and taking steps toward long-term profitability.  An extension of the Debtors' Exclusive Periods will enable the Debtors and their various economic stakeholders to further develop a plan of reorganization that will maximize the value of the Debtors' estates.

*i. The Debtors Have Made Progress in Negotiating with Their Creditors.*

As noted above, holders of more than 78% in amount of the Debtors' Senior Secured Notes have entered into the RSA with the Debtors, which was consented to by Mag Inc., the licensor of the technology at the heart of the Debtors' businesses.  Although more work remains to be done to reach consensual resolutions with as many of the Debtors' creditors and other counterparties as possible, given the brief life of these chapter 11 cases, the progress represented by the RSA and the Plan is substantial.

**The Requested Extensions Are Consistent with Those
<u>Granted in Other Chapter 11 Cases</u>**

Courts in this and other districts have granted requests by the debtors to further extend their periods of exclusivity for an amount of time similar to, or substantially larger than, the extension requested herein.  *See, e.g.*, *In re Wagstaff Minnesota, Inc.*, Case No. 11-43073 (NCD) (Bankr. D. Minn. Dec. 7, 2011) (second extensions of 90 days after initial extensions of 125 days); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. Dec. 22, 2014) (second extensions of 120 days after initial extensions of 100 days); *In re Exide Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. Jul. 1, 2014) (second extensions of 61 days after initial extensions of 235 days); *In re Patriot Coal Corp.*, Case No. 12-51502-659 (Bankr. E.D. Mo. Apr. 26, 2013) (second extensions of 120 days after initial extensions of 180 days); *In re*

9

*Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Nov. 14, 2012) (second extensions of 136 days after initial extensions of 150 days); *In re The Great Atlantic and Pacific Tea Co.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Aug. 18, 2011) (second extensions of 138 days after initial extensions of 141 days).

In sum, the Debtors submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Debtors' Exclusive Periods.

## **CONCLUSION**

The Debtors respectfully request that the Court enter an order extending the Exclusive Filing Period from November 1, 2015 to February 29, 2016 and the Exclusive Solicitation Period from December 31, 2015 to April 29, 2016.

Dated:   September 29, 2015          DAVIS POLK & WARDWELL LLP

*/s/ Michelle M. McGreal*
Marshall S. Huebner (NY #2601094)
Michelle M. McGreal (NY #4599031)
Kevin J. Coco (NY #4787644)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
marshall.huebner@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

*Counsel to the Debtors*
*and Debtors in Possession*

-and-

LAPP, LIBRA, THOMSON,
STOEBNER & PUSCH, CHARTERED
Ralph V. Mitchell (#184639)
Mark J. Kalla (#159487)
120 South Sixth Street, Suite 2500
Minneapolis, Minnesota 55402
Telephone:    (612) 338-5815
Facsimile:    (612) 338-6651
RMitchell@lapplibra.com
MKalla@lapplibra.com

*Local Counsel to the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 15-50307** |
| MAGNETATION LLC, et al, | Court File No. 15-50307 (GFK) |
| Debtors. | |
| (includes: | Court File Nos.: |
| Mag Lands, LLC | 15-50308 (GFK) |
| Mag Finance Corp. | 15-50309 (GFK) |
| Mag Mining, LLC | 15-50310 (GFK) |
| Mag Pellet LLC) | 15-50311 (GFK) |
| | Chapter 11 Cases<br>Chief Judge Gregory F. Kishel |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**SECOND ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS
WITHIN WHICH TO FILE A PLAN OF REORGANIZATION
AND SOLICIT VOTES THEREON**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Upon the Motion[1] of Magnetation LLC and its subsidiaries that are debtors and debtors in

possession (collectively, the "**Debtors**") for an order, pursuant to section 1121(d) of the

Bankruptcy Code, extending the exclusive periods under sections 1121(b) and (c) of the

Bankruptcy Code within which only the Debtors may file a plan and solicit votes thereon, as

more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion

and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties in interest as specified in Local Rule 9013-3(a)(2), and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS ORDERED:

1.      The relief requested in the Motion is GRANTED.

2.      The Debtors' exclusive period in which to file a plan of reorganization is extended to February 29, 2016.

3.      The Debtors' exclusive period in which to solicit acceptance of a plan of reorganization is extended to April 29, 2016.

4.      A motion filed by the Debtors on or before the Extended Filing Deadline seeking a further extension of the Debtors' Exclusive Periods shall automatically extend the Debtors' Exclusive Periods under section 1121 of the Bankruptcy Code until the Court's determination of such motion, irrespective of whether the Court has entered an order granting or denying such motion by the Extended Filing Deadline.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated:

                                     Gregory F. Kishel
                                     Chief United States Bankruptcy Judge